UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------x
ABRAHAM KAFF on behalf of himself
And all other similarly situated consumers,

                Plaintiff,

-against-

NATIONWIDE CREDIT, INC.,

                Defendant.
------------------------------------------------------------x

**MEMORANDUM AND ORDER**

13-cv-5413 (SLT) (VVP)

**TOWNES, United States District Judge,**

        Plaintiff Abraham Kaff commenced the instant complaint pursuant to the Fair Debt

Collection Practices Act, 15 U.S.C. § 1692 *et seq*. ("FDCPA"), alleging that he received debt

collection correspondence from defendant Nationwide Credit, Inc., ("Nationwide"), which

included a material misstatement of the law in violation of the FDCPA.  Currently before the

Court is Nationwide's motion to dismiss Kaff's complaint on the grounds that he has failed to

state a claim and lacks standing to pursue his claims.  For the following reasons, Nationwide's

motion is denied.

## Legal Standard

        Under the now well-established *Twombly* standard, a complaint should be dismissed only

if it does not contain enough allegations of fact to state a claim for relief that is "plausible on its

face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).  "A claim has facial plausibility

when the plaintiff pleads factual content that allows the court to draw the reasonable inference

that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678

(2009).  "While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need

detailed factual allegations, a plaintiff's obligation to provide the grounds of his entitlement to

relief requires more than labels and conclusions, and a formulaic recitation of the elements of a

cause of action will not do." *Twombly*, 550 U.S. at 555 (alteration, citations, and internal quotation marks omitted).  While Federal Rule of Civil Procedure 8 "marks a notable and generous departure from the hyper-technical, code-pleading regime of a prior era, ... it does not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions." *Iqbal*, 556 U.S. at 678-79.

The Supreme Court has clarified that *Twombly* sets out a two-pronged approach for district courts considering motions to dismiss under Rule 12(b)(6).  *Iqbal*, 556 U.S. at 678-79 (2009).  District courts should first "identify[ ] pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth," and second, if a complaint contains "well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief."  *Id.* at 679.

The Court is generally limited to the "facts stated in the complaint or documents attached to the complaint as exhibits or incorporated by reference." *Nechis v. Oxford Health Plans, Inc.*, 421 F.3d 96, 100 (2d Cir. 2005).  It may also consider "matters of which judicial notice may be taken, or ... documents either in plaintiff[']s[] possession or of which plaintiff[] had knowledge and relied on in bringing suit." *Brass v. Am. Film Technologies, Inc.*, 987 F.2d 142, 150 (2d Cir. 1993) (citation omitted); *Chambers v. Time Warner, Inc.*, 282 F.3d 147, 153 (2d Cir. 2002).

## Factual Background

Plaintiff Kaff commenced the instant putative class action on September 30, 2013 contending that defendant Nationwide engaged in unlawfully deceptive debt collection practices in violation of the FDCPA.  Kaff alleges that he received a collection letter dated November 17, 2012 seeking to collect a debt, which stated, in pertinent part, "American Express is required to file a form 1099C with the Internal Revenue Service for any cancelled debt of $600 or more. Please consult your tax advisor concerning any tax questions."  (Compl. Exs. 1-2.)  The

collection letter states that there is an outstanding account balance of $2,382.33. (*Id.*) Plaintiff does not dispute that the debt consisted of $2,000 in principal and approximately $382 in interest. Plaintiff alleges that the quoted statement is false, deceptive and misleading, in violation of sections 1692e, 1692e(2) and 1692e(10) of the FDCPA because American Express is only required to file a form 1099C with the Internal Revenue Service ("IRS") if it cancels $600 or more in *principal*.

Plaintiff filed five similar complaints in this district against defendants who also allegedly sought to collect debts owed by Kaff in unlawfully deceptive manners. *see Kaff v. Redline Recovery Services, LLC*, 1:12-cv-03152-MKB-RER (alleging violation of Fair Debt Collection Practices Act); *Kaff v. Slater, Tenaglia, Fritz & Hunt, P.A.*, 1:12-cv-05605-KAM-RER (same); *Kaff v. Peter T. Roach & Associates, P.C.*, 1:13-cv-01128-DLI-JMA (same); *Kaff v. Commercial Recovery Systems, Inc.*, 1:13-cv-06101-WFK-SMG (same); and *Kaff et al. v. Midland Credit Management, Inc.*, 1:14-cv-04517-FB-SMG, each of which has been voluntarily dismissed by Kaff.

### Discussion

The first question before the Court is whether the disputed language in the collection letter constituted a false statement; the second is whether the statement gives rise to liability under the FDCPA.[1]

---

[1] Nationwide argues, relying on *Ehrich v. Credit Prot. Ass'n, L.P.*, 891 F. Supp. 2d 414 (E.D.N.Y. 2012), that Kaff lacks standing to bring this action because he does not allege that he was personally injured by the misrepresentation, beyond receiving a collection letter containing a misstatement of law.

In order to establish standing under the Constitution, a plaintiff must demonstrate that he or she suffered an "injury in fact," that the injury is fairly traceable to the challenged action, and that it is likely to be redressed by a favorable decision. The FDCPA "broadens the traditional 'injury in fact' analysis by expanding the range and scope of injuries creating constitutional standing." In analyzing whether a

1. **Filing of 1099-C**

Subpart B of Chapter 61 of the Internal Revenue Code sets out information reporting

requirements "Concerning Transactions with Other Persons." Among them is § 6050P, which

mandates reporting "relating to the cancellation of indebtedness by certain entities." 26 U.S.C.

§ 6050P. The statute requires a creditor to file an information report with the IRS if it has

discharged "(in whole or in part) the indebtedness of any person during any calendar year,"

however this reporting requirement does not apply "to any discharge of less than $600." 26

U.S.C. § 6050P(a)-(b). The information report must include:

(1) the name, address, and TIN of each person whose indebtedness was
discharged during such calendar year,

(2) the date of the discharge and the amount of the indebtedness discharged, and

(3) such other information as the Secretary may prescribe.

---

plaintiff has alleged an injury in fact, courts look to "whether plaintiff suffered a
cognizable statutory injury and not whether a plaintiff suffered actual damages."

*Kinkade v. Estate Info. Servs., LLC*, No. CV 11-4787 AKT, 2012 WL 4511397, at *3 (E.D.N.Y. Sept. 28, 2012) (internal citations omitted); *see Easterling v. Collecto, Inc.*, 692 F.3d 229, 235 (2d Cir. 2012) (finding plaintiff stated a claim under the FDCPA where she received a collection letter containing a misstatement of law which could have hypothetically affected her decision-making with regard to the debt). In *Ehrich*, the plaintiff, an English speaker, received a collection letter which included a misstatement in the Spanish-language translation portion of the letter. 891 F. Supp. 2d 414. The district court held that the plaintiff lacked standing because, "[w]hile a plaintiff need not demonstrate actual damages for standing in an FDCPA case, the plaintiff must at least allege some personal injury or intrusion of a personal right protected by the FDCPA," and a plaintiff who could not read the relevant portion of the collection letter could allege no personal injury. *Id.* at 418. Even assuming *Ehrich* has any application beyond the unique circumstances of that case, Kaff has sufficiently pleaded an intrusion of a personal right protected by the FDCPA. Namely, as discussed below, Kaff has a right under the FDCPA to be free of abusive debt collection practices and that right was infringed when he received a collection letter which potentially increased the amount of debt collected by falsely misrepresenting the law. There is no reason to believe that, like the plaintiff in *Ehrich*, Kaff could not possibly be personally misled by the misstatement. Accordingly, Kaff was injured by the collection letter and has standing to pursue his claims against Nationwide.

26 U.S.C. § 6050P(a).  The statute directs the Secretary of Treasury to issue regulations prescribing the "time" and "forms" to be filed.  26 U.S.C. § 6050P(a).  Pursuant to this grant of authority, the Department of Treasury promulgated a regulation entitled "Information reporting for discharges of indebtedness by certain entities," 26 C.F.R. § 1.6050P-1, which requires creditors reporting under 26 U.S.C. § 6050P to complete a Form 1099-C.  26 C.F.R. § 1.6050P-1.  A Form 1099-C looks like this:



The 1099-C Form includes separate boxes for "amount of debt discharged" and "interest if included."  The applicable Department of Treasury's regulation reiterates that applicable entities "that discharge[] an indebtedness of any person ... of at least $600 during a calendar year must file an information return on Form 1099–C with the Internal Revenue Service."  26 C.F.R. § 1.6050P-1(a).  The term "Indebtedness" is defined as "any amount owed to an applicable entity, including stated principal, fees, stated interest, penalties, administrative costs and fines. The amount of indebtedness discharged may represent all, or only a part, of the total amount owed to

---

[2] The Court takes judicial notice of the Form 1099-C, which is publicly available on the IRS's website at http://www.irs.gov/pub/irs-pdf/f1099c.pdf. *See* Fed. R. Evid. 201 ("The court may judicially notice a fact that is not subject to reasonable dispute because it ... can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned.").

the applicable entity." 26 C.F.R. § 1.6050P-1(c). Thus, Nationwide argues that the plain

meaning of the statute and applicable regulation require creditors to file a Form 1099-C if it

discharges *any indebtedness over $600*, including "principles, fees, [and] stated interest ...." *Id.*

However, the regulation also includes a list of seven "exceptions from reporting requirement[s]."

26 C.F.R. § 1.6050P-1(d)(1)-(7). One such exception provides that "[t]he discharge of an

amount of indebtedness that is interest is not required to be reported under this section." 26

C.F.R. § 1.6050P-1(d)(2). Another provides that "[i]n the case of a lending transaction, the

discharge of an amount other than stated principal is not required to be reported under this

section." 26 C.F.R. § 1.6050P-1(d)(3).

The parties disagree about the effect of these exceptions. Kaff argues that a creditor need

not file a Form 1099-C if the amount discharged includes less than $600 of principal, even if,

with the addition of interest and fees, the amount discharged exceeds $600 of indebtedness.

Thus, he argues that the defendant's statement that: "American Express is required to file a form

1099C with the Internal Revenue Service for any cancelled debt of $600 or more" was false and

misleading. Nationwide responds that because the regulations expressly provide "that

discharge[] an *indebtedness* of any person ... of at least $600" triggers a filing requirement, and

"indebtedness" is expressly defined to include non-principal debts, such as interest and fees, the

statement was not false. 26 C.F.R. § 1.6050P-1(a) and (c). Thus, Nationwide reads the statute

and regulation to require a creditor discharging *any indebtedness over $600* to file a 1099-C

Form. Nationwide contends that the exceptions contained in 26 C.F.R. § 1.6050P-1(d) are not

exceptions to the filing requirement, but merely to what information must be provided and

separately listed in the filing.

In resolving this dispute, the Court finds instructive an IRS Information Letter issued on December 30, 2005, which was provided by the IRS to the Association of Credit and Collection Professionals ("ACA"). The Information Letter provides:

> Q4. If an organization that purchases debt discharges an amount owed that includes interest and principal, is the organization required to report only discharges of stated principal of $600 or more?

> A4. Section 6050P(b) of the Code provides that no information reporting is required under section 6050P(a) if the amount of the discharge is less than $600. Section 1.6050P-1(a)(1) of the regulations provides that, except as provided in section 1.6050P-1(d), an applicable entity must report cancellation of indebtedness of $600 or more during a calendar year. Section 1.6050P-1(c) defines indebtedness to mean any amount owed to an applicable entity, including stated principal, fees, stated interest, penalties, administrative costs, and fines. Section 1.6050P-1(d)(3) provides that an applicable entity is not required to report amounts other than stated principal in lending transactions. Section 1.6050P-2(e) provides that lending money includes acquiring an indebtedness.

> Although section 1.6050P-1(c) of the regulations provides a broad definition of what may constitute indebtedness for purposes of section 6050P of the Code, section 1.6050P-1(d)(3) provides that an applicable entity is required to report only stated principal in lending transactions. *If an organization that purchases debt, which has a significant trade or business of lending money, discharges an amount owed that includes interest and principal, the organization is required to report only discharges of stated principal of $600 or more.*

*Info. Letters*, IRS INFO 2005-0208 (Dec. 30, 2005), 2005 WL 3561136; *see also Notice 2006-36 Andersen*, Addendum 1, 2006 WL 4775178, at *12-13 (I.R.S. May 12, 2006) (emphasis added). In response to this correspondence, the ACA advised the IRS about a possible "Workability Issue" with the IRS's interpretation, explaining that:

> One of the hurdles faced by debt purchasers in reporting discharged debt is the requirement that discharged interest must be reported separately from the principal amount of the debt on Form 1099-C. Oftentimes when debt is purchased, the amount of principal and interest is included in one lump sum and not itemized as explained in the above section describing the debt purchasing industry.

> The purpose of separately reporting principal and interest on Form 1099-C is that the taxpayer is required to include discharged interest as gross income if that

7

> interest was not deductible. It is only under limited circumstances that the interest on a loan is deductible by the taxpayer, such as in the case of business loans, mortgage loans secured by real property and student loans. Therefore, the interest paid on the vast majority of loans is not deductible by the taxpayer and reporting these items separately on Form 1099-C has no practical effect.

*Notice 2006-36 Andersen*, 2006 WL 4775178, at *5. The ACA went on to propose alternative language to the IRS that would free debt purchasers from separately reporting the stated principal of canceled debt. *Id.* at *5-6. However, the IRS did not implement any of the ACA's proposals and the language of 26 C.F.R. § 1.6050P-1(d) remains unchanged.

"Although the IRS' interpretation is expressed in an information letter rather than a regulation or ruling, and thus is not subject to *Chevron*-style deference, [pursuant to *Chevron U.S.A Inc. v. Natural Resources Defense Council, Inc.*, 467 U.S. 837 (1984),] it is nonetheless 'entitled to respect ... to the extent that [its] interpretations have the power to persuade.'" *F.D.I.C. v. Cashion*, 720 F.3d 169, 177 (4th Cir. 2013) (relying on this same 2005 IRS Information Letter to interpret the legal effect of the 1099-C Form) (quoting *Christensen v. Harris County*, 529 U.S. 576, 587 (2000) (internal quotation marks omitted in *Cashion*)); *see also Skidmore v. Swift & Co.*, 323 U.S. 134, 140 (1944) ("[T]he rulings, interpretations and opinions of [an administrative agency], while not controlling upon the courts by reason of their authority, do constitute a body of experience and informed judgment to which courts and litigants may properly resort for guidance," depending on "the thoroughness evident in its consideration, the validity of its reasoning, its consistency with earlier and later pronouncements, and all those factors which give it power to persuade, if lacking power to control.").

Here, the IRS's view, as expressed in the 2005 Information Letter, is highly persuasive because separating non-principal amounts from principal is consistent with the purpose of the Form 1099-C – which is to assist the IRS in determining taxpayer obligations – and follows the

plain language of the relevant implementing regulation. Courts around the country agree. *See, e.g., Wagner v. Client Servs., Inc.*, No. CIV.A. 08-5546, 2009 WL 839073, at *4 (E.D. Pa. Mar. 26, 2009) (finding creditor is not always "required to report the [debtor's] discharge of indebtedness, since it is possible that less than \$600.00 of any discharged amount is actually principal."); *Good v. Nationwide Credit, Inc.*, No. CIV.A. 14-4295, 2014 WL 5422103, at *3 (E.D. Pa. Oct. 24, 2014) (finding that there are exceptions to \$600 threshold for filing a 1099-C for non-principal debts). Thus, Plaintiff is correct that a creditor is only required to file a 1099-C Form if it discharges at least \$600 *in stated principal*. "While [Nationwide's correspondence] may not be false in all respects, it certainly is not completely true." *Good*, 2014 WL 5422103, at *3. In sum, Nationwide's debt collection letter contained a statement that was not strictly true.

### 2. FDCPA

Congress enacted the FDCPA "to eliminate abusive debt collection practices by debt collectors, to insure that those debt collectors who refrain from using abusive debt collection practices are not competitively disadvantaged, and to promote consistent State action to protect consumers against debt collection abuses." 15 U.S.C. § 1692(e). "To further these ends, the FDCPA 'establishes certain rights for consumers whose debts are placed in the hands of professional debt collectors for collection.'" *Vincent v. The Money Store*, 736 F.3d 88, 96 (2d Cir. 2013) (quoting *DeSantis v. Computer Credit, Inc.*, 269 F.3d 159, 161 (2d Cir. 2001)).

To state a *prima facie* case under the FDCPA, a plaintiff must plead:

(1) that the plaintiff is a natural person who is harmed by violations of the FDCPA,

(2) the "debt" arises out of a transaction entered primarily for family, personal, or household purposes,

(3) the defendant collecting the debt is a "debt collector" under the FDCPA, and

(4) the defendant has violated, by act or omission, the provisions of the FDCPA.

9

*Blanc v. Palisades Collection, LLP*, No. 06 CIV. 1626 (CLB), 2007 WL 3254381, at *5

(S.D.N.Y. Nov. 1, 2007) (citing 29 Margorie Wengert, Causes of Action 2d 1 § 9 (2006)). A

plaintiff need not plead "intentional conduct on the part of the debt collector" because the

FDCPA "is a strict liability statute, and [thus,] the degree of a defendant's culpability may only

be considered in computing damages." *Ellis v. Solomon & Solomon, P.C.*, 591 F.3d 130, 135 (2d

Cir. 2010) (internal quotation marks and citation omitted). Only the fourth prong of a *prima

facie* case – whether defendant has violated the FDCPA – is in dispute here.

As relevant here, Kaff alleges that the collection letter he received from Nationwide

violated 15 U.S.C. § 1692e, which provides that "[a] debt collector may not use any false,

deceptive, or misleading representation or means in connection with the collection of any debt."

15 U.S.C. § 1692e. "In addition, '[w]ithout limiting the general application of the foregoing,'

section 1692e proscribes sixteen specific debt collection practices." *Vincent*, 736 F.3d at 96

(quoting 15 U.S.C. § 1692e). Kaff alleges that Nationwide's collection attempt also violated

subsection (10) of § 1692e, which prohibits:

> **(10)** The use of any false representation or deceptive means to collect or attempt
> to collect any debt or to obtain information concerning a consumer.

15 U.S.C. § 1692e.

"In determining whether language in a collection letter is 'false, misleading, or deceptive'

under section 1692e, [the Second Circuit has] held that courts must look to whether a reasonable

'least sophisticated consumer' would be misled by it." *Vincent*, 736 F. 3d at 118 (quoting

*Clomon v. Jackson*, 988 F.2d 1314, 1318 (2d Cir. 1993)); *see also Ellis*, 591 F.3d at 135. The

purpose of using this standard is to ensure that the statute protects "the gullible as well as the

10

shrewd." *Clomon*, 988 F.2d at 1318. Under this standard, "collection notices can be deceptive if they are open to more than one reasonable interpretation, at least one of which is inaccurate." *Id.*

This Court has already concluded that the disputed statement included in the collection letter sent by Nationwide to Kaff was not strictly true under all circumstances because it failed to apprise debtors that possible exceptions could apply to the creditor's mandatory reporting requirement, such as the exceptions for interest and other non-principal debts. However, "[a]lthough '[i]t is clear that Congress painted with a broad brush in the FDCPA [,]' not every technically false representation by a debt collector amounts to a violation of the FDCPA." *Gabriele v. Am. Home Mortgage Servicing, Inc.*, 503 F. App'x 89, 94 (2d Cir. 2012) (summary order) (quoting *Pipiles v. Credit Bureau of Lockport, Inc.*, 886 F.2d 22, 27 (2d Cir. 1989)). Rather:

> "[I]n crafting a norm that protects the naive and the credulous the courts have carefully preserved the concept of reasonableness." Accordingly, FDCPA protection "does not extend to every bizarre or idiosyncratic interpretation of a collection notice" and courts should apply the standard "in a manner that protects debt collectors against liability for unreasonable misinterpretations of collection notices."

*Easterling*, 692 F.3d at 233-34 (quoting *Clomon*, at 1319); *Ellis*, 591 F.3d at 135 ("The hypothetical least sophisticated consumer ... is neither irrational nor a dolt.").[3] Additionally, not every technical misstatement is actionable under the FDCPA because courts in this circuit have "read a materiality requirement into the FDCPA's prohibition of false, deceptive, or misleading practices in the collection of a debt." *Gabriele v. Am. Home Mortgage Servicing, Inc.*, 503 F.

---

[3] To the extent Nationwide argues that this Court should consider Kaff's subjective, individual circumstances, "[t]he least sophisticated consumer test is an objective inquiry." *Easterling*, 692 F.3d at 234. The Second Circuit has directed district courts not to consider "the facts and circumstances surrounding [the named plaintiff's] background ... in an effort to establish that she was not, in fact, deceived by the Collection Letter," because "[b]y its very nature, ... the least sophisticated consumer test pays no attention to the circumstances of the particular debtor in question." *Id.*

11

App'x 89, 94-95 (2d Cir. 2012) (summary order) (collecting cases). Only "communications and practices that could mislead a putative-debtor as to the nature and legal status of the underlying debt, or that could impede a consumer's ability to respond to or dispute collection, violate the FDCPA." *Id.* In order to be material, "the statement must [be capable of] influenc[ing] a consumer's decision or ability to pay or challenge a debt." *Okyere v. Palisades Collection, LLC*, 961 F. Supp. 2d 508, 518 (S.D.N.Y. 2013) (internal citation and quotation marks omitted).

With these standards in mind, the Court considers the disputed statement, which Plaintiff contends would have materially misled the least sophisticated consumer into believing he had to pay all of his debt, but for $599.99 – including interest and fees – to "avoid any issues with the IRS," when he could have actually paid all but $599.99 *of stated principal* without triggering a mandatory 1099-C reporting. Nationwide responds that avoiding "issues" with the IRS is a euphemism for being prevented from unlawfully avoiding paying income taxes on discharged debt, given that taxpayers must report and may have to pay income taxes on all discharged debt, regardless of the amount, and by filing a 1099-C, a creditor merely alerts the IRS that it should expect income taxes from the debtor. 26 U.S.C. § 61(a)(12) (generally, taxes are paid on "gross income[, which] means *all* income from whatever source derived, including (but not limited to) … [i]ncome from [a] discharge of indebtedness"). Other than this illegitimate purpose, Nationwide argues that the filing of a 1099-C has no legal effect. *See Cashion*, 720 F.3d at 177-80 ("The IRS, the administrative agency charged with the obligation of implementing IRC § 6050P through its regulations, … treats the Form 1099-C as a means for satisfying a reporting obligation and not as an instrument effectuating a discharge of debt or preventing a creditor from seeking payment on a debt."); *Owens v. Commissioner of Internal Revenue*, 67 F. App'x 253, 2003 WL 21196200, at *3 (5th Cir. May 15, 2003) (unpublished) (holding that Form 1099-C

12

was not evidence that creditor actually canceled debt, but at most reflected intention to cancel debt in the future); *but see In re Reed*, 492 B.R. 261, 272 (Bankr. E.D. Tenn. 2013) (debt was cancelled after debtors mistakenly relied on 1099-C form in calculating their gross income).

However, even if filing a 1099-C does not generally have an effect on a *creditor's* right to collect on the debt, the filing of a 1099-C may have implications for a debtor. *See In re Crosby*, 261 B.R. 470, 474 (Bankr. D. Kan. 2001) (noting that there are "actual (or at least potential) tax consequences of the [1099-C] form," including that even if debtors properly reported cancelled debt as income to the IRS, "the IRS could audit their returns and, because of the 1099–C's, possibly impose additional tax and penalties").[4] The least sophisticated consumer, afraid of an audit, may be pressured by a misstatement such as the one made by Nationwide into paying more of his debt to avoid the risk of triggering an IRS audit.[5]

---

[4] Moreover, some courts have observed without specifying further, that "filing a Form 1099–C has legal significance to the debtor's income tax liability." *Mennes v. Capital One, N.A.*, No. 13-CV-822-BBC, 2014 WL 1767079, at *3-6 (W.D. Wis. May 5, 2014) (observing that some courts have so held and collecting cases).

[5] It could be argued that the FDCPA puts debt collectors in a difficult position, where failing to provide any notice of the tax consequences of debt cancellation may, under some circumstances, trigger liability, *see Ellis v. Cohen & Slamowitz*, 701 F. Supp. 2d 215 (N.D.N.Y. 2010), while imprecisely providing such notice can also lead to liability. However, this result is not as inequitable as it appears. First, the decision in *Ellis* is an outlier. *See Altman v. J.C. Christenson & Associates, Inc.*, No. 13-CV-6502 ARR CLP, 2014 WL 2612124, at *3 (E.D.N.Y. June 11, 2014) (distinguishing *Ellis*, finding failure to advise debtor of tax consequences of cancelling debt not actionable under FDCPA); *Landes v. Cavalry Portfolio Servs., LLC*, 774 F. Supp. 2d 800, 805 (E.D. Va. 2011) (same); *Schaefer v. ARM Receivable Mgmt., Inc.*, Civil Action No. 09–11666–DJC, 2011 WL 2847768, at *5 (D. Mass. July 19, 2011) ("[R]equiring, as a matter of law, debt collectors to inform a debtor of ... potential collateral consequence[s] of settling a pre-existing debt seems far afield from even the broad mandate of FDCPA to protect debtors from abusive debt collection practices."). Second, the very purpose of the statute is to encourage debt collectors to tread lightly when sending out debt collection letters containing veiled threats. In *Good*, the district court addressed precisely this issue and concluded that a safe middle ground exists for debt collectors. *Good*, 2014 WL 5422103, at *4. The *Good* court suggested that a warning which reads:

Here, Kaff owed approximately $2,382, consisting of $2,000 in principal and $382 in interest. (Pl. Br. at 1.) Had he been informed that he could seek cancellation of up to $600 in principal and all of the interest, he would have known that he could satisfy the debt for $1,400.01 ($2,000 - $599.99) without triggering a mandatory 1099-C report. However, Nationwide's collection letter misled him into believing he had to pay $1,782.01 ($2,382 - $599.99), or else he might face potential tax consequences, such as a costly audit. Thus, "there is a risk that the statement improperly increase[d] collections by falsely representing the law in violation of 15 U.S.C. § 1692e and e(10)." *Good*, 2014 WL 5422103, at \*4. This is precisely the kind of abusive practice the FDCPA was designed to prevent. *See Jacobson v. Healthcare Fin. Servs., Inc.*, 516 F.3d 85, 95 (2d Cir. 2008) ("We must ... look to the 'mischief' the statute was designed to address," which, in the case of the FDCPA is, primarily protecting consumers, "[although] it also protects the interests of law-abiding debt collectors.") (internal citations omitted). Considering all disputed facts in Kaff's favor, in light of the procedural posture of this case, Nationwide's motion to dismiss is denied.

## Conclusion

For the reasons set forth above, Nationwide's motion to dismiss is denied, except as to Plaintiff's claims under sections 1692d, 1692c(8) and 1692f, which are voluntarily withdrawn by

---

Under certain limited circumstances, your creditor may be required to file a form 1099C with the IRS when a debt is canceled or settled. Such a form is not required every time a debt is canceled or settled, and might not be required in your case.

would not run afoul of the FDCPA because it would "raise the debtor's awareness that potentially applicable exceptions exist." *Id.* at \*4, 4 n.3 (While "modifying the statement to include the seven reporting exceptions, 26 C.F.R. § 1.6050P–1(d), and the eight types of qualifying identifiable events, § 1.6050P–1(b)(2), would serve only to confuse the least sophisticated debtor ... 'the declarative, unqualified statement'—which gives no indication that the debtor might fit into a recognized exception—is deceptive or misleading.").

Plaintiff's opposition brief, (Pl. Br. at 1 n.1), and claims under 1692e(5), which are not addressed and deemed abandoned.[6]

**SO ORDERED.**

_Sandra L. Townes_
SANDRA L. TOWNES
United States District Judge

Brooklyn, New York
Dated: March 31, 2015

---

[6] Plaintiff's opposition brief includes one stray reference to § 1692e(2), (Pl. Br. at 1), however that section is not mentioned again when listing Plaintiff's claims, (Pl. Br. at 11), nor is it pleaded in the complaint. The reference to § 1692e(2) appears to be a typographical error. Accordingly, the Court does not address purported claims under § 1692e(2).