# APPENDIX 1

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NEW YORK

| | |
|---|---|
| ABRAHAM KAFF, ARI PFEFFER and RAQUEL JAGER on behalf of themselves and all other similarly situated consumers<br><br>Plaintiffs,<br><br>vs.<br><br>NATIONWIDE CREDIT, INC.<br><br>Defendant. | CLASS ACTION<br><br>NO. 13-cv-5413 (SLT-PK) |

### CLASS ACTION SETTLEMENT AGREEMENT

This Class Action Settlement Agreement (hereinafter referred to as the "Agreement") is entered into between Abraham Kaff, Ari Pfeffer, and Raquel Jager (hereinafter referred to as "Plaintiffs" or "Class Representatives"), individually and on behalf of the "Class Members" (as defined below), and Defendant, Nationwide Credit, Inc. (hereinafter referred to as "NCI" or "Defendant"). This Agreement is intended by NCI and Plaintiffs, on behalf of themselves and the Class Members (hereinafter collectively referred to as the "Parties"), to fully, finally, and forever resolve, discharge, and settle the "Released Claims" (as defined below) in favor of the "Released Parties" (as defined below), upon and subject to the terms and conditions contained herein.

WITNESSETH:

WHEREAS, on September 30, 2013, Plaintiff Kaff, on behalf of himself and all others similarly situated, filed a complaint (the "Kaff Complaint"), in the United States District Court for the Eastern District of New York at Docket No. 1:13-cv-05413, asserting claims against NCI

under the Fair Debt Collection Practices Act (hereinafter referred to as the "FDCPA"), 15 U.S.C. § 1692, et seq. ("the Kaff Action");

WHEREAS, on March 18, 2014, Defendant NCI moved to dismiss the Kaff Complaint pursuant to Fed. R. Civ. P. 12(b)(1) and 12(b)(6). Plaintiffs responded in opposition on April 25, 2014, and Defendant replied and filed the fully briefed motion on May 9, 2014. On March 31, 2015, the Court entered a Memorandum and Order in which it denied Defendant's Motion to Dismiss;

WHEREAS, on March 6, 2015, Plaintiff Jager on behalf of himself and all others similarly situated, filed a complaint (the "Jager Complaint"), in the United States District Court for the Eastern District of New York at Docket No. 1:15-cv-01183, asserting claims against NCI under the FDCPA ("the Jager Action"). The Jager Complaint was never served on Defendant.

WHEREAS, on March 8, 2015, Plaintiff Pfeffer on behalf of himself and all others similarly situated, filed a complaint (the "Pfeffer Complaint"), in the United States District Court for the Eastern District of New York at Docket No. 1:15-cv-01192, asserting claims against NCI under the FDCPA ("the Pfeffer Action");

WHEREAS, on April 27, 2015, Defendant filed its Answer and Affirmative Defenses to the Kaff Complaint;

WHEREAS, on May 19, 2015, Defendant filed its Answer and Affirmative Defenses to the Pfeffer Complaint;

WHEREAS, Defendant filed a motion to consolidate before one judge and magistrate the Kaff Action, the Jager Action, and the Pfeffer Action, on April 24, 2015, and the Court reassigned to Judge Townes and Magistrate Judge Pohorelsky, who presided over the Kaff

Action, the Jager Action and the Pfeffer Action on May 19, 2015 (the "Consolidated Kaff Action");

WHEREAS, on August 7, 2015, the parties advised Magistrate Judge Pohorelsky that they had settled the Consolidated Kaff Action in principle, and Magistrate Judge Pohorelsky directed Plaintiffs to file an amended complaint consolidating the claims;

WHEREAS, on August 28, 2015, Plaintiffs on behalf of themselves and all other similarly situated consumers, filed an amended complaint, and later filed, on September 15, 2015, a corrected amended complaint (the "Consolidated Complaint") in the United States District Court for the Eastern District of New York at Docket No. 1:15-cv-05413, asserting claims against NCI under the FDCPA (the "Lawsuit");

WHEREAS, on September 29, 2015, Defendant filed its Answer and Affirmative Defenses to the Consolidated Complaint;

WHEREAS, the Parties wish to avoid the expense and uncertainty of continued litigation;

WHEREAS, the Parties desire and intend to settle and resolve the claims asserted in the Lawsuit on a class-wide basis;

WHEREAS, counsel for the "Class Members" (as defined below) has investigated the available facts and applicable law;

WHEREAS, counsel for the Class Members believes that the class settlement as provided in this Agreement is in the best interest of the Class Members and is a fair and reasonable resolution of the claims raised in the Lawsuit;

WHEREAS, the Parties desire and intend to seek the Court's approval of the proposed class-wide settlement of the Lawsuit as set forth in this Agreement and, upon court approval, to

3

seek a Final Order and Judgment implementing this Agreement and dismissing with prejudice the claims of the Plaintiffs and Class Members as set forth herein;

WHEREAS, the Parties and their counsel agree to recommend approval of this Agreement to the Court and to any regulatory authority responding to the proposed settlement per the Class Action Fairness Act of 2005 (hereinafter referred to as "CAFA"), 28 U.S.C. § 1715;

WHEREAS, the Parties agree to undertake all steps necessary to effectuate the terms and purposes of this Agreement;

WHEREFORE, in consideration of the foregoing and the promises, representations, and warranties set forth herein, the Parties stipulate and agree that the claims of the named Plaintiffs and Class Members against Defendant are hereby compromised and settled, subject to the approval of the Court, upon the following terms and conditions:

1. DEFINITIONS - The following definitions shall apply to this Agreement:

    A. "Class Administrator" shall mean Rust Consulting, Inc. of Minneapolis, Minnesota;

    B. "Class" or "Class Members" shall mean:

        (i) All persons with addresses in the State of New York;

        (ii) who were sent one or more collection letters from NCI;

        (iii) that stated "American Express is required to file a form 1099C with the Internal Revenue Service for any cancelled debt of $600 or more," or a substantially identical statement;

        (iv) where the underlying debt being collected was incurred primarily for personal, family or household use;

4

    (v) the letter(s) bear(s) a send date from September 30, 2012 through August, 7, 2015; and

    (vi) the letter(s) were not returned as undeliverable.

NCI represents there are approximately 76,843 Class Members.

  C. "Effective Date" shall mean the first date after "Final Judgment Date" (as defined below).

  D. "Final Judgment Date" shall mean the day upon which the Final Order and Judgment becomes "Final." The Final Order and Judgment shall become "Final" upon the expiration of any available appeal period following entry of the Final Order and Judgment if no appeal is filed. If any appeal from the Final Order and Judgment is filed, then the Final Judgment Date shall be the first date after the conclusion of all appeals, so long as the Final Order and Judgment is not reversed or vacated.

  E. "Final Order and Judgment" shall mean the Court's ultimate determination and order approving the Agreement, determining the attorneys' fees, costs, and expenses set forth in paragraph 18, and Class Representatives' Service Award and Settlement set forth in paragraph 17(D).

  F. "Released Claims" shall mean any and all actual, potential, filed, known, or unknown, fixed or contingent, claimed or unclaimed, suspected or unsuspected, claims, causes of action, suits, obligations, debts, demands, agreements, rights, promises, liabilities, damages, losses, controversies, costs, expenses, and attorneys' fees of any nature whatsoever, whether based on any federal law (including the FDCPA), state law, common law or any other law (including the law of any jurisdiction outside the United States), rule or regulation, or of any other type or form (whether in contract, tort, or otherwise, including statutory, common law,

5

property, and equitable claims), which Plaintiffs or any Class Member now have, or ever had, against the Released Parties arising out of the facts, transactions, events, matters, occurrences, acts, disclosures, statements, omissions, or failures to act relating to their receipt of or NCI's sending of the "Subject Letters" (as defined below) to the Plaintiffs and Class Members. Notwithstanding the foregoing, the Plaintiffs and Class Members specifically reserve the right to dispute the amount of the alleged debts that they owe to NCI or its clients that underlie the Subject Letters. Nothing herein shall prevent Defendant or another from continuing to attempt to collect the debts owed by the Plaintiffs and Class Members. The release shall become effective as of the date the Defendant causes the "Settlement Fund" (as defined below) to be funded.

G. "Released Parties" shall mean NCI, American Express Company, and American Express Travel Related Services Company, Inc., and their past or present directors, officers, employees, agents, insurers, attorneys, and any related or affiliated company, including any parent, subsidiary, predecessor, or successor company and all of their subsidiary entities.

H. "Settlement Administration Expenses" shall mean the expenses reasonably incurred by or on behalf of the Class Administrator in administering the Agreement, including any expenses relating to providing notice to the Class Members, identifying addresses for certain Class Members, processing claims forms, and mailing checks to Class Members, as well as any expenses reasonably incurred in the sending of notice to the relevant governmental agencies that may be required pursuant to CAFA.

I. "Subject Letters" shall mean letters sent by NCI containing a statement that "American Express is required to file a form 1099C with the Internal Revenue Service for any cancelled debt of $600 or more," or a substantially identical statement.

2. CLASS CERTIFICATION - Concurrent with seeking preliminary approval of the settlement, counsel for the Plaintiffs shall seek a preliminary determination on certification, for settlement purposes, of the Class defined in paragraph 1(B) above.

3. CLASS REPRESENTATIVE AND CLASS COUNSEL APPOINTMENT - For settlement purposes, and subject to Court approval, Plaintiffs are appointed as the Class Representatives for the Class Members, and the following attorneys and law firms are appointed as counsel for the Class Members (hereinafter referred to as "Class Counsel"): Cathleen M. Combs, Daniel Edelman, and Tiffany Hardy, of the law firm of Edelman, Combs, Latturner & Goodwin, LLC; Maxim Maximov of the law firm of Maxim Maximov, LLP; and Adam Fishbein of the law firm of Adam J. Fishbein, Attorney at Law.

4. ORDER OF PRELIMINARY APPROVAL - On or before May 15, 2016, counsel for the Plaintiffs shall file their motion seeking an Order of Preliminary Approval of Class Action Settlement in substantially the form attached hereto as **Exhibit A**. Defendant shall not oppose the relief sought in Exhibit A.

5. FINAL ORDER AND JUDGMENT - If the Court preliminarily approves the settlement, and all other conditions precedent to the settlement are satisfied, Plaintiffs shall request that the Court enter a Final Order and Judgment in substantially the form attached hereto as **Exhibit B**. Defendant shall not oppose the relief sought in Exhibit B.

ADMINISTRATION AND NOTIFICATION PROCESS

6. NCI shall pay all Settlement Administration Expenses incurred by the Class Administrator.

7. The Class Administrator shall, as expeditiously as possible, but not more than forty-five (45) days from the Court's entry of the Order of Preliminary Approval of Class Action Settlement, provide notice of the settlement to the Class Members as follows:

A. <u>Written Notice</u> — The Class Administrator shall send via U.S. mail a written notice of the proposed class action settlement to each Class Member in substantially the form attached as **Exhibit C**, as approved by the Court (the "Class Notice"). Further, the Class Administrator shall maintain a static website providing notice to Class Members in substantially the form attached as **Exhibit D**, as approved by the Court.

B. <u>Address Updating/Mail Returns</u> — For any written Class Notices that are returned as undeliverable by the Postal Service, the Class Administrator shall update the addresses for the Class Members through the NCOA database or other standard methodology that the Class Administrator currently uses to update addresses. To the extent an updated address is available for such Class Members, the Class Administrator shall forward a new Class Notice to those Class Members. NCI's obligation to provide notice of the proposed settlement will be considered fulfilled upon the mailing of such a new written Class Notice by the Class Administrator to any Class Members whose initial Class Notice is returned as undeliverable or upon a determination by the Class Administrator that an updated address for particular Class Members is not available.

REQUESTS FOR EXCLUSION AND OBJECTIONS

8. The Class Administrator shall administer any and all claim forms, requests for exclusion, and objections it receives. The Class Administrator shall promptly send a copy of any exclusion request or objection to counsel for the Parties for appropriate docketing.

9. Any Class Member who desires to receive a share of the class "Settlement Fund" (as defined below) must submit a claim form (**Exhibit E**) with a postmark date no later than forty (40) days from the mailing of Class Notice.

10. Any Class Member who desires to be excluded from the class must mail a written request for exclusion to the Class Administrator with a postmark date no later than forty (40) days from the mailing of Class Notice. The Class Administrator shall promptly provide a list of the names

of each Class Member who submitted a timely exclusion to Class Counsel and counsel for NCI. A copy of this list will be filed with the Court, along with the Plaintiffs' Motion for Final Approval of Class Action Settlement.

11.     In the written request for exclusion, the Class Member must set forth his or her full name, address, telephone number, and email address, if available, along with a statement that he or she wishes to be excluded.

12.     Any Class Member who submits a valid and timely request for exclusion shall not be bound by the terms of this Agreement.

13.     Any Class Member who intends to object to this settlement must file a written objection with the Clerk of the Court within forty (40) days from the mailing of Class Notice (Exhibit C). Further, any such Class Member must, within the same time period, provide a copy of the written objection to Class Counsel and counsel for NCI. In the written objection, the Class Member must state: his or her full name, address, telephone number and email address, if available; the reasons for his or her objection; and, whether he or she intends to appear at the fairness hearing on his or her own behalf or through counsel. The objecting Class Member must also sign the objection, personally or through counsel.

14.     CAFA NOTICE - Pursuant to 28 U.S.C. § 1715, not later than ten (10) days after the Agreement is filed with the Court, Defendant shall cause to be served upon the Attorney General of New York, the Attorney General of the United States, and/or other required government officials, notice of the proposed settlement as required by law.

15.     RELEASES - Plaintiffs and the Class Members release and discharge the Released Parties from the Released Claims as of the date the Defendant causes the "Settlement Fund" (as defined below) to be funded, which is to be within fifteen (15) days of the Final Judgment Date.

16.   DOCUMENT DESTRUCTION - The Parties may destroy documents generated in class administration six months (or earlier if the Parties agree) after the Final Judgment Date.

17.   SETTLEMENT CONSIDERATION - In consideration for the dismissal with prejudice of the Lawsuit and the foregoing releases, the Parties agree to the following:

   A.   Settlement Checks to Class Members - Within fifteen (15) days of the Final Judgment Date, NCI will pay $160,000.00 to the Class Administrator to create a settlement fund (the "Settlement Fund").  The Settlement Fund of $160,000.00 will be distributed by the Class Administrator in checks of equal amounts to each of the Class Members who (a) has submitted a valid claim form and (b) has not excluded himself or herself from the class (the "Eligible Class Members").  There shall be no reverter of any funds to Defendant.

   B.   The settlement checks provided to the Eligible Class Members pursuant to this Agreement shall be sent via U.S. mail no later than thirty-five (35) days after the Final Judgment Date.  Each settlement check will be negotiable for a period of ninety (90) days after it is mailed, and the checks shall prominently so state.  Once a check issued to an Eligible Class Member pursuant to this paragraph becomes void, Defendant shall not have any further obligation to such Eligible Class Member.

   C.   Cy Pres Award - Any residual settlement funds (*e.g.*, checks not cashed within ninety (90) days after the check date, funds that cannot be distributed for want of a valid address, etc.) shall be awarded to the Bronx Defenders, a non-profit legal-aid organization, as a cy pres remedy for the Eligible Class Members.

   D.   Class Representative Service Award and Settlement - Within fifteen (15) days after the Final Judgment Date, NCI shall pay each Class Representative a settlement for his or her individual FDCPA claims in the amount of $1,000.00, 15 U.S.C. § 1692k(a)(2)(B)(i).

10

Additionally, in recognition of Plaintiffs' service as Class Representatives, NCI shall pay each Class Representative an additional $1,500.00 service award, subject to approval of the Court. These payments to the Class Representatives are separate and apart from the Settlement Fund described in paragraph 17(A).

18.     ATTORNEYS' FEES, COSTS, AND EXPENSES - Within fifteen (15) days after the Final Judgment Date, NCI shall pay to Class Counsel approved reasonable attorneys' fees and litigation expenses under 15 U.S.C. § 1692k in an amount not to exceed $40,000.00.  NCI shall not oppose Plaintiffs' application for, and agrees to pay, separate from the Settlement Fund, the amount approved up to $40,000.00 for Class Counsel fees and litigation expenses.

## TERMINATION

19.     After completing a good faith negotiation, Plaintiffs and NCI shall each have the right to terminate this Agreement by providing written notice to the other within seven (7) days of:

    A.     The Court's refusal to enter an Order of Preliminary Approval of Class Action Settlement in substantially the form attached as Exhibit A;

    B.     The Court's refusal to approve the settlement following notice to the Class Members and the fairness hearing; or

    C.     The Court's refusal to enter a Final Order and Judgment in substantially the form attached as Exhibit B.

20.     To the extent 3,500 Class Members or more opt out of the Agreement, NCI shall have the right to rescind the Agreement without penalty or prejudice.  If NCI exercises this right, NCI must notify Class Counsel of its decision to rescind the Agreement within fourteen (14) days of NCI being notified by the Class Administrator of the final number of Class Members that have opted out of the Agreement.

21. If either Plaintiffs or NCI terminates this Agreement as provided herein, if the Court declines to approve it, or if it otherwise does not become effective for any reason, the Agreement shall be null and void and have no force or effect, and the Parties' rights and defenses shall be restored, without prejudice to their respective positions as if this Agreement had never been executed.

## MISCELLANEOUS PROVISIONS

22. Any exhibits to this Agreement are an integral part of the settlement and are expressly incorporated herein as part of this Agreement.

23. NCI is responsible for the Settlement Administration Expenses set forth in paragraph 1(H), the settlement consideration set forth in paragraph 17, and attorneys' fees, costs, and expenses as set forth in paragraph 18. This Agreement shall impose no other financial obligation or liability on NCI.

24. This Agreement is for settlement purposes only. The Parties acknowledge that this Agreement is not an admission of wrongdoing, negligence, or liability by NCI. In fact, NCI expressly denies any wrongdoing, negligence or liability, but has agreed to this settlement to avoid protracted litigation. This Agreement and its exhibits shall not be offered or be admissible against NCI, or cited or referred to in any action or proceeding, except in an action or proceeding brought to enforce the Agreement's terms.

25. The Parties, directly or through counsel, agree that they have not and will not solicit opt-outs.

26. No representations, warranties, or inducements have been made to any of the Parties, other than those representations, warranties, and covenants contained in this Agreement.

27. This Agreement contains the entire agreement between the Parties and supersedes any prior agreements between the Parties. The terms of this Agreement are contractual.

28. This Agreement shall be interpreted in accordance with New York law.

29. Any dispute, challenge, or question relating to this Agreement shall be heard by this Court.

30. The Parties shall request that the Court retain continuing and exclusive jurisdiction over the Parties to this Agreement, including the Plaintiffs and all Class Members, and over the administration and enforcement of this Agreement.

31. This Agreement shall be binding upon and inure to the benefit of the Parties and their representatives, heirs, successors, and assigns.

32. This Agreement shall be deemed to have been drafted jointly by the Parties and, in construing and interpreting this Agreement, no provision of this Agreement shall be construed or interpreted against any party because such provision, or this Agreement as a whole, was purportedly prepared or requested by such party.

33. This Agreement may be signed in counterparts. The separate signature pages executed by the Parties and their counsel may be combined to create a document binding on all of the Parties and together shall constitute one and the same instrument.

IN WITNESS WHEREOF, the Parties hereto, acting by and through their respective counsel of record, have so agreed.

Individually and as Class Representative:

_____         _____
Abraham Kaff                                              Date

Individually and as Class Representative:

_____         _____
Ari Pfeffer                                               Date

Individually and as Class Representative:

_____         _____
Raquel Jager                                              Date

Counsel for Plaintiffs Abraham Kaff, Ari Pfeffer, Raquel Jager and the Class Members:

_____         _____
Daniel Edelman                                            Date
Cathleen M. Combs
Tiffany Hardy
Edelman, Combs, Latturner &
Goodwin, LLC
20 S Clark Street, Suite 1500
Chicago, IL 60603

Maxim Maximov
Maxim Maximov, LLP
1701 Avenue P
Brooklyn, NY 11229

Adam Jon Fishbein
Adam J. Fishbein, Attorney at Law
483 Chestnut Street
Cedarhurst, NY 11516

14

Nationwide Credit, Inc.

By:

_____     _____
Its duly authorized representative                    Date


Counsel for Defendant Nationwide Credit, Inc.:

_____     _____
Joseph L. Noga                                        Date
Jenner & Block LLP
919 Third Avenue
39th Floor
New York, NY 10022