IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NEW YORK

| | |
|---|---|
| ABRAHAM KAFF, ARI PFEFFER and RAQUEL JAGER on behalf of themselves and all other similarly situated consumers<br><br>         Plaintiffs,<br><br>  vs.<br><br>NATIONWIDE CREDIT, INC.<br><br>         Defendant. | CLASS ACTION<br><br>NO. 13-cv-5413 (SLT-PK) |

**CLASS COUNSEL'S MEMORANDUM IN SUPPORT OF**
**FINAL APPROVAL OF CLASS ACTION SETTLEMENT AGREEMENT**

  Plaintiffs Abraham Kaff ("Kaff"), Ari Pfeffer ("Pfeffer"), and Raquel Jager ("Jager") (collectively "Plaintiffs"), individually and as representatives of a class of similarly situated persons, by Class Counsel, Edelman, Combs, Latturner & Goodwin, LLC, Maxim Maximov and Adam Fishbein, respectfully submit the following Memorandum in Support of Final Approval of the Class Action Settlement Agreement ("Agreement") which this Court preliminarily approved on May 23, 2016.

**I.  SUMMARY OF NOTICE PROVIDED TO CLASS**

  On May 23, 2016 this Court granted preliminary approval of the Class Action Settlement. The settlement provides for the certification of the following class: All persons with addresses in the State of New York, who were sent one or more collection letters from Nationwide Credit ('NCI'), that stated "American Express is required to file a form 1099C with the Internal Revenue Service for any cancelled debt of $600 or more" or a substantially identical statement, where the underlying debt being collected was incurred primarily for personal, family or

1

household use, the letter(s) bear(s) a send date from September 30, 2012 through August 7, 2015, and the letter(s) were not returned as undeliverable (Nationwide previously identified approximately 76,843 persons who fall within the class).

The Court is advised that on or before July 7, 2016, the third party class administrator, Rust Consulting Inc., caused notice of this class action settlement to be mailed to the 76,709[1] individuals identified as members of the class. (*See* Exhibit A, Declaration of Amy Tadwald) Prior to the mailing of Class Notice, Rust Consulting Inc., processed and updated the Class List utilizing the National Change of Address database maintained by the U.S. Postal Service.  As of September 29, 2016, 127 Class Notices were returned by the U.S. Postal Service with forwarding addresses. Rust Consulting, Inc., promptly re-mailed the 127 Class Notices to those Class Members with forwarding addresses.

As of September 29, 2016 13,029 Class Notices were returned as undeliverable.  Rust Consulting, Inc., performed 10,395 address traces on Class Notices returned as undeliverable for the first time.  Of the 10,395 address traces performed, Rust Consulting, Inc., was able to obtain 4,848 more current addresses for individuals on the Class List, and Class Notices were promptly sent to those individuals.  Of the 4,848 Notices re-mailed pursuant to the address trace, 752 Class Notices were returned as undeliverable a second time.  Moreover, of the 13,029 Notices that were returned as undeliverable, 1,882 were received after the claim form submission deadline and were not traced.  Thus, a total of 8,181 Class Notices remain undeliverable as of September 29, 2016.

---

[1] This represents the number of individual identified as meeting the class definition after removing duplicate names and addresses from the class list.

As of September 29, 2016 Rust Consulting, Inc., has received 1,997 Claims Forms from Class Members. Of the 1,997 Claim Forms received 1,912 were received with a postmark date on or before the August 16, 2016 Claim Form submission deadline.  Of the 1,997 Claim Forms, 76 Claim Forms were received with a postmark date of August 17, 2016 or later, and received by Rust Consulting, Inc., before September 16, 2016.  Of the 1,997 Claim Forms received, nine (9) Claim Forms were received by Rust Consulting, Inc., after September 16, 2016.

Of the 1,997 Claim Forms received, 86 Claim Forms were received without a signature. Rust Consulting Inc., mailed letters to the 86 Class Members requesting they complete and return an updated Claim Form.  Of the 86 Class Members who were mailed letters, 13 Class Members submitted updated Claim Forms and 73 Claim Forms remain unsigned.

The Parties have agreed to accept Claim Forms received by Rust Consulting, Inc., on or before September 16, 2016 and Claim Forms without a signature.  Therefore, of the 1,997 Claim Forms received, 1,988 Claim Forms are considered complete and timely and nine (9) Claim Forms are considered complete and untimely.

As of September 29, 2016 Rust Consulting received a total of 29 written requests for exclusion.  Of the 29 requests for exclusion received 28 were received timely and one (1) was untimely.  However, Class Counsel requests that the Court treat the untimely request for exclusion as timely.

Only one objection to the settlement was received by Rust Consulting, Inc., and Class Counsel.

II.     **OVERVIEW OF THE LITIGATION PRECEDING SETTLEMENT**

The *Kaff v. Nationwide Credit Action* (1:13-cv-05413) was commenced on September 30, 2013. Subsequently, the *Jager v. Nationwide Action* (1:15-cv-01183) was commenced on March

6, 2015. Thereafter, the *Pfeffer v. Nationwide Action* (1:15-cv-01192) was commenced on March 8, 22015. The *Kaff, Jager, and Pfeffer* Actions each alleged that Defendant Nationwide violated the Fair Debt Collection Practices Act ("FDCPA") by sending collections letters to plaintiffs and the class members that contained a statement to the effect of "American Express is required to file a form 1099C with the Internal Revenue Service for any cancelled debt of $600 or more."

Nationwide moved to dismiss the *Kaff* Complaint. Nationwide's Motion to Dismiss was fully briefed as of May 9, 2014. On March 31, 2015 this Court entered a Memorandum and Order denying Nationwide's Motion to Dismiss. The *Kaff, Jager, and Pfeffer* actions were subsequently consolidated. On August 28, 2015 plaintiffs filed their consolidated First Amended Complaint, putting the three cases together. On September 15, 2015, plaintiffs filed a Corrected Amended Complaint.

On March 30, 2016, plaintiffs filed a motion for preliminary approval of this Class Action Settlement. The parties' agreement was preliminarily approved by the Court on May 23, 2016. Notice was issued to class members on or about July 7, 2016.  As demonstrated below, the parties' Agreement is now ripe for this Court's consideration and final approval.

### III.     THE ADMINISTRATION OF THIS CLASS ACTION SETTLEMENT

####       A.     The Preliminary Approval Order.

On May 23, 2016, this Court entered an order granting preliminary approval of the Agreement reached between the parties.  In the Preliminary Approval Order ("Order"), the Court specifically found that the proposed terms of the settlement satisfied all of the elements of Federal Rule of Civil Procedure 23(a) and 23(b)(3).
This Court provisionally certified the following class, for purposes of Settlement, defined as:

> All persons with addresses in the State of New York, who were sent one or more collection letters from NCI, that stated "American

4

> Express is required to file a form 1099C with the Internal Revenue Service for any cancelled debt of $600 or more" or a substantially identical statement, where the underlying debt being collected was incurred primarily for personal, family, or household use, the letter(s) bear(s) a send date from September 30, 2012 through August 7, 2015, and the letter(s) were not returned as undeliverable.

The Order further established a procedural framework for the final approval of the settlement. The Order appointed Rust Consulting, Inc., as the class administrator and direct Rust Consulting to cause notice to be mailed to the members of the above defined Class. Additionally, the Order set deadlines and procedures for the claim form submissions, requests for exclusion and objections to the settlement, and set a fairness hearing date of October 14, 2016.

**B.     The Value of the Settlement.**

The Court has previously considered the terms of the settlement in entering the Order, which are as follows:

Defendant will pay $160,000.00 to the Class Administrator to create a class Settlement Fund ("Settlement Fund"). The Settlement Fund of $160,000.00 will be distributed by Rust Consulting in checks of equal amounts to each class member who has submitted a claim form and has not excluded himself or herself from the Class. Based on the 1912 Claim Forms received timely, each class member shall receive approximately $83.68. Class Counsel request that those class members who submitted late as well as unsigned claim forms be allowed to participate and receive their equal share of the class settlement fund. If the Class members who submitted late and unsigned claim forms are allowed to participate and receive their equal share of the Class fund, each class member will receive, approximately $80.12.

The Settlement Agreement further provides that:

Nationwide shall pay each Class Representative a settlement for his/her individual FDCPA claims in the amount of $1,000. Additionally, in recognition of Plaintiffs' service as Class Representative, Nationwide will pay each Class Representative an additional $1,500.00 service award, subject to Court approval.

Subject to Court approval, Nationwide shall pay Class Counsel $40,000.00 as attorneys' fees and costs.  Class Counsel submitted its fee petition on August 11, 2016.

Additionally, Nationwide agreed and has paid all class notice and administration fees separate and apart from the Settlement Fund.

The distribution will be in the form of a check which will become void ninety (90) days from the date of issue of class member settlement checks.  Any uncashed checks and undistributed funds will be paid to Travelers Insurance to offset its costs associated with sending class notice and distributing settlement checks.  If there are any funds remaining after Traveler's administration costs have been paid, any uncashed funds will be distributed as a *cy pres* recovery to three (3) recipients selected by the Court.

### C. Requests for Exclusions

As of September 30, 2016, there were a total of twenty-nine (29) requests for exclusion received.

### D. Objections

The only purported objection filed with the Court and received by Rust Consulting and Class Counsel was submitted by Anthony Carfizzi. It is unclear from Mr. Carfizzi's submissions if he purports to object to the terms of the Class Action Settlement, or the basis for his objections.

Mr. Carfizzi's submissions concerning this class action settlement frequently reference the class action settlement in the matter *Lopez v. American Express Bank and Centurion Bank*, Case No. CV-09-07335 SJO (MANx) pending in the Central District of California. Mr. Carfizzi submitted copies of his objection to the *Lopez v. American Express et al* Class Settlement to Class Counsel along with his correspondence concerning this instant lawsuit.

The *Lopez v. American Express et al* lawsuit and corresponding settlement has nothing to do with the matter before this Court. In *Lopez v. American Express* the original complaint asserted claims against Defendants American Express and Centurion Bank for violation of the Truth in Lending Act, 15 U.S.C. § 1601 *et seq.* (TILA) and for breach of the covenant of good faith and fair dealing based on changes made to the fixed interest rate on Plaintiff's American Express Credit Card Account.

Subsequently, Plaintiff Lopez filed an amended complaint adding additional allegations that Defendants violated California's Unfair Competition Law, Cal.Bus. & Prof. Code § 17200 *et seq.* and violations of California's Consumers Legal Remedies Act, Cal. Civ. Code §1750 *et seq.*

In this action, plaintiffs allege that Defendant Nationwide Credit, Inc. violated the Fair Debt Collection Practices Act ("FDCPA") in connection with letters defendant NCI sent to plaintiffs and the class members which state "American Express is required to file a form 1099C with the Internal Revenue Service for any canceled debt of $600 or more."

On August 12, 2016 Class Counsel sent a letter to Mr. Carfizzi explaining that this action was unrelated to the *Lopez* case and requesting that he advise what he wished to do in response

7

to the Class Notice of Settlement in this action (submit a claim form, request exclusion or object). (Exhibit C).

In one of Mr. Carfizzi's submissions he includes a copy of the class notice from the *Lopez* case containing handwritten notes (Exhibit D). It is unclear how that has any relation to this case.

The class release in this case provides:

> "Released Claims" shall mean any and all actual, potential, filed, known, or unknown, fixed or contingent, claimed or unclaimed, suspected or unsuspected, claims, causes of action, suits, obligations, debts, demands, agreements, rights, promises, liabilities, damages, losses, controversies, costs, expenses, and attorneys' fees of any nature whatsoever, whether based on any federal law (including the FDCPA), state law, common law or any other law (including the law of any jurisdiction outside the United States), rule or regulation, or of any other type or form (whether in contract, tort, or otherwise, including statutory, common law, property, and equitable claims), which Plaintiffs or any Class Member now have, or ever had, against the Released Parties arising out of the facts, transactions, events, matters, occurrences, acts, disclosures, statements, omissions, or failures to act relating to their receipt of or NCI's sending of the "Subject Letters" (as defined below) to the Plaintiffs and Class Members. Notwithstanding the foregoing, the Plaintiffs and Class Members specifically reserve the right to dispute the amount of the alleged debts that they owe to NCI or its clients that underlie the Subject Letters. Nothing herein shall prevent Defendant or another from continuing to attempt to collect the debts owed by the Plaintiffs and Class Members. The release shall become effective as of the date the Defendant causes the "Settlement Fund" to be funded.

Any claims Mr. Carfizzi has relating to the *Lopez* lawsuit and settlement are not being released in this case.

Mr. Carfizzi also submitted correspondence dated July 19, 2016 that appears to be addressed to the Class Administrator in the *Lopez* lawsuit, wherein Mr. Carfizzi writes about the variable interest rates and the filing of lawsuits against him by American Express and Centurion

8

Bank in the Supreme Court, Orange County. (Exhibit E).  Mr. Carfizzi goes on to describe the procedural history of litigation between Mr. Carfizzi and American Express pending in the New York state trial courts. Again, it remains unclear how this has any bearing on the *Kaff* action that arose out of a collection letter that contained the statement "American Express is required to file a form 1099C with the Internal Revenue Service for any canceled debt of $600 or more."

Mr. Carfizzi's submission to Class Counsel also includes a newspaper article entitled "US Sues 3 Largest Credit Card Issuers" from the Times Herald-Record dated October 5, 2010. The Article contained handwritten notes referencing HSBC.  Class Counsel does not see any relationship between the article (including the handwritten notes) and the *Kaff* case.

Mr. Carfizzi also included in his submission another article "How Wall Street Fleeced the World" dated October 18, 2010.  This article contained handwritten notes and notations with no apparent relationship to the claims alleged in this action, or the terms of this settlement. (Exhibit F).

Mr. Carfizzi also submitted a letter addressed to him from Chase Bank USA NA Check Loan Contract Settlement dated February 26, 2013.The letter appears to concern another class action settlement concerning Chase Bank. This document also contains a variety of handwritten notes. This document does not appear to be relevant to this case or this settlement.

Mr. Carfizzi also submits a variety of other communications between himself and the Office of the Comptroller of Currency (concerning Citibank), and the Grievance Committee for Lawyers (appears to be concerning the attorneys of record in the *Lopez* lawsuit); and the Supreme Court of Orange County concerning an action pending in that court.

Mr. Carfizzi submitted another letter wherein he purports to object to the settlement in this action because he wants the complaint amended to other allegations concerning violations of Federal law. (Exhibit G). This is not a basis for the court to withhold approval of the class action settlement. Mr. Carfizzi has not established that Class Counsel omitted to allege any viable and/or meritorious claims applicable to the class. Further, Mr. Carfizzi does not specifically identify what those "applicable laws in violation of Federal Statutes omitted and overlooked" are. Most, if not all, of Mr. Carfizzi's submissions appear to involve a variety of different credit card companies and presents issues that are unique to him. Further, based on the dates on the submissions from Mr. Carfizzi, there may be statute of limitations issues.

Additionally, Mr. Carfizzi's submission to the Court states concerns about FICO or Fair Isaac Company. It is important to note that FICO deals with credit scoring, an issue that has never been raised in this action. Further, Mr. Carfizzi's reference to FICO seems to be directed at Visa, Mastercard and American Express. Considering that the initial complaint in this action never named any of these entities as defendants and never raised any credit reporting issues, the proposed amendment that Mr. Carfizzi seeks would be improper.

Mr. Carfizzi was free to opt-out of the settlement and pursue any claims he believes exists on an individual basis. Further, none of the potential claims asserted by Mr. Carfizzi are being released in this settlement.

Mr. Carfizzi was the sole objector to the settlement and he has not set forth a valid basis for this Court to not grant final approval to the Settlement. Class Counsel requests that this Class Action Settlement be approved over Mr. Carfizzi's objection.

### IV. THE COURT SHOULD GRANT FINAL APPROVAL TO THE SETTLEMENT.

The settlement satisfies all the requirements of Rule 23.

#### A. Rule 23(a)(1) - The Settlement Classes Are So Numerous That Joinder Of All Members Is Impracticable.

Notice of the settlement was subsequently sent to a total of 76,709 class members pursuant to the Court's order. Courts has recognized that as few as 40 class members are sufficient to satisfy the "numerosity" requirement of Rule 23(a)(1). *Korn v. Franchard Corp.,* 456 F.2d 1206, 1209 (2nd Cir. 1972) ("forty investors have been said to represent a sufficiently large group" for class certification); *Town of New Castle v. Yonkers Contracting Co., Inc.,* 131 F.R.D. 38, 40-41 (S.D.N.Y. 1990) (potential class of 36 class members satisfied numerosity requirement); *Fidelis Corporation v. Litton Industries, Inc.,* 293 F. Supp. 164, 170 (S.D.N.Y. 1968) (35-70 potential plaintiffs sufficient to satisfy numerosity requirement); *Cypress v. Newport News General & Nonsectarian Hosp. Ass'n,* 375 F.2d 648, 653 (4th Cir. 1967) (18 sufficient); *Swanson v. American Consumer Industries,* 415 F.2d 1326, 1333 (7th Cir. 1969) (40 sufficient); *Riordan,* 113 F.R.D. 60 (10-29 sufficient)*; Philadelphia Electric Co. v. Anaconda American Brass Co.,* 43 F.R.D. 452, 463 (E.D.Pa. 1968) (25 sufficient); *Sala v. National R. Pass. Corp.,* 120 F.R.D. 494, 497 (E.D. Pa. 1988) (40-50 sufficient); *Scholes v. Stone, McGuire & Benjamin,* 143 F.R.D. 181, 184 (N.D. Ill. 1992) (about 70). The Second Circuit presumes numerosity at a level of 40 members. *Consolidated Rail Corp. v. Town of Hyde Park*, 47 F.3d 473, 483 (2d Cit. 1995); *Ansari v. New York Univ., 179 F.R.D. 112, 114 (S.D.N.Y. 1998).* The number of Class members in this case satisfies the numerosity requirement of Rule 23(a)(1).

B.  **Rule 23(a)(2) - The Claims Of The Settlement Class Arise From Common Questions Of Law And Fact.**

The "commonality" requirement of Rule 23(a)(2) is usually satisfied where the class members' claims arise from a common nucleus of operative fact. *Rosario v. Livaditis*, 963 F.2d 1013 (7th Cir. 1992). Rule 23(a)(2) requires only that the class members share at least one question of fact or law in common. *Kreuzfeld A.G. v. Carnehammer*, 138 F.R.D. 594, 599 (S.D.Fla. 1991) (the issue of commonality "turns on whether there exists at least one issue affecting all or a significant number of proposed class members"). See also *D'Alauro v. GC Services Ltd. Partnership*, 168 F.R.D. 451, 456 (E.D.N.Y. 1996).

In the present case, the claims arose from defendant's sending collection letters to plaintiffs and the class members that contained a statement to effect of "American Express is required to file a form 1099C with the Internal Revenue Service for any cancelled debt of $600 or more". This conduct gives rise to the predominant common question of whether such action violates the FDCPA. This common question satisfies Rule 23(a)(2).

C.  **Rule 23(a)(3) - Named Plaintiffs' Claims Is Typical Of the Claims Of The Settlement Class.**

The "typicality" requirement of Rule 23(a)(3) is satisfied for many of the same reasons that the "commonality" requirement of Rule 23(a)(3) is met. *De La Fuente v. Stokley-Van Camp, Inc.*, 713 F.2d 225, 232 (7th Cir. 1993)("A plaintiff's claim is typical if it arises from the same event or practice or course of conduct that gives rise to the claims of other class members and his or her claims are based on the same legal theory"); *see also Kornberg v. Carnival Cruse Lines, Inc.*, 741 F.2d 1332, 1337 (11th Cir. 1984) (the typicality requirement is satisfied where the "claims or defenses of the class and the class representative arise from the same event or practice and are based upon the same legal theory").

12

Rule 23(a)(3) is satisfied "when each class member's claim arises from the same course of events and each class member makes similar legal arguments to prove the defendant's liability." *Robidoux v. Celani*, 987 F.2d 931, 936 (2d Cir. 1993), *citing In re Drexel Burnham Lambert Group, Inc.*, 960 F.2d 285, 291 (2d Cir. 1992). "When the same 'unlawful conduct was directed at both the named Plaintiff and the class to be represented, the typicality requirement is usually met irrespective of varying fact patterns which underlie individual claims.'" *Savino v. Computer Credit, Inc.*, 173 F.R.D. 346, 352-53 (E.D.N.Y. 1997), *quoting I Newberg on Class Actions* §3.13; *D'Alauro v. GC Services Ltd. Partnership*,168 F.R.D. 451, 456-457 (E.D.N.Y. 1996).

In the present case, each plaintiff's claim arose from defendant sending collection letters that contained a statement to effect of "American Express is required to file a form 1099C with the Internal Revenue Service for any cancelled debt of $600 or more". By definition, each of the class members has been subjected to the same practice as the plaintiffs. Accordingly, the typicality requirement of Rule 23(a)(3) is met.

### D. Rule 23(a)(4) - Plaintiffs and Class Counsel Will Fairly And Adequately Protect The Interests Of The Settlement Class.

The determination that the "representative parties will fairly and adequately protect the interests of the class" as required by Rule 23(a)(4) involve two considerations: (1) whether the plaintiffs' attorneys are properly qualified and experienced to conduct the litigation; and (2) whether the plaintiffs have any interests antagonistic to the class. *General Tel. Co. v. Falcon*, 102 S.Ct. 2364, 2370, n.13 (1982); *Retired Chicago Policy Ass'n v. City of Chicago*, 7 F.3d 584, 598 (7th Cir. 1993).

As set forth in Class Counsel's Declaration, attached hereto as <u>Exhibit B</u>, plaintiffs' counsel is experienced in class action and FDCPA litigation. In addition, the plaintiffs have shown through their collective prosecution of this matter that they have no interests which are

13

antagonistic to the Class. Therefore, plaintiffs and their counsel satisfy the adequacy of representation requirement embodied in Rule 23(a)(4).

### E. The Settlement Class May Be Certified Pursuant to Rule 23(b)(3).

Class certification is appropriate under Rule 23(b)(3) where: (1) common questions of law or fact predominate over individual questions; and where (2) a class action represents a superior method for the fair and efficient adjudication of the controversy. Both of these requirements are satisfied in the present case.

#### 1. Common questions predominate over individual issues.

In order for common questions of law or fact to predominate over individual issues for purposes of Rule 23(b)(3), common issues must constitute a significant part of the individual cases. *Jenkins v. Raymark Industries, Inc.*, 782 F.2d 468, 472 (5th Cir. 1986). Courts "generally focus on the liability issues in deciding whether the predominance requirement is met, and if the liability issue is common to the Class, common questions are held to predominate." *In re Alexander Grant & Co. Litigation*, 110 F.R.D. 528, 534 (S.D.Fla. 1986); *see also Dura-Built Corp. v. Chase Manhattan Corp.*, 89 F.R.D. 87, 89 (S.D.N.Y. 1981). In the present case, a common issue relating to the lawfulness of NCA's collection efforts directed against plaintiff and the Class members predominates over individual issues, if any, as required by Rule 23(b)(3).

#### 2. A Class Action is Superior to Other Methods of Resolving This Matter.

For many of the reasons set forth above, a class action is the superior method to resolve the claims presented in this action. In determining the superiority of a class action, the Court must consider the best available method of resolving the controversy in keeping with the goal of judicial economy. In reaching this determination, the Court should consider the inability of the uninformed to bring their claims and the improbability that large numbers of Class members would possess

the initiative to litigate individually. *Haynes v. Logan Furniture Mart, Inc.*, 503 F.2d 1161, 1165 (7th Cir. 1974). In *Phillips Petroleum Company v. Shutts*, 472 U.S. 797, 809, 105 S.Ct. 2965 (1985), the Supreme Court recognized that in cases where the class members' claims are too many or too small to litigate on an individual basis, the Court should certify the case as a class action under Rule 23(b)(3).

Given the number of individual lawsuits that would be required if a class were not certified, a class action presents a superior method to fairly and efficiently adjudicate all of the claims of the class in this case, within the meaning of Rule 23(b)(3). Furthermore, many class members would not be aware of their potential claims and therefore not pursue them. To the extent that any Class members wished to pursue any such individual claims, they were free to opt-out of the settlement under Rule 23(b)(3). In the present case, only twenty-none (29) requests for exclusion were received.

      **F.**    **The Standard For Granting Final Approval To The Class Action Settlement.**

In *Amchem Productions, Inc. v. Windsor*, 521 U.S. 591, 117 S.Ct. 2231 (1997), the United States Supreme Court explained that, before approving a class action settlement, the District Court must first be satisfied that the elements of Rule 23(a) and 23(b) have been met. *Id.* at 621, 117 S.Ct. at 2248.

Once the Court has determined that the requirements of Rule 23(a) and 23(b) have been met, the Court must then determine whether the settlement meets the *Grinnell* factors. *City of Detroit v. Grinnell Corp.*, 495 F.2d 448, 463 (2d Cir. 1974). These factors are (1) the complexity, expense and likely duration of the litigation; (2) the reaction of the class to the settlement; (3) the stage of proceedings and amount of discovery completed; (4) the risks of establishing liability; (5) the risks of establishing damages; (6) the risks of maintaining the class action through trial; (7) the

ability of the defendants to withstand greater judgment; (8) the range of reasonableness of the settlement in light of the best possible recovery; and (9) the range or reasonableness of the settlement fund to a possible recovery in light of all the attendant risks of litigation. *Id.* The class action settlement in the present case satisfies each of the factors outlined in *Grinnell*.

The settlement is warranted by the complexity, expense, and likely duration of continued litigation, satisfying the first *Grinnell* factor. The parties engaged in informal discovery and began settlement discussion shortly after the court's ruling on Defendant's Motion to Dismiss. Lawyers for both parties were prepared to devote considerable time and effort to litigating this action if the settlement was not reached, and even greater effort would have been required to prepare and take the case through trial.

The settlement easily satisfies the second *Grinnell* factor because only twenty-nine (29) of class members requested exclusion from the settlement and only one class member objected to the settlement.

The third *Grinnell* factor also supports the final approval of this settlement in light of the proceedings and the discovery completed to date. Although the parties did not engage in formal discovery in this case, the parties spent significant time at the pleadings stage and had gather significant information concerning the class during the parties' settlement negotiations.

The fourth, fifth, sixth, and seventh *Grinnell* factors are satisfied. Defendant disputed plaintiffs' claims and believes that it would prevail at trial. Both parties recognized that there were risks and costs associated with further litigation.

In order to avoid the uncertainly presented by litigation, the parties agreed to settle the dispute between them.

Recovery from the settlement satisfies the eighth and ninth *Grinell* factors, as it allows all class members to recover statutory damages for the alleged violation.

While plaintiffs believe that their claims were strong on the merits, there were certain risks associated with further litigation. In particular, Nationwide's asserted *bona fide* error affirmative defense. Thus, in order to avoid the uncertainty presented by further litigation, the parties agreed to compromise the dispute between them. The compromise provides that each class member whose claim form is accepted by the Court will receive a settlement check from the $160,000.00 settlement fund.

Based on the number of claim forms received as of the date of this filing, including those claim forms received after the deadline and those without signatures, each participating member will receive approximately $80.12 (assuming the court allows the individuals who submitted late and unsigned claim forms to receive a share of the class Settlement Fund).

Under the FDCPA, in an individual action, the person bringing the suit may recover (i) any actual damages suffered; and (ii) statutory damages of between $0 and $1,000.00. In a class action, the maximum possible recovery is (i) any actual damages suffered by the class members and (ii) the lesser of 1% of the Defendant's net worth or $500,000.00. Based on the Defendant's net worth, the arguable strength of the Class's claims compare favorably to the terms of the settlement, satisfying the first of the *Grinell* factors.

V.      **THE ATTORNEY'S FEES AND COSTS ARE REASONABLE**

Pursuant to the parties' settlement agreement in this case, Class Counsel respectfully requests approval of payment of attorney's fees of $40,000. As set forth in detail in the Class Counsel's Fee petition (Dkt # 51) Declaration of Tiffany N. Hardy attached hereto as Exhibit B, Edelman, Combs, Latturner & Goodwin, LLC alone has incurred as of the date of the filing of this

17

memorandum: attorneys' fees in the amount of $32,259.00, and expenses totaling $239.22. Additionally, Plaintiff's other counsel had incurred fees of $19,662.50 as of August 2016. This does not include the attorney's fees and costs incurred by Class Counsel Adam Fishbein. Class counsel will incur additional fees and costs in connection with this settlement, including responding to calls and inquiries from class members, and appearing for the fairness hearing.

Class Counsel includes experienced class action attorneys, all of whom contributed their skills and expended their resources in a coordinated effort that resulted in the settlement of this matter.

## VI. CONCLUSION

For all the reasons set forth above, plaintiffs individually, and as representatives of the Class, by Class Counsel, requests this Court grant final approval of the Agreement and enter the parties' proposed final approval order which will be submitted to Court.

Respectfully submitted,

s/ Tiffany N. Hardy
Tiffany N. Hardy

Tiffany N. Hardy
EDELMAN, COMBS, LATTURNER & GOODWIN, LLC
20 S. Clark Street, Suite 1500
Chicago, Illinois  60603
(312) 739-4200
(312) 419-0379 (FAX)

## **CERTIFICATE OF SERVICE**

      I, Tiffany N. Hardy, hereby certify that on September 30, 2016, I caused to be filed the foregoing document via the CM/ECF System, which sent notification of such filing to all counsel of record.

                                                          s/ Tiffany N. Hardy
                                                            Tiffany N. Hardy

Tiffany N. Hardy
EDELMAN, COMBS, LATTURNER & GOODWIN, LLC
20 S. Clark Street, Suite 1500
Chicago, Illinois 60603
(312) 739-4200
(312) 419-0379 (FAX)