# EXHIBIT C

LAW OFFICES
EDELMAN, COMBS, LATTURNER & GOODWIN, LLC
20 South Clark Street
Suite 1500
Chicago, Illinois 60603
Phone 312/739-4200
Fax 312/419-0379

August 12, 2016

**VIA U.S MAIL**
Anthony J. Carfizzi
P.O. Box 685
Vails Gate, NY 12584-0685

   Re: *Abraham Kaff v. Nationwide Credit, Inc.*
      **Case No. 1:13-cv-05413-SLT-PK**

Dear Mr. Carfizzi,

 We received the documents you forwarded regarding the *Lopez v. American Express* settlement. We have reviewed the documents enclosed and would like to inform you that the *Kaff v. Nationwide Credit, Inc.* settlement is in no relation to the *Lopez v. American Express* settlement.

 You received a notice of settlement of a class action because you have been identified as a class member in a lawsuit filed against the defendant, Nationwide Credit, Inc. ("NCI"). A settlement agreement has been reached in a class action lawsuit that claims that NCI violated the FDCPA. Plaintiffs claim that the letter NCI sent to them and class members violated the FDCPA because the letter stated "American Express is required to file a form 1099C with the Internal Revenue Service for any cancelled debt of $600 or more" or made a substantially identical statement. NCI denies it violated any laws and denies liability to Plaintiffs and the class. The Court has not decided which side is right, and NCI denies any liability or wrongdoing.

 NCI has agreed to provide a settlement fund of $160,000.00 to be distributed equally among class members who submit a valid claim form. If the Court approves the Settlement, Settlement Class Members who submit a valid Claim Form will be paid an equal share of the $160,000.00 settlement fund.

 If you don't want to be legally bound by the settlement, you must request exclusion from the settlement by **August 16, 2016.** Your request must be sent to class counsel at EDELMAN, COMBS, LATTURNER & GOODWIN, LLC, 20 S. Clark St., Suite 1500, Chicago, IL 60603. If you want to object to the settlement you may write to the Court about why you don't like the

settlement and why you don't want it approved. If you do nothing, you will not receive a share of the settlement fund, but you will be bound by the terms of the settlement agreement.

If you do not opt-out of the settlement you will be granting Nationwide the following release of claims:

> "Released Claims" shall mean any and all actual, potential, filed, known, or unknown, fixed or contingent, claimed or unclaimed, suspected or unsuspected, claims, causes of action, suits, obligations, debts, demands, agreements, rights, promises, liabilities, damages, losses, controversies, costs, expenses, and attorneys' fees of any nature whatsoever, whether based on any federal law (including the FDCPA), state law, common law or any other law (including the law of any jurisdiction outside the United States), rule or regulation, or of any other type or form (whether in contract, tort, or otherwise, including statutory, common law, property, and equitable claims), which Plaintiffs or any Class Member now have, or ever had, against the Released Parties arising out of the facts, transactions, events, matters, occurrences, acts, disclosures, statements, omissions, or failures to act relating to their receipt of or NCI's sending of the "Subject Letters" (as defined below) to the Plaintiffs and Class Members. Notwithstanding the foregoing, the Plaintiffs and Class Members specifically reserve the right to dispute the amount of the alleged debts that they owe to NCI or its clients that underlie the Subject Letters. Nothing herein shall prevent Defendant or another from continuing to attempt to collect the debts owed by the Plaintiffs and Class Members. The release shall become effective as of the date the Defendant causes the "Settlement Fund" (as defined below) to be funded.

As you requested, I have enclosed a copy of the Settlement Agreement. It is unclear from your letter if you wish to opt-out of the settlement, or you are merely seeking more information. Please do contact me to clarify your intentions. Also, please note that if you wish to participate in the settlement and receive a share of the settlement fund your claim form must be postmarked by **August 16, 2016**.

Should you have any questions, please feel free to contact me at 312-917-4200 or at thardy@edcombs.com.

Respectfully Yours,

*Tiffany N. Hardy*

Tiffany N. Hardy

# EXHIBIT D

Lopez v AMEX Settlement Administrator
PO Box 3747
Portland, OR 97208-3747

PRESORTED
FIRST-CLASS MAIL
AUTO
U.S. POSTAGE
PAID
PORTLAND, OR
PERMIT NO. 2882

## Legal Notice about a Class Action Settlement.


878603703876

ANTHONY J CARFIZZI
PO BOX 685
VAILS GATE, NY 12584-0685

279
79480

California USTHEl Court LEGAL NOTICE Katz et al vs. National Direct Credit, y

If you had an American Express card issued by American Express Centurion Bank or American Express Bank, FSB with a fixed interest rate, and you received notice of an increase in the rate or a change to a variable rate between October 1, 2005 and December 31, 2010, this Notice describes your rights and potential benefits from a class action settlement.

TIP OF Iceberg

*This Notice may affect your legal rights. Please read it carefully.*  Much worse +  CASE # 13 cv 5413 SL

**What is this settlement about?** The proposed settlement resolves a case in which the Plaintiffs allege that the interest rate on credit and charge cards issued by American Express with a fixed interest rate could not be increased or changed to a variable rate unless the account was delinquent or in default. American Express denies these allegations.

**Who is in the Settlement Class?** You are in the Settlement Class if you were an American Express cardmember in the United States with a consumer or small-business card issued by American Express with a fixed annual percentage rate for purchases, and you received notice that the rate would increase or be changed to a variable rate at any time between October 1, 2005 and December 31, 2010.

**What are the terms of the settlement?** American Express will pay up to $6 million to cover: (1) cash payments to eligible Settlement Class Members of up to $4 million and not less than $3.5 million in total; (2) Plaintiffs' attorneys' fees and costs up to $1.6 million; (3) service awards to Plaintiffs up to $5,000 each; and (4) notice and administration costs. Plaintiffs estimate that eligible Settlement Class Members will receive a cash award of approximately $32.50 per eligible claim.

**How do I request a payment?** You are eligible to submit a claim for payment unless your account did not have an existing balance or was delinquent or in default at the time of the rate change; if any American Express account in your name has been written off or charged off; or if you have already received a refund or rate reduction. You may submit a claim at www.aprsettlement.com or call 1-877-803-8698 to request a paper Claim Form. Claims must be submitted by **August 30, 2016**.

**What are my other options?** If you don't want to be legally bound by the settlement, you must exclude yourself by **August 30, 2016**, or you will not be able to pursue claims against American Express in the future. If you stay in the settlement, you may object to the settlement by **August 30, 2016**.

The Court will hold a hearing in this case (*Lopez v. American Express Bank, FSB*, Case No. CV 09-07335 (C.D. Cal.)) on **October 17, 2016** to consider whether to approve the settlement, Plaintiffs' request for attorneys' fees, costs and service awards. You may appear at the hearing but don't have to.

This Notice is a summary only. Additional information, including on how to exclude yourself or object, is available at www.aprsettlement.com. You may also contact the Settlement Administrator toll-free at 1-877-803-8698 or by writing to Lopez v AMEX Settlement Administrator, PO Box 3747, Portland, OR 97208-3747.

*Si desea recibir esta notificación en español, llámenos o visite nuestra página web.*   Checks to MN

Copies of MANY  05141 v.03 06.17.2016

I have PROFFER PROOF OF PREDATORY Misconduct and/or PONZI Scheme — BANKS - LEGAL Papers

# EXHIBIT E

TO:
Settlement Administrator
Lopez vs. Amex and/or FSB or
American Express Centurion Bank
P.O. Box 3747
Portland, Oregon 97208-3747

July 19, 2016

Re: Refused to Answer Attorneys for Plaintiff - Forster & Garbus Summons and Complaint Received Supreme Court Orange County

New York State Court Rules Attorneys for Plaintiff - Forster & Garbus and/or Supreme Court Violating C.P.L.R.

Sirs:: The criteria for this class action suit has been affirmed as the variable interest rate changed between Oct. 2005 and Dec. 2010. The records in my possession clearly show American Express Bank FSB, (Express American) Centurion Bank (Both listed) filing a lawsuit against me, Anthony Carfizzi, in Supreme Court, Orange County, Goshen, N.Y. The legal papers were returned to me stating there are no cases as of a certain date. Citibank was also filing a case against me simultaneously. I have all of the court papers. Finally, I received a notice from City of Middletown Court, 2 James Street, Middletown, N.Y. 10940. The Supreme Court transferred the case from Supreme Court, Goshen to City of Middletown Court. I resubmitted court papers. I appeared in Court for Stephen Brockett, Justice of the Court. Forster & Garbus did not show-up for the court date. An attorney, Thomas Grogan appeared. The case was dismissed. I have all the paperwork. Enclosed

**BUSINESS**

# US sues 3 largest credit card issuer

## Gov't settles with Visa, MasterCard

The Associated Press

WASHINGTON – The Justice Department on Monday sued the three largest U.S. credit card companies for anticompetitive practices and reached a proposed settlement with two of them, MasterCard and Visa.

"We want to put more money in consumers' pockets, and by eliminating credit card companies' anticompetitive rules, we will accomplish exactly that," Attorney General Eric Holder told an afternoon news conference. "The companies put merchants and their customers in a no-win situation" and "consumers are being held hostage."

American Express Co. said it is willing to wage a multiyear fight against the federal lawsuit, arguing the Justice Department's proposed remedy would promote steering customers from one payment network to another and "will do nothing to

various state attorneys general sued all three companies, saying they were attempting to insulate themselves from competition.

At the same time, the Justice Department filed a settlement it has reached with Visa

and MasterCard agree not to prohibit merchants from offering customers discounts or rebates for using a particular kind of card. Visa and MasterCard also must allow merchants to express preferences for the use of a low-cost car within a net-

chants from promoting the use of competing credit or charge cards with lower acceptance fees.

Each time consumers use a credit card to make a purchase, the merchant must pay a fee. Such fees brought in $35 bil-

**CREDIT CARD, 11 P**

---

HSBC to your lawyer

Receipt HSBC

SUBSTITUTE PAYMENT COUPON

NAME AND ADDRESS

ACCOUNT NUMBER/LOAN #  86957748 00

LINE OF CREDIT OR HOME EQUITY LINE
LOAN #
MORTGAGE

COMMENTS  Citizens Bank, HSBC, Chase, Citibank, Bank of America, Barclays Discover Card, RBS

AMOUNT PAID  300

Told me to go to Barclays The White

Tell me interest!!

# EXHIBIT F

## MOVIES
# How Wall Street Fleeced the World.
### The searing new doc *Inside Job* indicts the bankers and their Washington pals

*AND SO FAR THE COURTS?*



**See no evil** *Timothy Geithner, Henry Paulson and Ben Bernanke declined to be interviewed*

**BY MARY CORLISS AND RICHARD CORLISS**

LIKE SOME MALEFACTOR BEING GRILLED BY Mike Wallace in his *60 Minutes* prime, Glenn Hubbard, dean of Columbia Business School, gets hot under the third-degree light of Charles Ferguson's questioning in *Inside Job*. Hubbard, who helped design George W. Bush's tax cuts on investment gains and stock dividends, finally snaps, "You have three more minutes. Give it your best shot." But he has already shot himself in the foot.

Frederic Mishkin, a former Federal Reserve Board governor and for now an economics professor at Columbia, begins stammering when Ferguson quizzes him about when the Fed first became aware of the danger of subprime loans. "I don't know the details... I'm not sure exactly... We had a whole group of people looking at this." "Excuse me," Ferguson interrupts, "you can't be serious. If you would have looked, you would have found things."

Ferguson—whose Oscar-nominated *No End in Sight* analyzed the Bush Administration's slipshod planning of the Iraq occupation—did look at the Fed, the Wall Street solons and the decisions made by White House administrations over the past 30 years, and he found plenty. Of the docufilms that have addressed the worldwide financial collapse (Michael Moore's *Capitalism: A Love Story*, Leslie and Andrew Cockburn's *American Casino*), this cogent, devastating synopsis is the definitive indictment of the titans who swindled America and of their pals in the federal government who enabled them.

**Ferguson's quiet fury is infectious. If you're not enraged by the end of this movie, you haven't been paying attention**

With a Ph.D. in political science from MIT, Ferguson is no knee-jerk anticapitalist. In the '90s, he and a partner created a software company and sold it to Microsoft for $133 million. He is at ease talking with his moneyed peers and brings a calm tone to the film (narrated by Matt Damon). Yet you detect a growing anger as Ferguson digs beneath the rubble, and his fury is infectious. If you're not enraged by the end of this movie, you haven't been paying attention.

The seeds of the collapse took decades to flower. By 2008, the financial landscape had become so deregulated that homeowners and small investors had few laws to help them. Inflating the banking bubble was a group effort—by billionaire CEOs with their private jets, by agencies like Moody's and Standard & Poor's that kept giving impeccable ratings to lousy financial products, by a Congress that overturned consumer-protection laws and by Wall Street's fans in academe, who can earn hundreds of thousands of dollars by writing papers favorable to Big Business or sitting on the boards of firms like Goldman Sachs.

**Who's Screwing Whom?**
IN THE SPASM OF MORAL RECRIMINATION that followed the collapse, some blamed the bright kids who passed up careers in science or medicine to make millions on Wall Street and charged millions more on their expense accounts for cocaine and prostitutes. After the savings-and-loan scandals of the late-'80s, according to *Inside Job*, thousands of executives went to jail. This time, with the economy bulking up on the steroids of derivatives and credit-default swaps, the only person who has done any time is Kristin Davis, the madam of a bordello patronized by Wall Streeters. Davis appears in the film, as does disgraced ex–New York governor Eliot Spitzer; both seem almost virtuous when compared with the big-money men.

The larger message of both *No End in Sight* and *Inside Job* is that American optimism, the engine for the nation's expansion, can have tragic results. The conquest of Iraq? A slam dunk. Gambling billions on risky mortgages? No worry—the housing market always goes up. Ignoring darker, more prescient scenarios, the geniuses in charge constructed faith-based policies that enriched their pals; they stumbled toward a precipice, and the rest of us fell off.

The shell game continues. *Inside Job* also details how, in Obama's White House, finance-industry veterans devised a "recovery" that further enriched their cronies without doing much for the average Joe. Want proof? Look at the financial industry's fat profits of the past year and then at your bank account, your pension plan, your own bottom line. ■

*BANKRUPT?*

TIME, October 18, 2010

75

# EXHIBIT G

Kaff vs. Nationwide Credit, Inc.
13-CV-5413-SLT-PK

August 20, 2016

Re: Objection and/or Disapproval Document (Class member) Authorizes Amended Litigation by Both Courts.

United States District Court
for the Eastern District of New York
225 Cadman Plaza East
Brooklyn, New York 11201

and/or Lopez vs. AMEX (FSB) et al
CV-09-07335-SJO-(MANx)

United States District Court
for Central District of California
312 N. Spring Street - G-19
Civil Intake Section
Los Angeles, California 90012-4701

Amended is the Key to all this Litigation Documents Received FILED Class Counsel

(Copies to all Counsel/Class members)

Clerk of the Courts / Assigned Judges
New York Case No. 13-CV-5413-SLT-PK
California Case No. CV-09-07335-SJO-(MAN.x)

Sirs:

The State of New York, Attorney General's OFFICE Culpability

So, Please take Notice that each court received by mail, using the United States Post Office (±25 Documents) pertaining to so-called New Discovery or simple stated, Objections to Disapprove the Class Action lawsuits, until Amended to list all applicable laws in violation of Federal Statutes omitted and overlooked by Class Counsel and/or Defendants Counsel. The Courts should not accept partial answers to finalize the litigation. Please review all documents.

Anthony Carfizzi
P.O. Box 685
Vails Gate, N.Y. 12584

FILED IN CLERKS OFFICE U.S. DISTRICT COURT E.D.N.Y.
AUG 22 2016
BROOKLYN OFFICE