# EXHIBIT D

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

---

ABRAHAM KAFF, ARI PFEFFER and RAQUEL
JAGER on behalf of themselves and all other
similarly situated consumers

                    Plaintiffs,

       vs.

NATIONWIDE CREDIT, INC.

                  Defendant.

CLASS ACTION

NO. 13-cv-5413 (SLT-PK)

---

## DECLARATION OF TIFFANY N. HARDY

Tiffany N. Hardy declares under penalty of perjury, as provided for by 28 U.S.C.  §1746, that the following statements are true:

1.      Edelman, Combs, Latturner & Goodwin, LLC, has 9 principals, Daniel A. Edelman, Cathleen M. Combs, James O. Latturner, Tara L. Goodwin, Francis R. Greene, Julie Clark, Heather Kolbus, Cassandra P. Miller, Tiffany N. Hardy, and three associates.

2.      **Tiffany N. Hardy** is a graduate of Tuskegee University (B.A. 1998) and Syracuse University College of Law (J.D. 2001). Ms. Hardy began her career as a judicial law clerk to the Honorable John G. Himmelberger,(ret.). at the Superior Court of New Jersey. Subsequently, Ms. Hardy worked at the Legal Aid Society of Mid-New York, Inc.  Following her tenure at the Legal Aid Society of Mid New York, Ms. Hardy worked as a staff attorney for the Legal Aid Society for the District of Columbia, and thereafter as a staff attorney for the Sargent Shriver National Center on Poverty Law. **Reported cases:**      *Marquez v. Weinstein, Pinson & Riley, P.S.*, 836 F.3d 808 (7th Cir. 2016); *Hart v. FCI Lender Services* 797 F.3d 219 (2nd Cir. 2015); *McMahon v. LVNV Funding, LLC* 807 F.3d 872 (7th Cir. 2015); *McMahon v. LVNV Funding, LLC*, 744 F.3d 1010 (7th Cir. 2014)(Class certification); *Unifund v. Shah*, 407 Ill.App.3d 737, 946 N.E.2d 885 (1st Dist. 2011), later opinion, 2013 IL App (1st) 113658, 993 N.E.2d 518; *Tocco v. Real Time Resolutions*, 14cv810, 2014 WL 3964948 (S.D.N.Y., Aug. 13, 2014); *Balbarin v. North Star*, 10 C 1846, 2011 WL 211013, 2011 U.S. Dist. LEXIS 686 (N.D.Ill. Jan. 5, 2011)(class certified); *Diaz v. Residential Credit Solutions, Inc.*, 965 F.Supp.2d 249 (E.D.N.Y. 2013), later opinion,  297 F.R.D. 42 (E.D.N.Y.  2014), later opinion, 299 F.R.D. 16 (E.D.N.Y. 2014);  *Manlapaz v. Unifund*, 08 C 6524, 2009 WL 3015166,  2009 U.S. Dist. LEXIS 85527 (N.D.Ill. Sept. 15, 2009); *Matmanivong v. Unifund*, 08 C 6415, 2009 WL 1181529, 2009 U.S. Dist. LEXIS 36287 (N.D.Ill. Apr. 28, 2009); *Kubiski v. Unifund*, 08 C 6421,

2009 WL 774450, 2009 U.S. Dist. LEXIS 26754 (N.D.Ill. Mar. 25, 2009); *Cox v. Unifund CCR Partners*, 08 C 1005 (N.D.Ill. Dec. 4, 2008) (Report and Recommendation for Class Certification); *Ramirez v. Palisades Collection LLC*, 250 F.R.D. 366 (N.D.Ill. 2008) (class certified), later opinion, 07 C 3840, 2008 WL 2512679, 2008 U.S. Dist. LEXIS 48722 (N.D.Ill., June 23, 2008) (summary judgment denied); *Cotton v. Asset Acceptance*, 07 C 5005, 2008 WL 2561103, 2008 U.S. Dist. LEXIS 49042 (N.D.Ill. June 26, 2008) (class certified); *Ketchem v. American Acceptance Co.*, 641 F. Supp. 2d 782 (N.D.Ind. 2008); *D'Elia v. First Capital*, 07 C 6042, 2008 WL 4344571, 2008 U.S. Dist. LEXIS 22461 (N.D.Ill. Mar. 19, 2008).  She is admitted in New York and the District of Columbia as well as Illinois.

        3.      **Daniel A. Edelman** is a 1976 graduate of the University of Chicago Law School.  From 1976 to 1981 he was an associate at the Chicago office of Kirkland & Ellis with heavy involvement in the defense of consumer class action litigation (such as the General Motors Engine Interchange cases).  In 1981 he became an associate at Reuben & Proctor, a medium-sized firm formed by some former Kirkland & Ellis lawyers, and was made a partner there in 1982.  From the end of 1985 he has been in private practice in downtown Chicago.  Virtually all of his practice involves litigation on behalf of consumers, through both class and individual actions.  He is the author of the chapters on the "Fair Debt Collection Practices Act," "Truth in Lending Act," and "Telephone Consumer Protection Act" in *Illinois Causes of Action* (Ill. Inst. For Cont. Legal Educ.  2014 and earlier editions), author of the chapter on the Telephone Consumer Protection Act in *Federal Deception Law* (National Consumer Law Center 2013 Supp.), author of  *Collection Defense* (Ill. Inst. Cont. Legal Educ. 2008, 2011), and *Collection Litigation: Representing the Debtor* (Ill. Inst. Cont. Legal Educ. 2014); author of Chapter 6, "Predatory Lending and Potential Class Actions," in *Real Estate Litigation* (Ill. Inst. For Cont. Legal Educ. 2004, 2008, 2013), co-author of Rosmarin & Edelman, *Consumer Class Action Manual* (2d-4th editions, National Consumer Law Center 1990, 1995 and 1999); author of *Representing Consumers in Litigation with Debt Buyers* (Chicago Bar Ass'n 2008);  *Predatory Mortgage Lending* (Ill. Inst. for Cont. Legal. Educ. 2008, 2011), author of Chapter 6, "Predatory Lending and Potential Class Actions," in *Real Estate Litigation* (Ill. Inst. For Cont. Legal Educ. 2004, 2008, 2014), *Illinois Consumer Law*, in Consumer Fraud and Deceptive Business Practices Act and Related Areas Update (Chicago Bar Ass'n 2002);  *Payday Loans:  Big Interest Rates and Little Regulation*, 11 Loy.Consumer L.Rptr. 174 (1999); author of *Consumer Fraud and Insurance Claims*, in Bad Faith and Extracontractual Damage Claims in Insurance Litigation, Chicago Bar Ass'n 1992; co-author of Chapter 8, "Fair Debt Collection Practices Act," *Ohio Consumer Law* (1995 ed.); co-author of *Fair Debt Collection:  The Need for Private Enforcement*, 7 Loy.Consumer L.Rptr. 89 (1995); author of *An Overview of The Fair Debt Collection Practices Act*, in Financial Services Litigation, Practicing Law Institute (1999); co-author of *Residential Mortgage Litigation*, in Financial Services Litigation, Practicing Law Institute (1996); author of *Automobile Leasing:  Problems and Solutions*, 7 Loy.Consumer L.Rptr. 14 (1994); author of *Current Trends in Residential Mortgage Litigation*, 12 Rev. of Banking & Financial Services 71 (April 24, 1996); co-author of *Illinois Consumer Law* (Chicago Bar Ass'n 1996); co-author of D. Edelman and M. A. Weinberg, *Attorney Liability Under the Fair Debt Collection Practices Act* (Chicago Bar Ass'n 1996); and author of *The Fair Debt*

*Collection Practices Act:  Recent Developments*, 8 Loy.Consumer L. Rptr. 303 (1996), among others.  Mr. Edelman is also a frequent speaker on consumer law topics for various legal organizations including the Chicago Bar Association, the National Consumer Law Center's Consumer Rights Litigation Conference, and the Illinois Institute for Continuing Legal Education, and he has testified on behalf of consumers before the Federal Trade Commission and the Illinois legislature.  He is a member of the Illinois bar and admitted to practice in the following courts: United States Supreme Court, Seventh Circuit Court of Appeals, First Circuit Court of Appeals, Second Circuit Court of Appeals, Third Circuit Court of Appeals, Fifth Circuit Court of Appeals, Sixth Circuit Court of Appeals, Eighth Circuit Court of Appeals, Ninth Circuit Court of Appeals, Tenth Circuit Court of Appeals, Eleventh Circuit Court of Appeals, United States District Courts for the Northern and Southern Districts of Indiana, United States District Courts for the Northern, Central, and Southern Districts of Illinois, United States District Courts for the Eastern and Western Districts of Wisconsin, and the Supreme Court of Illinois.  He is a member of the Northern District of Illinois trial bar.

4.      **Cathleen M. Combs** is a 1976 graduate of Loyola University Law  School.  From 1984-1991, she supervised the Northwest office of the Legal Assistance Foundation of Chicago, where she was lead or co-counsel in class actions in the areas of unemployment compensation, prison law, social security law, and consumer law.  She joined what is now Edelman, Combs, Latturner & Goodwin, LLC in early 1991 and became a named partner in 1993.  Ms. Combs received an Award for Excellence in Pro Bono Service from the Judges of the United States District Court for the Northern District of Illinois and the Chicago Chapter of the Federal Bar Association on May 18, 2012.  Ms. Combs has argued over fifteen cases in the 1ˢᵗ, 3ʳᵈ and 7ᵗʰ Circuit Court of Appeals and the Illinois Appellate Court, and she is a frequent speaker on consumer law topics at various legal organizations including the Chicago Bar Association, the National Consumer Law Center's Consumer Rights Litigation Conferences,  and the Practicing Law Institute's Consumer Financial Services Institute. Ms. Combs is coauthor of *The Bankruptcy Practitioner's Guide to Consumer Financial Services Actions After the Subprime Mortgage Crisis*  (LRP Publications 2010).  Her reported decisions include: *Suesz v. Med-1 Solutions, LLC*, 757 F.3d 636 (7th Cir. 2014) (en banc); *Siwulec v. J.M. Adjustment Servs., LLC*, 465 Fed. Appx. 200 (3d Cir. 2012); *Nielsen v. Dickerson*, 307 F.3d 623 (7th Cir. 2002); *Chandler v. American General Finance, Inc.*, 329 Ill. App.3d 729, 768 N.E.2d 60 (1st Dist. 2002);  *Miller v. McCalla Raymer*, 214 F.3d 872 (7ᵗʰ Cir. 2000); *Bessette v. Avco Financial Services*, 230 F.3d 439 (1ˢᵗ Cir. 2000); *Emery v. American Gen. Fin., Inc.*, 71 F.3d 1343 (7th Cir. 1995);  *McDonald v. Asset Acceptance, LLC*, 296 F.R.D. 513 (E.D.Mich. 2013); and  *Tocco v. Real Time Resolutions*, ___ F.Supp.2d ___, 1:14CV810, 2014 WL 3964948 (S.D.N.Y., Aug. 13, 2014).  She is a member of the Illinois bar and admitted to practice in the following courts: United States District Courts for the Northern, Central and Southern Districts of Illinois, United States District Courts for the Northern and Southern Districts of Indiana, Seventh Circuit Court of Appeals, Third Circuit Court of Appeals, Fifth Circuit Court of Appeals, Tenth Circuit Court of Appeals, and United States District Court for the District of Colorado. She is a member of the Northern District of Illinois trial bar.

5.     **James O. Latturner** is a 1962 graduate of the University of Chicago Law School.  Until 1969, he was an associate and then a partner at the Chicago law firm of Berchem, Schwanes & Thuma.  From 1969 to 1995 he was Deputy Director of the Legal Assistance Foundation of Chicago, where he specialized in consumer law, including acting as lead counsel in over 30 class actions.  His publications include Chapter 8 ("Defendants") in *Federal Practice Manual for Legal Services Attorneys* (M. Masinter, Ed., National Legal Aid and Defender Association 1989); *Governmental Tort Immunity in Illinois*, 55 Ill.B.J. 29 (1966); *Illinois Should Explicitly Adopt the Per Se Rule for Consumer Fraud Act Violations*, 2 Loy.Consumer L.Rep. 64 (1990), and *Illinois Consumer Law* (Chicago Bar Ass'n 1996).  He has taught in a nationwide series of 18 Federal Practice courses sponsored by the Legal Services Corporation, each lasting four days and designed for attorneys with federal litigation experience.  He has argued over 30 appeals, including two cases in the United States Supreme Court, three in the Illinois Supreme Court, and numerous cases in the Seventh, Third, Fifth, and Eleventh Circuits.  Mr. Latturner was involved in many of the significant decisions establishing the rights of Illinois consumers. He is a member of the Northern District of Illinois trial bar.

6.     **Tara L. Goodwin** is a graduate of the University of Chicago (B.A., with general honors, 1988)and Illinois Institute of Technology, Chicago-Kent College of Law (J.D., with high honors,1991).  Ms. Goodwin was Chair of the Chicago Bar Association's Consumer Law Committee from 2007 - 2010, and she has been on the faculty of the Practicing Law Institute's Consumer Financial Services Institute in Chicago for the past few years, speaking on issues relating to the Fair Debt Collection Practices Act and mortgage litigation.  Ms. Goodwin is also a frequent speaker at the Chicago Bar Association, speaking on topics such as how to assist consumers with credit reporting problems. **Reported Cases.** *Williams v. Chartwell Financial Services, Ltd.*, 204 F.3d 748 (7th Cir. 2000); *Hillenbrand v. Meyer Medical Group*, 288 Ill.App.3d 871, 682 N.E.2d 101 (1st Dist. 1997), later opinion, 308 Ill.App.3d 381, 720 N.E.2d 287 (1st Dist. 1999); *Bessette v. Avco Fin. Servs.*, 230 F.3d 439 (1st Cir. 2000); *Large v. Conseco Fin. Servicing Co.*, 292 F.3d 49 (1st Cir. 2002); *Flippin v. Aurora Bank, FSB*, 12 C 1996, 2012 WL 3260449 , 2012 U.S. Dist. LEXIS 111250 (N.D.Ill. Aug. 8, 2012); *Henry v. Teletrack, Inc.,* 11 C 4424,  2012 WL 769763, 2012 U.S. Dist. LEXIS 30495 (N.D.Ill.  March 7, 2012); *Kesten v. Ocwen Loan Servicing, LLC*, 11 C 6981, 2012 WL 426933, 2012 U.S. Dist. LEXIS 16917 (N.D.Ill. Feb. 9, 2012); *Bunton v. Cape Cod Village, LLC*, No. 09-1044, 2009 WL 2139441, 2009 U.S. Dist. LEXIS 57801 (C.D.Ill. July 6, 2009); *Wilson v. Harris N.A.*, No. 06 C 5840, 2007 WL 2608521, 2007 U.S. Dist. LEXIS 65345  (N.D.Ill. Sept. 4, 2007); *Carbajal v. Capital One*, 219 F.R.D. 437 (N.D.Ill. 2004); *Russo v. B&B Catering*, 209 F.Supp.2d 857 (N.D.Ill. 2002);  *Romaker v. Crossland Mtg. Co.*, No. 94 C 3328,  1996 WL 254299, 1996 U.S.Dist. LEXIS 6490  (N.D.Ill. May 10, 1996);  *Mount v. LaSalle Bank Lake View*, 926 F.Supp. 759 (N.D.Ill 1996).  Ms. Goodwin is a member of the Illinois bar and is admitted in the Seventh, First, and D.C. Circuit Courts of Appeals, and the United States District Courts for the Northern and Central Districts of Illinois, and the Northern District of Indiana.  She is also a member of the Northern District of Illinois trial bar.

7. **Francis R. Greene** is a graduate of Johns Hopkins University (B.A 1984), Rutgers University (Ph.D. 1991), and Northwestern University School of Law (J.D., 2000). Mr. Greene was Chair of the Chicago Bar Association's Consumer Law Committee from 2011-2012 and Vice-Chair from 2010-11. **Reported Cases:** *Janetos v. Fulton, Friedman & Gullace, LLP*, 15-1859, 2016 WL 1382174 (7th Cir. 2016); *Phillips v. Asset Acceptance, LLC*, 736 F.3d 1076 (7th Cir. 2013); *Soppet v. Enhanced Recovery Co.,* 679 F.3d 637 (7th Cir. 2012); *Ruth v. Triumph Partnerships*, 577 F.3d 790 (7th Cir. 2009); *Handy v. Anchor Mortgage Corp.*, 464 F.3d 760 (7th Cir. 2006); *Tri-G, Inc. v. Burke, Bosselman & Weaver*, 222 Ill.2d 218, 856 N.E.2d 389 (2006); *Johnson v. Thomas*, 342 Ill.App.3d 382, 794 N.E.2d 919 (1st Dist. 2003); *Hale v. Afni, Inc.*, 08 C 3918, 2010 WL 380906, 2010 U.S. Dist. LEXIS 6715 (N.D.Ill. Jan. 26, 2010); *Parkis v. Arrow Fin Servs.*, 07 C 410, 2008 WL 94798, 2008 U.S. Dist. LEXIS 1212 (N.D.Ill. Jan. 8, 2008); *Foster v. Velocity Investments*, 07 C 824, 2007 WL 2461665, 2007 U.S. Dist. LEXIS 63302 (N.D. Ill. Aug. 24, 2007); *Foreman v. PRA III, LLC*, 05 C 3372, 2007 WL 704478, 2007 U.S. Dist. LEXIS 15640 (N.D. Ill. March 5, 2007); *Schutz v. Arrow Fin. Services*, 465 F. Supp. 2d 872 (N.D.Ill. 2006); *Pleasant v. Risk Management Alternatives*, 02 C 6886, 2003 WL 22175390 (N.D.Ill. Sept. 19, 2003). He is a member of the Illinois Bar and is admitted to practice in the Seventh Circuit Court of Appeals, the United States District Courts for the Northern, Central, and Southern Districts of Illinois, Eastern District of Wisconsin, Northern District of Indiana, and Western District of Texas. He is a member of the Northern District of Illinois Trial Bar.

8. **Julie Clark** (neé Cobalovic) is a graduate of Northern Illinois University (B.A., 1997) and DePaul University College of Law (J.D., 2000). **Reported Cases:** *Record-A-Hit, Inc. v. Nat'l. Fire Ins. Co.*, 377 Ill. App. 3d 642; 880 N.E.2d 205 (1st Dist. 2007); *Qualkenbush v. Harris Trust & Savings Bank*, 219 F. Supp.2d 935 (N.D.Ill. 2002); *Covington-McIntosh v. Mount Glenwood Memory Gardens*, 00 C 186, 2002 WL 31369747 (N.D.Ill., Oct. 21, 2002), later opinion, 2003 WL 22359626 (N.D.Ill. Oct. 15, 2003); *Western Ry. Devices Corp. v. Lusida Rubber Prods.*, 06 C 52, 2006 WL 1697119, 2006 U.S. Dist. LEXIS 43867 (N.D.Ill. June 13, 2006); *Nautilus Ins. Co. v. Easy Drop Off, LLC*, 06 C 4286, 2007 U.S. Dist. LEXIS 42380 (N.D.Ill. June 4, 2007); *Ballard Nursing Center, Inc. v. GF Healthcare Products, Inc.*, 07 C 5715, 2007 WL 3448731, 2007 U.S. Dist. LEXIS 84425 (N.D.Ill. Nov. 14, 2007); *Sadowski v. Med1 Online, LLC*, 07 C 2973, 2008 WL 2224892, 2008 U.S. Dist. LEXIS 41766 (N.D.Ill. May 17, 2008); *Sadowski v. OCO Biomedical, Inc.*, 08 C 3225, 2008 WL 5082992, 2008 U.S. Dist. LEXIS 96124 (N.D.Ill. Nov. 25, 2008); *ABC Bus. Forms, Inc. v. Pridamor, Inc.*, 09 C 3222, 2009 WL 4679477, 2009 U.S. Dist. LEXIS 113847 (N.D.Ill. Dec. 1, 2009); *Glen Ellyn Pharmacy v. Promius Pharma, LLC*, 09 C 2116, 2009 WL 2973046, 2009 U.S. Dist. LEXIS 83073 (N.D.Ill. Sept. 11, 2009); *Garrett v. Ragle Dental Lab., Inc.*, 10 C 1315, 2010 WL 4074379, 2010 U.S. Dist. LEXIS 108339 (N.D.Ill. Oct. 12, 2010); *Garrett v. Sharps Compliance, Inc.*, 10 C 4030, 2010 WL 4167157, 2010 U.S. Dist. LEXIS 109912 (N.D.Ill. Oct. 14, 2010).

9. **Heather A. Kolbus** (neé Piccirilli) is a graduate of DePaul University (B.S. *cum*

*laude,* 1997), and Roger Williams University School of Law (J.D., 2002). **Reported Cases:** *Clark v. Experian Info. Solutions, Inc.*, 8:00cv1217-22, 2004 WL 256433, 2004 U.S. Dist. LEXIS 28324 (D.S.C., Jan. 14, 2004); *DeFrancesco v. First Horizon Home Loan Corp.*, 06-0058, 2006 WL 3196838, 2006 U.S. Dist. LEXIS 80718 (S.D.Ill. Nov. 2, 2006); *Jeppesen v. New Century Mortgage Corp.*, 2:05cv372, 2006 WL 3354691, 2006 U.S. Dist. LEXIS 84035 (N.D.Ind. Nov. 17, 2006); *Benedia v. Super Fair Cellular, Inc.*, 07 C 1390, 2007 WL 2903175, 2007 U.S. Dist. LEXIS 71911 (N.D.Ill. Sept. 26, 2007); *Gonzalez v. Codilis & Assocs., P.C.*, 03 C 2883, 2004 WL 719264, 2004 U.S. Dist. LEXIS 5463 (N.D.Ill. March 30, 2004); *Centerline Equipment Corp. v. Banner Personnel Svc., Inc.*, 07 C 1611, 2009 WL 1607587, 2009 U.S. Dist. LEXIS 48092 (N.D.Ill. June 9, 2009); *R. Rudnick & Co. v. G.F. Protection, Inc.*, 08 C 1856, 2009 WL 112380, 2009 U.S. Dist. LEXIS 3152 (N.D.Ill. Jan. 15, 2009); *Pollack v. Cunningham Financial Group, LLC*, 08 C 1405, 2008 WL 4874195, 2008 U.S. Dist. LEXIS 4166 (N.D.Ill. June 2, 2008); *Pollack v. Fitness Innovative Techs., LLC*, No. 08 CH 03430, 2009 WL 506280, 2009 TCPA Rep. 1858 (Ill. Cir. Ct., Jan. 14, 2009); *R. Rudnick & Co. v. Brilliant Event Planning, Inc.*, No. 09 CH 18924, 2010 WL 5774848, 2010 TCPA Rep. 2099 (Ill. Cir. Ct., Nov. 30, 2010).

10.    **Cassandra P. Miller** is a graduate of the University of Wisconsin – Madison (B.A. 2001) and John Marshall Law School (J.D. *magna cum laude* 2006). **Reported Cases:** *Pietras v. Sentry Ins. Co.*, 513 F.Supp.2d 983 (N.D.Ill. 2007); *Hernandez v. Midland Credit Mgmt.*, 04 C 7844, 2007 WL 2874059, 2007 U.S. Dist. LEXIS 16054 (N.D.Ill. Sept. 25, 2007); *Balogun v. Midland Credit Mgmt.*, 1:05cv1790, 2007 WL 2934886, 2007 U.S. Dist. LEXIS 74845 (S.D.Ind. Oct. 5, 2007); *Herkert v. MRC Receivables Corp.*, 655 F. Supp. 2d 870 (N.D.Ill. 2008); *Miller v. Midland Credit Management, Inc.*, No. 08 C 780, 2009 WL 528796, 2009 U.S. Dist. LEXIS 16273 (N.D.Ill. March 2, 2009); *Frydman v. Portfolio Recovery Associates, LLC*, 11 C 524, 2011 WL 2560221, 2011 U.S. Dist. LEXIS 69502 (N.D.Ill. June 28, 2011).

a.    **Associates**:

i.    **Emiliya Gumin Farbstein** is a graduate of the University of Illinois at Urbana-Champaign (B.S.B.A. 2006) and University of Minnesota Law School (J.D., magna cum laude, 2012).

ii.    **Michelle Alyea** is a graduate of Valparaiso University (B.A., 1998, M.A., 2009) and Valparaiso University School of Law (J.D., 2012). She is admitted in Illinois and Indiana.

iii.    **Sarah Barnes** is a graduate of Michigan State University (B.A. 2010) and Chicago-Kent College of Law (J.D., 2015).

11.    The firm also has 10 legal assistants, as well as other support staff.

12.     Since its inception, the firm has recovered more than $500 million for consumers.   The types of cases handled by the firm are illustrated by the following:

13.     **Collection practices:**  The firm has brought numerous cases under the Fair Debt Collection Practices Act, both class and individual.  Decisions include:  *Jenkins v. Heintz*, 25 F.3d 536 (7th Cir. 1994), aff'd  514 U.S. 291 (1995) (FDCPA coverage of attorneys); *Suesz v. Med-1 Solutions, LLC*, 757 F.3d 636 (7th Cir. 2014)(en banc); *McMahon v. LVNV Funding, LLC*, 744 F.3d 1010 (7th Cir. 2014),  later opinion, 807 F.3d 872 (7th Cir. 2015) (collection of time-barred debts); *Siwulec v. J.M. Adjustment Servs., LLC*, 465 Fed. Appx. 200 (3d Cir. 2012); (activities of mortgage company field agents); *Fields v. Wilber Law Firm, P.C.*, 383 F.3d 562 (7th Cir. 2004); *Schlosser v. Fairbanks Capital Corp.*, 323 F.3d 534 (7th Cir. 2003) (FDCPA coverage of debt buyers); *Peter v. GC Servs. L.P.*, 310 F.3d 344 (5th Cir. 2002); *Nielsen v. Dickerson*, 307 F.3d 623 (7th Cir. 2002) (attorney letters without attorney involvement); *Boyd v. Wexler*, 275 F.3d 642 (7th Cir. 2001); *Miller v. McCalla, Raymer, Padrick, Cobb, Nichols, & Clark, L.L.C.*, 214 F.3d 872 (7th Cir. 2000); *Johnson v. Revenue Management, Inc.*, 169 F.3d 1057 (7th Cir.1999); *Keele v. Wexler & Wexler*, 95 C 3483, 1995 WL 549048, 1995 U.S.Dist. LEXIS 13215 (N.D.Ill. Sept. 12, 1995) (motion to dismiss), later opinion,  1996 WL 124452, 1996 U.S.Dist. LEXIS 3253 (N.D.Ill., March 18, 1996) (class), aff'd, 149 F.3d 589 (7th Cir. 1998); *Mace v. Van Ru Credit Corp.*, 109 F.3d 338 (7th Cir. 1997); *Maguire v. Citicorp Retail Services, Inc.*, 147 F.3d 232 (2nd Cir. 1998); *Young v. Citicorp Retail Services, Inc.*, No. 97-9397, 1998 U.S.App. LEXIS 20268, 159 F.3d 1349 (2nd Cir.,  June 29, 1998) (unpublished); *Charles v. Lundgren & Assocs., P.C.*, 119 F.3d 739 (9th Cir. 1997); *Avila v. Rubin*, 84 F.3d 222 (7th Cir. 1996), aff'g *Avila v. Van Ru Credit Corp.*, 94 C 3234, 1994 WL 649101 (N.D.Ill., Nov. 14, 1994), later opinion,  1995 WL 22866  (N.D.Ill., Jan. 18, 1995), later opinion, 1995 WL 41425 (N.D.Ill., Jan. 31, 1995), later opinion, 1995 WL 55255 (N.D.Ill., Feb. 8, 1995), later opinion, 1995 WL 683775, 1995 U.S.Dist. LEXIS 17117 (N.D.Ill., Nov. 16, 1995);  *Tolentino v. Friedman*, 833 F.Supp. 697 (N.D.Ill. 1993), aff'd in part and rev'd in part, 46 F.3d 645 (7th Cir. 1995); *Diaz v. Residential Credit Solutions, Inc.*, 965 F.Supp.2d 249 (E.D.N.Y. 2013), later opinion,  297 F.R.D. 42 (E.D.N.Y.  2014), later opinion, 299 F.R.D. 16 (E.D.N.Y. 2014); *Stubbs v. Cavalry SPV I*, 12 C 7235,  2013 WL 1858587 (N.D.Ill., May 1, 2013); *Osborn v. J.R.S.-I., Inc.*, 13 C 621, 2013 WL 2467654 (N.D.Ill., June 7, 2013); *Terech v. First Resolution Mgmt. Corp.*, 854 F.Supp.2d 537, 544 (N.D.Ill. 2012); *Casso v. LVNV Funding, LLC*, 12 C 7328, 2013 WL 3270654 (N.D.Ill., June 26, 2013); *Simkus v. Cavalry Portfolio Services, LLC*, 11 C 7425, 2012 WL 1866542 (N.D.Ill., May 22, 2012); *McDonald v. Asset Acceptance LLC*, 296 F.R.D. 513 (E.D.Mich. 2013); *Ramirez v. Apex Financial Management, LLC*, 567 F. Supp.2d 1035 (N.D. Ill. 2008);  *Cotton v. Asset Acceptance, LLC*,  07 C 5005, 2008 WL 2561103, 2008 U.S. Dist. LEXIS 49042 (N.D.Ill., June 26, 2008); *Buford v. Palisades Collection, LLC*, 552 F. Supp. 2d 800 (N.D.Ill. 2008);  *Martin v. Cavalry Portfolio Servs., LLC,* 07 C 4745, 2008 WL 4372717, 2008 U.S. Dist. LEXIS 25904 (N.D.Ill., March 28, 2008); *Ramirez v. Palisades Collection LLC*, 250 F.R.D. 366 (N.D.Ill. 2008) (class certified), later opinion, 07 C 3840, 2008 WL 2512679, 2008 U.S. Dist. LEXIS 48722 (N.D.Ill., June 23, 2008) (summary judgment denied); *Hernandez v. Midland Credit Mgmt.*, 04 C 7844, 2007 WL 2874059, 2007 U.S. Dist. LEXIS 16054 (N.D.Ill., Sept. 25, 2007) (balance transfer program); *Blakemore v. Pekay*, 895 F.Supp.972

(N.D.Ill. 1995); *Oglesby v. Rotche*, 93 C 4183, 1993 WL 460841,  1993 U.S.Dist. LEXIS 15687 (N.D.Ill., Nov. 5, 1993), *later opinion*, 1994 U.S.Dist. LEXIS 4866, 1994 WL 142867 (N.D.Ill., April 18, 1994); *Laws v. Cheslock*, 98 C 6403, 1999 WL 160236, 1999 U.S.Dist. LEXIS 3416 (N.D.Ill., Mar. 8, 1999); *Davis v. Commercial Check Control, Inc.*, 98 C 631, 1999 WL 89556, 1999 U.S. Dist. LEXIS 1682 (N.D.Ill., Feb. 12, 1999); *Hoffman v. Partners in Collections, Inc.*, 93 C 4132, 1993 WL 358158, 1993 U.S.Dist. LEXIS 12702 (N.D.Ill., Sept. 15, 1993); *Vaughn v. CSC Credit Services, Inc.*, 93 C 4151, 1994 WL 449247, 1994 U.S.Dist. LEXIS 2172 (N.D.Ill., March 1, 1994), adopted, 1995 WL 51402, 1995 U.S.Dist. LEXIS 1358 (N.D.Ill., Feb. 3, 1995); *Beasley v. Blatt*, 93 C 4978, 1994 WL 362185, 1994 U.S.Dist. LEXIS 9383 (N.D.Ill., July 11, 1994); *Taylor v. Fink*, 93 C 4941, 1994 WL 669605, 1994 U.S.Dist. LEXIS 16821 (N.D.Ill., Nov. 23, 1994); *Gordon v. Fink*, 93 C 4152, 1995 WL 55242, 1995 U.S.Dist. LEXIS 1509 (N.D.Ill., Feb. 7, 1995); *Brujis v. Shaw*, 876 F.Supp. 198 (N.D.Ill. 1995).

14.     *Jenkins v. Heintz* is a leading decision regarding the liability of attorneys under the Fair Debt Collection Practices Act.  Mr. Edelman argued it before the Supreme Court and Seventh Circuit.  *Avila v. Rubin* and *Nielsen v. Dickerson*  are leading decisions on phony "attorney letters."  *Suesz v. Med-1 Solutions, LLC* is a leading decision on the FDCPA venue requirements.  *McMahon v. LVNV Funding, LLC* is a leading decision on the collection of time-barred debts.

15.     **Debtors' rights**.  Important decisions include: *Ramirez v. Palisades Collection LLC*, 250 F.R.D. 366 (N.D.Ill. 2008) (class certified), later opinion, 07 C 3840, 2008 WL 2512679, 2008 U.S. Dist. LEXIS 48722 (N.D.Ill., June 23, 2008) (summary judgment denied); z (Illinois statute of limitations for credit card debts); *Parkis v. Arrow Fin Servs.*, 07 C 410, 2008 WL 94798, 2008 U.S. Dist. LEXIS 1212 (N.D.Ill. Jan. 8, 2008); *Rawson v. Credigy Receivables, Inc.,*  05 C 6032, 2006 WL 418665, 2006 U.S. Dist. LEXIS 6450 (N.D.Ill., Feb. 16, 2006) (same); *McMahon v. LVNV Funding, LLC*, 744 F.3d 1010 (7th Cir. 2014) (collection of time-barred debts without disclosure); *Jones v. Kunin*, 99-818-GPM, 2000 WL 34402017, 2000 U.S. Dist. LEXIS 6380 (S.D.Ill., May 1, 2000) (scope of Illinois bad check statute); *Qualkenbush v. Harris Trust & Sav. Bank*, 219 F. Supp. 2d 935 (N.D.Ill. 2002) (failure to allow cosigner to take over obligation prior to collection action); *Suesz v. Med-1 Solutions, LLC*, 757 F.3d 636 (7th Cir. 2014) (en banc) (venue abuse).

16.     **Telephone Consumer Protection Act.**  The firm has brought a number of cases under the Telephone Consumer Protection Act, 47 U.S.C. §227, which prohibits "junk faxes," spam text messages, robocalls to cell phones, and regulates telemarketing practices. Important junk fax and spam text message decisions include:  *Brill v. Countrywide Home Loans, Inc.*, 427 F.3d 446 (7th Cir. 2005); *Sadowski v. Med1 Online, LLC*, 07 C 2973, 2008 WL 2224892, 2008 U.S. Dist. LEXIS 41766 (N.D.Ill., May 27, 2008); *Benedia v. Super Fair Cellular, Inc.,*  07 C 01390, 2007 WL 2903175, 2007 U.S. Dist. LEXIS 71911 (N.D.Ill., Sept. 26, 2007); *Centerline Equip. Corp. v. Banner Pers. Serv.*, 545 F. Supp. 2d 768 (N.D.Ill. 2008); *ABC Business Forms, Inc. v. Pridamor, Inc.*, 09 C 3222, 2009 WL 4679477, 2009 U.S. Dist. LEXIS 113847 (N.D.Ill. Dec. 1, 2009); *Glen Ellyn Pharmacy, Inc. v. Promius Pharma, LLC*, 09

C 2116, 2009 WL 2973046, 2009 U.S. Dist. LEXIS 83073 (N.D.Ill. Sept. 11, 2009); *Garrett v. Ragle Dental Laboratory, Inc.*, 10 C 1315, 2010 WL 3034709, 2010 U.S. Dist. LEXIS, 108339 (N.D.Ill., Aug. 3, 3010).

17.     The firm has also brought a number of cases complaining of robocalling and telemarketing abuse, in violation of the Telephone Consumer Protection Act.  Decisions in these cases include: *Soppet v. Enhanced Recovery Co.*, 679 F.3d 637 (7th Cir. 2012); *Balbarin v. North Star Capital Acquisition, LLC*, 10 C 1846, 2011 WL 211013, 2011 U.S. Dist. LEXIS 686 (N.D.Ill. Jan. 21, 2011), *motion to reconsider denied*, 2011 U.S. Dist. LEXIS 58761 (N.D.Ill. 2011); *Sojka v. DirectBuy, Inc.*, 12 C 9809 et al., 2014 WL 1089072 (N.D.Ill., Mar. 18, 2014), later opinion, 2014 WL 1304234 (N.D.Ill., March 31, 2014).  The firm has a leadership role in Portfolio Recovery Associates, LLC, Telephone Consumer Protection Act Litigation, MDL No. 2295, and Midland Credit Management, Inc., Telephone Consumer Protection Act Litigation, MDL No. 2286.

18.     **Fair Credit Reporting Act:** The firm has filed numerous cases under the Fair Credit Reporting Act, which include: *Henry v. Teletrack, Inc.,* 11 C 4424,  2012 WL 769763, 2012 U.S. Dist. LEXIS 30495 (N.D.Ill.  March 7, 2012).

19.     Another line of cases under the Fair Credit Reporting Act which we have brought, primarily as class actions, alleges that lenders and automotive dealers, among others, improperly accessed consumers' credit information, without their consent and without having a purpose for doing so permitted by the FCRA.   *Cole v. U.S. Capital, Inc.*, 389 F.3d 719 (7th Cir. 2004); *Murray v. GMAC Mortgage Corp.*, 434 F.3d 948 (7th Cir. 2006); *Perry v. First National Bank*, 459 F.3d 816 (7th Cir. 2006).

20.     **Class action procedure:**  Important decisions include *McMahon v. LVNV Funding, LLC*, 807 F.3d 872 (7th Cir. 2015);  *Phillips v. Asset Acceptance, LLC*, 736 F.3d 1076 (7th Cir. 2013); *Crawford v. Equifax Payment Services, Inc.,* 201 F.3d 877 (7th Cir. 2000); *Blair v. Equifax Check Services, Inc.*, 181 F.3d 832 (7th Cir. 1999); *Mace v. Van Ru Credit Corp.*, 109 F.3d 338, 344 (7th Cir. 1997); *McMahon v. LVNV Funding, LLC*, 744 F.3d 1010 (7th Cir. 2014) (mootness); *Ballard RN Center, Inc. v. Kohll's Pharmacy and Homecare, Inc.*, 2015 IL 118644 (Ill.Sup.Ct., October 22, 2015)(mootness),  and *Gordon v. Boden,* 224 Ill.App.3d 195, 586 N.E.2d 461 (1st Dist. 1991).

21.     **Landlord-tenant:**  The firm has brought more than 20 class actions against landlords to enforce tenants' rights.  Claims include  failing to pay interest on security deposits or commingling security deposits.  Reported decisions include *Wang v. Williams*, 343 Ill. App. 3d 495; 797 N.E.2d 179 (5th Dist. 2003); *Dickson v. West Koke Mill Vill. P'Ship*, 329 Ill. App. 3d 341; 769 N.E.2d 971 (4th Dist. 2002); and *Onni v. Apartment Inv. & Mgmt. Co.*,  344 Ill. App. 3d 1099; 801 N.E.2d 586 (2nd Dist. 2003).

22.     **Mortgage charges and servicing practices:**  The firm has been involved in

dozens of cases, mostly class actions, complaining of illegal charges on mortgages and improper servicing practices. These include MDL-899, *In re Mortgage Escrow Deposit Litigation*, and MDL-1604, *In re Ocwen Federal Bank FSB Mortgage Servicing Litigation*, as well as the Fairbanks mortgage servicing litigation. Decisions in the firm's mortgage cases include: *Hamm v. Ameriquest Mortg. Co.*, 506 F.3d 525 (7th Cir. 2007); *Handy v. Anchor Mortgage Corp.*, 464 F.3d 760 (7th Cir. 2006); *Christakos v. Intercounty Title Co.*, 196 F.R.D. 496 (N.D.Ill. 2000); *Flippin v. Aurora Bank, FSB*, 12 C 1996, 2012 WL 3260449 , 2012 U.S. Dist. LEXIS 111250 (N.D.Ill. Aug. 8, 2012); *Kesten v. Ocwen Loan Servicing, LLC*, 11 C 6981, 2012 WL 426933, 2012 U.S. Dist. LEXIS 16917  (N.D.Ill. Feb. 9, 2012); *Johnstone v. Bank of America, N.A.*, 173 F.Supp.2d 809 (N.D.Ill. 2001); *Leon v. Washington Mut. Bank, F.A.*, 164 F.Supp.2d 1034 (N.D.Ill. 2001); *Williamson v. Advanta Mortg. Corp.*, 99 C 4784, 1999 WL 1144940, 1999 U.S. Dist. LEXIS 16374 (N.D.Ill., Oct. 5, 1999); *McDonald v. Washington Mut. Bank, F.A.*, 99 C 6884, 2000 WL 875416, 2000 U.S. Dist. LEXIS 11496 (N.D.Ill., June 22, 2000); *GMAC Mtge. Corp. v. Stapleton*, 236 Ill.App.3d 486, 603 N.E.2d 767 (1st Dist. 1992), leave to appeal denied, 248 Ill.2d 641, 610 N.E.2d 1262 (1993); *Leff v. Olympic Fed. S. & L. Ass'n*, 86 C 3026, 1986 WL 10636 (N.D.Ill. Sept. 19, 1986); *Aitken v. Fleet Mtge. Corp.*, 90 C 3708, 1991 WL 152533,, 1991 U.S.Dist. LEXIS 10420 (N.D.Ill. July 30, 1991), later opinion, 1992 WL 33926, 1992 U.S.Dist. LEXIS 1687 (N.D.Ill., Feb. 12, 1992); *Poindexter v. National Mtge. Corp.*, 94 C 45814, 1995 WL 242287, 1995 U.S.Dist. LEXIS 5396 (N.D.Ill., April 24, 1995); *Sanders v. Lincoln Service Corp.*, 91 C 4542, 1993 WL 1125433, 1993 U.S.Dist. LEXIS 4454 (N.D.Ill. April 5, 1993); *Robinson v. Empire of America Realty Credit Corp.*, 90 C 5063, 1991 WL 26593, 1991 U.S.Dist. LEXIS 2084 (N.D.Ill., Feb. 20, 1991); *In re Mortgage Escrow Deposit Litigation*, M.D.L. 899, 1994 WL 496707, 1994 U.S.Dist. LEXIS 12746 (N.D.Ill., Sept. 9, 1994); *Greenberg v. Republic Federal S. & L. Ass'n*, 94 C 3789, 1995 WL 263457, 1995 U.S.Dist. LEXIS 5866 (N.D.Ill., May 1, 1995).

23.     The recoveries in the escrow overcharge cases alone are over $250 million. *Leff* was the seminal case on mortgage escrow overcharges.

24.     The escrow litigation had a substantial effect on industry practices, resulting in limitations on the amounts which mortgage companies held in escrow.

25.     **Bankruptcy:**  The firm brought a number of cases complaining that money was being systematically collected on discharged debts, in some cases through the use of invalid reaffirmation agreements, including the national class actions against Sears and General Electric. *Conley v. Sears, Roebuck*, 1:97cv11149 (D.Mass); *Fisher  v. Lechmere Inc.*, 1:97cv3065 (N.D.Ill.).  These cases were settled and resulted in recovery by nationwide classes. Cathleen Combs successfully argued the first Court of Appeals case to hold that a bankruptcy debtor induced to pay a discharged debt by means of an invalid reaffirmation agreement may sue to recover the payment. *Bessette v. Avco Financial Services*, 230 F.3d 439  (1st Cir. 2000).

26.     **Automobile sales and financing practices:**  The firm has brought many cases challenging practices relating to automobile sales and financing, including:

a.      Hidden finance charges resulting from pass-on of discounts on auto purchases.  *Walker v. Wallace Auto Sales, Inc.*, 155 F.3d 927 (7th Cir. 1998).

b.      Misrepresentation of amounts disbursed for extended warranties.  *Taylor v. Quality Hyundai, Inc.*, 150 F.3d 689 (7th Cir. 1998);  *Grimaldi v. Webb*, 282 Ill.App.3d 174, 668 N.E.2d 39 (1st Dist. 1996), leave to appeal denied, 169 Ill.2d 566 (1996); *Slawson v. Currie Motors Lincoln Mercury, Inc.*, 94 C 2177, 1995 WL 22716, 1995 U.S.Dist. LEXIS 451 (N.D.Ill., Jan. 13, 1995); *Cirone-Shadow v. Union Nissan, Inc.*,  955 F.Supp. 938  (N.D.Ill. 1997) (same); *Chandler v. Southwest Jeep-Eagle, Inc.*, 162 F.R.D. 302 (N.D.Ill. 1995); *Shields v. Lefta, Inc.*, 888 F. Supp. 891 (N.D.Ill. 1995).

c.      Spot delivery.  *Janikowski v. Lynch Ford, Inc.*, 98 C 8111, 1999 WL 608714 (N.D.Ill., Aug. 5, 1999); *Diaz v. Westgate Lincoln Mercury, Inc.*, 93 C 5428, 1994 U.S.Dist. LEXIS 16300 (N.D.Ill. Nov. 14, 1994);  *Grimaldi v. Webb*, 282 Ill.App.3d 174, 668 N.E.2d 39 (1st Dist. 1996), leave to appeal denied, 169 Ill.2d 566 (1996).

d.      Force placed insurance.  *Bermudez v. First of America Bank Champion, N.A.*, 860 F.Supp. 580 (N.D.Ill. 1994); *Travis v. Boulevard Bank*, 93 C 6847, 1994 U.S.Dist. LEXIS 14615 (N.D.Ill., Oct. 13, 1994), modified, 880 F.Supp. 1226 (N.D.Ill. 1995); *Moore v. Fidelity Financial Services, Inc.*, 884 F. Supp. 288 (N.D.Ill. 1995).

e.      Improper obligation of cosigners.  *Lee v. Nationwide Cassell*, 174 Ill.2d 540, 675 N.E.2d 599 (1996); *Taylor v. Trans Acceptance Corp.*, 267 Ill.App.3d 562, 641 N.E.2d 907 (1st Dist. 1994), leave to appeal denied, 159 Ill.2d 581, 647 N.E.2d 1017 (1995); *Qualkenbush v. Harris Trust & Sav. Bank*, 219 F. Supp. 2d 935 (N.D.Ill. 2002).

f.      Evasion of FTC holder rule.  *Brown v. LaSalle Northwest Nat'l Bank*, 148 F.R.D. 584 (N.D.Ill. 1993), later opinion, 820 F.Supp. 1078 (N.D.Ill. 1993), later opinion, 92 C 8392, 1993 U.S.Dist. LEXIS 11419 (N.D.Ill., Aug. 13, 1993).

27.      These cases also had a substantial effect on industry practices.  The warranty cases, such as *Grimaldi, Gibson, Slawson, Cirone-Shadow, Chandler*, and *Shields*, resulted in the Federal Reserve Board's revision of applicable disclosure requirements, so as to prevent car dealers from representing that the charge for an extended warranty was being disbursed to a third party when that was not in fact the case.

28.      **Predatory lending practices:**  The firm has brought numerous cases challenging predatory mortgage and "payday" lending practices, both as individual and class actions. *Jackson et al v. Payday Financial LLC et al*, 764 F.3d 765 (7th Cir. 2014), *cert. denied,* 135 S.Ct. 1894 (2015); *Livingston v. Fast Cash USA, Inc.,* 753 N.E.2d 572 (Ind. Sup. Ct. 2001); *Williams v. Chartwell Fin. Servs.*, 204 F.3d 748 (7th Cir. 2000); *Hamm v. Ameriquest Mortg. Co.*, 506 F.3d 525 (7th Cir.  2007); *Handy v. Anchor Mortg. Corp.*, 464 F.3d 760 (7th Cir. 2006);  *Laseter v.*

*Climateguard Design & Installation LLC*, 931 F.Supp.2d 862 (N.D.Ill. 2013); *Hubbard v. Ameriquest Mortg. Co.*, 624 F.Supp.2d 913 (N.D.Ill. 2008); *Martinez v. Freedom Mortg. Team, Inc.*, 527 F. Supp. 2d 827 (N.D.Ill. 2007); *Pena v. Freedom Mortg. Team, Inc.*, 07 C 552, 2007 WL 3223394, 2007 U.S. Dist. LEXIS 79817 (N.D.Ill., October 24, 2007); *Miranda v. Universal Fin. Group, Inc.*, 459 F. Supp. 2d 760 (N.D.Ill. 2006); *Parker v. 1-800 Bar None, a Financial Corp., Inc.*, 01 C 4488, 2002 WL 215530 (N.D.Ill., Feb. 12, 2002); *Gilkey v. Central Clearing Co.*, 202 F.R.D. 515 (E.D.Mich. 2001); *Van Jackson v. Check 'N Go of Illinois, Inc.*, 193 F.R.D. 544 (N.D.Ill. 2000), later opinion,   114 F. Supp. 2d 731 (N.D.Ill. 2000), later opinion, 123 F. Supp. 2d 1079 (N.D.Ill. 2000), later opinion, 123 F. Supp. 2d 1085 (N.D.Ill. 2000); *Henry v. Cash Today, Inc.*, 199 F.R.D. 566 (S.D.Tex.  2000); *Donnelly v. Illini Cash Advance, Inc.*, 00 C 94, 2000 WL 1161076, 2000 U.S. Dist. LEXIS 11906 (N.D.Ill., Aug. 14, 2000); *Jones v. Kunin,* 99-818-GPM, 2000 WL 34402017, 2000 U.S. Dist. LEXIS 6380 (S.D.Ill., May 1, 2000); *Davis v. Cash for Payday*, 193 F.R.D. 518 (N.D.Ill. 2000); *Reese v. Hammer Fin. Corp.*, 99 C 716, 1999 U.S. Dist. LEXIS 18812, 1999 WL 1101677  (N.D.Ill., Nov. 29, 1999); *Pinkett v. Moolah Loan Co.*, 99 C 2700,  1999 WL 1080596, 1999 U.S. Dist. LEXIS 17276 (N.D.Ill., Nov. 1, 1999); *Gutierrez v. Devon Fin. Servs.*, 99 C 2647, 1999 U.S. Dist. LEXIS 18696 (N.D.Ill., Oct. 6, 1999); *Vance v. National Benefit Ass'n*, 99 C 2627, 1999 WL 731764, 1999 U.S. Dist. LEXIS 13846 (N.D.Ill., Aug. 26, 1999).

29.     **Other consumer credit issues:**  The firm has also brought a number of other Truth in Lending and consumer credit cases, mostly as class actions, involving such issues as:

a.      Phony nonfiling insurance.  *Edwards v. Your Credit Inc.*, 148 F.3d 427 (5th Cir. 1998); *Adams v. Plaza Finance Co.*, 168 F.3d 932  (7th Cir. 1999); *Johnson v. Aronson Furniture Co.*, 96 C 117, 1997 U.S. Dist. LEXIS 3979 (N.D.Ill., March 31, 1997), later opinion, 1993 WL 641342 (N.D.Ill., Sept. 11, 1998).

b.      The McCarran Ferguson Act exemption.  *Autry v. Northwest  Premium Services, Inc.*, 144 F.3d 1037 (7th Cir. 1998).

c.      Loan flipping.  *Emery v. American General*, 71 F.3d 1343 (7th Cir. 1995). *Emery* limited the pernicious practice of "loan flipping," in which consumers are solicited for new loans and are then refinanced, with "short" credits for unearned finance charges and insurance premiums being given through use of the "Rule of 78s."

d.      Home improvement financing practices.  *Fidelity Financial Services, Inc. v. Hicks*, 214 Ill.App.3d 398, 574 N.E.2d 15 (1st Dist. 1991), leave to appeal denied, 141 Ill.2d 539, 580 N.E.2d 112; *Heastie v. Community Bank of Greater Peoria*,  690 F.Supp. 716 (N.D.Ill. 1989), later opinion, 125 F.R.D. 669 (N.D.Ill. 1990), later opinions, 727 F.Supp. 1133 (N.D.Ill. 1990), and 727 F.Supp. 1140 (N.D.Ill. 1990).

e.      Insurance packing.  *Elliott v. ITT Corp.*, 764 F.Supp. 102 (N.D.Ill. 1990), later opinion, 150 B.R. 36 (N.D.Ill. 1992).

30.     **Automobile leases:**  The firm has brought a number of a cases alleging illegal charges and improper disclosures on automobile leases, mainly as class actions.  Decisions in these cases include *Lundquist v. Security Pacific Automotive Financial Services Corp*., 993 F.2d 11 (2d Cir. 1993); *Kedziora v. Citicorp Nat'l Services, Inc.*, 780 F.Supp. 516 (N.D.Ill. 1991), later opinion, 844 F.Supp. 1289 (N.D.Ill. 1994), later opinion, 883 F.Supp. 1144 (N.D.Ill. 1995), later opinion, 91 C 3428,  1995 U.S.Dist. LEXIS 12137 (N.D.Ill., Aug. 18, 1995), later opinion, 1995 U.S.Dist. LEXIS 14054 (N.D.Ill., Sept. 25, 1995); *Johnson v. Steven Sims Subaru and Subaru Leasing*, 92 C 6355, 1993 WL 761231, 1993 U.S.Dist. LEXIS 8078 (N.D.Ill., June 9, 1993), and 1993 WL 13074115, 1993 U.S.Dist. LEXIS 11694 (N.D.Ill., August 20, 1993); *McCarthy v. PNC Credit Corp.*, 2:91CV00854 (PCD), 1992 U.S.Dist. LEXIS 21719 (D.Conn., May 27, 1992); *Highsmith v. Chrysler Credit Corp.*, 18 F.3d 434 (7th Cir. 1994); *Simon v. World Omni Leasing Inc.*, 146 F.R.D. 197 (S.D.Ala. 1992).

31.     *Lundquist* and *Highsmith* are leading cases; both held that commonly-used lease forms violated the Consumer Leasing Act.  As a result of the *Lundquist* case, the Federal Reserve Board completely revamped the disclosure requirements applicable to auto leases, resulting in vastly improved disclosures to consumers.

32.     **Insurance litigation:** Often securing recovery for a class requires enforcement of the rights under the defendant's insurance policy.  The firm has extensive experience with such litigation.  Reported decisions in such cases include:  *Record-A-Hit, Inc. v. Nat'l Fire Ins. Co.*, 377 Ill. App. 3d 642; 880 N.E.2d 205 (1st Dist. 2007);  *Pietras v. Sentry Ins. Co.*, 06 C 3576, 2007 WL 715759, 2007 U.S. Dist. LEXIS 16015 (N.D.Ill., March 6, 2007), later opinion, 513 F. Supp. 2d 983 (N.D.Ill. 2007); *Auto-Owners Ins. Co. v. Websolv Computing, Inc.*,  06 C 2092, 2007 WL 2608559, 2007 U.S. Dist. LEXIS 65339 (N.D.Ill., Aug. 31, 2007); *National Fire Ins. Co. v. Tri-State Hose & Fitting, Inc.*, 06 C 5256, 2007 U.S. Dist. LEXIS 45685 (N.D.Ill., June 21, 2007); *Nautilus Ins. Co. v. Easy Drop Off, LLC*, 06 C 4286, 2007 U.S. Dist. LEXIS 42380 (N.D.Ill., June 4, 2007).

33.     Some of the other reported decisions in our cases include:  *Elder v. Coronet Ins. Co.*, 201 Ill.App.3d 733, 558 N.E.2d 1312 (1st Dist. 1990); *Smith v. Keycorp Mtge., Inc.*, 151 B.R.  870 (N.D.Ill. 1992); *Gordon v. Boden*, 224 Ill.App.3d 195, 586 N.E.2d 461 (1st Dist. 1991), leave to appeal denied, 144 Ill.2d 633, 591 N.E.2d 21, cert. denied, U.S. (1992); *Armstrong v. Edelson*, 718 F.Supp. 1372 (N.D.Ill. 1989); *Newman v. 1st 1440 Investment, Inc.,* 89 C 6708, 1993 U.S.Dist. LEXIS 354 (N.D.Ill. Jan. 15, 1993); *Mountain States Tel. & Tel. Co.*, v. District Court, 778 P.2d 667 (Colo. 1989); *Harman v. Lyphomed, Inc.*, 122 F.R.D. 522 (N.D.Ill. 1988); *Haslam v. Lefta, Inc.*, 93 C 4311, 1994 WL 117463, 1994 U.S.Dist. LEXIS 3623 (N.D.Ill., March 25, 1994); *Source One Mortgage Services Corp. v. Jones*, 88 C 8441, 1994 WL 13664, 1994 U.S.Dist. LEXIS 333 (N.D.Ill., Jan. 13, 1994); *Wilson v. Harris N.A.*, 06 C 5840, 2007 WL 2608521, 2007 U.S. Dist. LEXIS 65345 (N.D.Ill. Sept. 4, 2007). *Wendorf v. Landers*, 755 F.Supp.2d 972 (N.D.Ill. 2010); *QuickClick Loans LLC v. Russell*, 407 Ill.App.3d 46; 943

N.E.2d 166 (1st Dist. 2011), *pet. denied*, 949 N.E.2d 1103 (2011) and *Adkins v. Nestle Purina Petcare Co.,* 973 F.Supp.2d 905 (N.D.Ill. 2013).

34.     *Gordon v. Boden* is the first decision approving "fluid recovery" in an Illinois class action.  *Elder v. Coronet Insurance* held that an insurance company's reliance on lie detectors to process claims was an unfair and deceptive trade practice.

35.     The hourly rates for the attorneys set forth below,  are the same as the regular current rates charged for their services in other contingent matters in class action litigation. They are also consistent with fees charged to occasional hourly paying clients.  The firm adjusts them annually to account for inflation and increasing experience  and they are consistent with the rates charged by attorneys of comparable experience and expertise in the Chicago area.  The rates listed and used in this case represent rates previously approved in a number of cases plus an annual adjustment.

36.     Examples of the approval of counsel's rates include:

a.     The rates charged by Edelman, Combs, Latturner & Goodwin, LLC were used as a benchmark by Judge Kennelly in *In re Southwest Airlines Voucher Litigation*, No. 11 C 8176, 2013 WL 5497275 (N.D.Ill., Oct. 3, 2013), at 19-20:

In particular, the Court has reviewed fee awards approved for the law firm of Edelman, Combs, Latturner & Goodwin, a Chicago law firm that has a long-established practice in the same field as Siprut, PC, the firm representing the plaintiff class in this case. Here are some examples. In *Jablonski v. Riverwalk Holdings, Ltd.*, No. 11 C 840, 2012 WL 3043687, at *1 (N.D. Ill. July 12, 2012), Judge Blanche Manning approved rates of $400 per hour for work done in 2011 by attorneys Daniel Edelman, Catherine Combs, and James Latturner, who had, respectively, thirty-six, thirty-six, and fifty years of practice experience. *Id.* at *1. In 2009, in the case of *In re Trans Union Corp. Privacy Litig.*, No. 00 C 4729, 2009 WL 4799954, at *20 (N.D. Ill. Dec. 9, 2009), Judge Robert Gettleman appears to have okayed a $550 rate for attorney Edelman. That same year, in *Jones v. Ameriquest Mortg. Co.*, No. 05 C 432, 2009 WL 631617, at *4 (N.D. Ill. Mar. 10, 2009), Judge David Coar approved rates of $465 per hour for partners Latturner, Combs, and Tara Goodwin, and a rate of $250 per hour for an associate who was six or seven years out of law school during the relevant period. In 2008, Judge Sam Der-Yeghiayan approved rates of $450 per hour for partners at the Edelman firm and $210 per hour for the same associate. *See Hamm v. Ameriquest Mortg. Co.*, 549 F. Supp. 2d 1018, 1022 (N.D. Ill. 2008).

On September 25, 2013, the Court considered a fee award (a very modest one) in a case brought by the Edelman firm in which it obtained a default judgment. That firm submitted a very comprehensive affidavit by its lead partner, Daniel Edelman, supporting the following hourly rates claimed for each of its partners and associates:

- $550 for partners Edelman (thirty-seven years of experience), Combs (thirty-seven years), and Latturner (fifty-one years);

- $505 for partner Goodwin (twenty-two years);

- $445 for partners Francis Greene (thirteen years) and Julie Clark (thirteen years);

- $400 for partner Heather Kolbus (eleven years);

- $355 for a partner with ten years experience;

- $230 to $290 for associates; and

- $100 to $125 for paralegals.

*See Quazi v. Lizetty and Assoc. Grp. LLC*, Case No. 13 C 4512, dkt. no. 19-5 (affid. of Daniel Edelman). This Court's own experience in dealing with fee awards (mostly agreed-upon awards) in consumer cases is generally consistent with a range bracketed on the higher end by the hourly rates proposed for lawyers from the Edelman firm in the *Quazi* case and, at the lower end, with the awards approved by Judges Der-Yeghiayan, Coar, and Gettleman in the cases cited earlier. The latter are, at this point, several years old, indicating that they may not actually represent appropriate current rates. . . .

b.    Rates of $700 for Daniel A. Edelman and $500 for Francis R. Greene were approved in *Manuel v. Caliber Home Loans, Inc.*, 14-5233-SRC-CLW (D. N.J. on August 20, 2015. The order is attached as <u>Appendix A</u>.

c.    Rates of $550 for Daniel A. Edelman and $230 for Cassandra P. Miller were approved in *Nadyenova v. Midland Funding, et al.*, 12-cv-632 (N.D.Ill.), on July 11, 2012. The order is attached as <u>Appendix B</u>.

d.    Rates of $550 for Daniel A. Edelman, James O. Latturner and Cathleen M. Combs, $400 for former partner, Michelle R. Teggelaar, and $250 for former associate Jeremy P. Monteiro were requested in the Plaintiff's Final Approval Memorandum and approved in *Bruce v. Wells Fargo Bank*, 2:05cv243 (N.D.Ind.), on October 18, 2007 (Transcript of proceedings, <u>Appendix C</u>).

e.    A rate of $325 for Ms. Hardy was approved by the Honorable Arthur D. Spatt at a fairness hearing in the Eastern District of New York in 2014, *Altagracia Diaz v. Residential Credit Solutions,* 12-cv-03781 (<u>Appendix D</u>).

37.    In determining the rates charged by the firm charges and requests, counsel

consults surveys of rates charged by other Chicago law firms.  Such surveys have been relied upon by courts in awarding fees.  E.g., *FDIC v. Morris*, 1992 U.S. Dist. LEXIS 9439 (N.D.Ill., June 29, 1992); *Alliance to End Repression v. City of Chicago*, 1993 U.S. Dist. LEXIS 1972 (N.D.Ill., Feb. 22, 1993).

38.     I am reasonably confident that the rates are accurate, based on my personal knowledge of rates in the legal community, court awards, negotiations with defendants, and discussions with other attorneys.

39.     The rates we used are also consistent with fee awards by courts in this or other comparable areas for comparable work:

a.     In *Harris N.A. v. Acadia Investments*, 09 C 6661, 2012 WL 1681985 (N.D.Ill., May 14, 2012) (Schenkier, M.J.), a commercial dispute in which the fees paid by plaintiff were shifted to the defendant pursuant to a contractual provision, the court awarded $775/ hour for a 1984 partner, $745/ hour for a 1985 partner,  $700/ hour for a 1992 partner, and $570/ hour for a 1995 partner.  Copies of the affidavits establishing these rates are in Appendix E.

b.     In *Winston v. O'Brien*, 10 C 8218, 2013 WL 2897161 (N.D.Ill., June 13, 2013) (Bucklo, J.), a police excessive force case, court awarded $535/ hour for lead counsel, $450/ hour for a 1994 graduate, $225/ hour for a second year associate, and $125 /hour for paralegal work.

c.     In *McDonough v. Briatta*, 06 C 2732, 2013 WL 1303800 (N.D.Ill., March 27, 2013) (Pallmeyer, J.), a First Amendment retaliation claim, the court awarded $500/ hour for 1964 and 1984 partners, $450/ hour for a 1993 graduate, $425/ hour for a 1999 graduate, $400/ hour for a 2001 graduate, $285/ hour for 2006 and 2007 graduates, and $100/ hour for paralegal time.

d.     In *Scott v. Illinois Youth Center Joliet*, 09 C 1633, 2011 WL 586408 (N.D.Ill., Feb. 9, 2011), an individual employment discrimination case, Magistrate Judge Brown awarded $100/ hour for paralegal time, $250/ hour for an associate with 5 years experience, and $285-$390/ hour for attorneys with 12-18 years experience, noting that only limited justification had been provided.

e.     In *Richardson v. City of Chicago*, 08 C 4824, 2012 WL 6185867 (N.D.Ill., Nov. 20, 2012) (Cole, M.J.), a police misconduct case, the court approved rates of $425/ hour for an attorney with 17 years experience, $400/ hour for an attorney with 9 years experience, $300/ hour for an attorney with 7 years experience, and $175/ hour for a second year associate.

f.     In *Covington v. District of Columbia*, 839 F. Supp. 894 (D.D.C.,

December 13, 1993), Judge Lamberth found, on the basis of court-approved surveys of rates in the Washington, D.C., area, that it was appropriate to award $260 per hour to attorneys with between 11 and 19 years experience for the time period 1992-93.  He further found that it was appropriate to have an annual increment of $10 per year or, alternatively, to multiply by 103.4% in accordance with the Consumer Price Index (the result is approximately the same).  He also noted that it had been relied upon by six other District Judges in the District of Columbia and the Court of Appeals for the District of Columbia Circuit.  Judge Lamberth awarded current rates for all work done in the past, in lieu of making the award at the then-current rate and awarding interest on it.

g.      The figures used in the *Covington* case have been updated each year by the office of the U. S. Attorney for the District of Columbia.  The updated figures (through 2013) are in the chart attached as <u>Appendix F</u>, available on the Internet site of the U. S Attorney's office ("Laffey Matrix", after *Laffey v. Northwest Airlines, Inc.*, 572 F.Supp. 354 (D.D.C. 1983)).

40.     The usual rates which I and the others in my firm charge at the present time are as follows:

a.      Daniel Edelman, Cathleen Combs, and James Latturner (partners): $700 an hour;

b.      Tara Goodwin (partner):  $600 an hour;

c.      Francis R. Greene and Julie Clark (partners):  $500 an hour;

d.      Heather Kolbus (partner): $500 an hour;

e.      Cassandra P. Miller (partner): $325 an hour;

f.      Tiffany N. Hardy (partner): $325 an hour;

g.      Emiliya Gumin Farbstein  (associate): $230 an hour;

h.      Michelle A. Alyea (associate): $230 an hour;

i.      Sarah M. Barnes (associate): $230 an hour

j.      Paralegals:  $100-$125 an hour (based upon experience).

41.     All attorneys and legal assistants in my firm are required to and do in fact keep track of their time on a contemporaneous basis, on computer.  Everyone enters their time

into a computer program, by case number.   The computer system automatically sorts the entries by case and generates totals.  Expenses are entered into the same computer program as they are incurred.  The printouts for this case are attached as <u>Appendix G</u>.

      Executed at Chicago, Illinois.


                  <u>/s/ Tiffany N. Hardy</u>
                  Tiffany N. Hardy

EDELMAN, COMBS, LATTURNER & GOODWIN, LLC
20 S. Clark Street, Suite 1500
Chicago, Illinois  60603
(312) 739-4200
(312) 419-0379 (FAX)

# APPENDIX A

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

$\mathcal{C}\mathcal{L}$

LUTHER B. MANUEL JR. and GERTRUDE
MANUEL, on behalf of themselves and the
class members described herein,

          Plaintiffs,

    vs.

CALIBER HOME LOANS, INC.; U.S.
BANK TRUST, N.A., as Trustee of LSF8
MASTER PARTICIPATION TRUST;
WELLS FARGO DELAWARE TRUST
COMPANY, N.A., as Trustee for
VERICREST OPPORTUNITY LOAN
TRUST 2013 NPL2 and VERICREST
OPPORTUNITY LOAN TRUST 2014 NPL2;
and DOES 1-25,

        Defendants.

Case No.: 2:14-cv-05233-SRC-CLW

~~[PROPOSED]~~
**FINAL APPROVAL ORDER**

**WHEREFORE**, it appearing to the Court that:

A.     On May 5, 2015, this Court entered a Preliminary Approval Order which, among

other things, preliminarily and conditionally certified this lawsuit to proceed as a class action for

settlement purposes only, defined the Settlement Class and Settlement Class Claims, appointed

Settlement Class Counsel, preliminarily approved the proposed Stipulation of Settlement which

would be binding on the Settlement Class, provided for notice to the Settlement Class including

an opportunity for Settlement Class members to request exclusion from the Settlement Class and

to object to the proposed Stipulation of Settlement, and scheduled a hearing ("Final Hearing") for

August 20, 2015, to consider any objections and to determine whether the proposed settlement is

fair, reasonable, and adequate.

B.      In satisfaction of Fed. R. Civ. P. 23(e)(3), a copy of the Stipulation of Settlement was provided to the Court with the Parties' Joint Motion seeking the entry of the Preliminary Approval Order.

C.      In accordance with the Court's Preliminary Approval Order, on June 5, 2015, actual notice was sent by first class mail to 15,050 Settlement Class Members by Heffler Claims Group (the "Class Administrator"). A total of 1,331 notices were returned by the United States Postal Service as undeliverable with no forwarding address or further information; 49 notices were returned by the United States Postal Service with a new address and successfully re-mailed; and a total of 3,338 claim forms have been received.

D.      In accordance with the Court's Preliminary Approval Order, on June 5, 2015, the Class Administrator established a toll-free telephone number to answer questions from Settlement Class Members through an interactive voice response (IVR) system with an option to leave a message to be responded to by Class Counsel.

E.      On August 20, 2015, in accordance with the Preliminary Approval Order [Doc. 32] and Fed. R. Civ. P. 23(e)(2), counsel for the Parties timely appeared for the Final Fairness Hearing to determine whether the action satisfies the applicable prerequisites for class action treatment and whether the proposed settlement is fundamentally fair, reasonable, adequate, and in the best interest of the Class Members and should be approved by the Court;

F.      The Class Members were given an opportunity to object to the settlement. Only one Class Member, through counsel, objected to the settlement ("Objector") [Doc. 35]. The Objector's counsel appeared at the Final Hearing and presented the Objector's arguments against the Settlement. The Court having heard and considered the Objections finds them to be without merit and accordingly overrules them for the reasons stated on the record.

G.      The Class Members who made valid and timely requests for exclusion are excluded from the class and settlement and are not bound by this Order. Only 31 Class Members requested exclusion. The identities of such persons are set forth in **Exhibit A**, attached hereto; and

H.      With the Court having concluded that the proposed settlement is fair, reasonable, and adequate; and the Court being duly advised in the premises, and for good cause shown;

**IT IS HEREBY ORDERED AND ADJUDGED:**

1.      The Court confirms its certification in the Preliminary Approval Order of this lawsuit as a class action for settlement purposes only and, in accordance with Fed. R. Civ. P. 23(b)(3), defines the "Settlement Class" as:

> All persons who were sent the following letters from Caliber on the following dates: (1) A letter with the title "Notice of Sale of Ownership of Mortgage Loan", dated January 9, 2014; (2) A letter with the title "Welcome to Caliber", dated February 12, 2014; and, (3) A letter listing the creditor and principal amount of the loan, dated February 18, 2014.

The Court further defines the "Settlement Class Claims" as those claims of the Settlement Class arising from written communications sent by Caliber, in connection with its servicing of residential mortgage obligations, which allegedly failed to make accurate disclosures as required by 15 U.S.C. §1692(g)(a)(2), 12 U.S.C. §2605, and 15 U.S.C. §1641(g).

2.      The Court declares that the Parties' Notice Plan as set forth in the Stipulation, including the notice mailed to Class Members, satisfied the requirements of Fed. R. Civ. P. 23 and constitutional due process.

3.      The Court approves the disbursement of the Settlement Fund as provided for in the Stipulation of Settlement and directs that the Class Administrator disburse the payments in accordance with the terms of the Stipulation.

4.      The Court approves the award of attorneys' fees and costs to Settlement Class Counsel, in the amount of _288,000_____, and declares such fees and costs, and the hourly rates sought to be fair and reasonable.

-3-

5.     The Stipulation, which was filed with the Court on April 3, 2015 [Doc. 30-2], and which shall be deemed incorporated herein by reference in its entirety, is finally approved and shall be consummated in accordance with the terms and provisions thereof, except as amended by any subsequent order issued by this Court.

6.     This Order is binding on all Class Members, except those individuals identified in **_Exhibit A_** hereto, who validly and timely excluded themselves from the Settlement Class.

7.     The Class Representatives, Class Members, and their successors and assigns are permanently barred and enjoined from instituting or prosecuting, either individually or as a class, or in any other capacity, any of the Released Claims against any of the Released Parties, as set forth in the Stipulation. Pursuant to the release contained in the Stipulation, the Released Claims are compromised, settled, released, discharged, and dismissed with prejudice by virtue of these proceedings and this Order.

8.     The Lawsuit is hereby dismissed with prejudice in all respects.

9.     This Order is not, and shall not be construed as, an admission by Defendants of any liability or wrongdoing in this or in any other proceeding.

10.    The Court retains jurisdiction over the interpretation, enforcement, and implementation of the Stipulation of Settlement and this Final Order.  Except as retained, all claims against all Defendants are dismissed with prejudice and without taxing costs.

                                 **IT IS SO ORDERED:**


                                 HONORABLE STANLEY R. CHESLER
                                 Judge, United States District Court

                                 Dated: 8/20/15

-4-

# EXHIBIT "A"

| First Name | Last Name | Exclusion # |
|---|---|---|
| Steven | Catalfamo | 1 |
| Lazina | King | 2 |
| Rebecca | Luker | 3 |
| Charles | Wild | 4 |
| Trevor | Nightengale | 5 |
| Elwood | Gilchrist | 6 |
| Rhonda | Evans | 7 |
| Melissa | Filipos | 8 |
| Paul | Zawadzke | 9 |
| ███ | ███ | █ |
| Pamela | Carrig | 11 |
| Edward | Accomando | 12 |
| Latif | Giwa | 13 |
| Madison | Rogers | 15 |
| Hieu | Nguyen | 16 |
| William | Pastino | 17 |
| Suzanne | Thompson | 19 |
| Edna | Albright | 20 |
| Beverly | Marretta | 21 |
| Paula | Mexner | 22 |
| Fitzroy | Lyte | 24 |
| Hugh | Mills | 25 |
| Theresa | Jones | 26 |
| Richard | Koesler | 27 |
| David | Walkerr | 28 |
| Kelly | Smith | 29 |
| Laura | Wellnitz | 30 |
| Charlie | Smith | 31 |
| Michael | Szczepaniak | 32 |
| Ronald | Carter | 33 |
| Rodell | Cotrell | 34 |

| First Name | Last Name | Exclusion # |
|---|---|---|
| Anuoluwa | Giwa | 14 |
| Heather | Rogers | 15 |
| Roberta | Pastino | 18 |
| Roberta | McGuane | 23 |
| San Juan | Koesler | 27 |

# APPENDIX B

Order Form (01/2005)   Case: 1:12-cv-00632 Document #: 28 Filed: 07/11/12 Page 1 of 2 PageID #:67

## United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | John J. Tharp, Jr. | Sitting Judge If Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 12-c-632 | **DATE** | 7/11/2012 |
| **CASE TITLE** | Naydenova vs. Midland Funding et al. | | |

DOCKET ENTRY TEXT

Status hearing held. Parties waive briefing on fee petition following presentation of positions in open court and submit issue to Court for resolution. Upon review of Parties' LR 54.3(e) Joint Statement, the Court awards fees and costs to Plaintiff in the amount of $2,529.98. For further details see text below. This amount stands as the "reasonable attorneys' fees and costs" included in the Court's Judgment [22] entered 4/24/12. Case terminated.

⊠[ For further details see text below.]                                        Docketing to mail notices.

00:06

## STATEMENT

This Fair Debt Collection Practices Act case was resolved by Plaintiff's acceptance of Defendants' Offer of Judgment, served on April 19, 2012, pursuant to FRCP 68. The Offer of Judgment was "in the amount of $1,001 plus reasonable attorneys' fees and costs, as determined by the Court and as allowed by law." This Court entered judgment on the accepted offer and directed the parties to confer regarding the amount of reasonable attorneys' fees and costs to be included in the judgment. On July 9, 2012, the parties reported by means of a Local Rule 54.3(e) Joint Statement, advising that they had been unable to reach agreement on the amount of reasonable attorneys' fees and costs to be included in the judgment. At the status hearing on July 12, the parties waived further briefing on the issue of the amount of attorneys' fees and costs to be awarded, and submitted the issue to the Court for determination. Having reviewed the Joint Statement, including the exhibits supplied by the parties, the Court concludes that attorneys' fees and costs in the amount of $2,529.98 should be awarded to Plaintiffs under the Offer of Judgment.

The Court finds in general that the fees charged, and effort expended, by Plaintiff's counsel are reasonable, with the exception that the Court concurs with Defendant's objection that it is unnecessary to have five lawyers (four of whom are partners) involved in a case in which the issues were not complex and which was resolved almost immediately. The Court has therefore deducted the time of the three partners who were most tangentially involved in the drafting and review of the complaint (at least as measured by the time they spent on that task). Defendant also objected to the rates charged by these attorneys, but as their time has been excluded, the objection to those rates is moot. By contrast, Defendant's Exhibit B letter to Plaintiff acknowledges that the rates of $550 per hour for Daniel Edelman and $230/hour for Cassandra Miller are reasonable and, accordingly, the Court accepts those rates, noting as well that "[c]ourts in this circuit generally have awarded somewhere in the range of $200 to $300 per hour for lawyers with significant experience handling these types of cases." See *Brown v. Patelco Credit Union*, 2011 WL 4375865, *3 (N.D.Ill.).

Case: 1:12-cv-00632 Document #: 20 Filed: 07/11/12 Page 2 of 2 PageID #:68

## STATEMENT

While Mr. Edelman's rate is substantially higher, in view of his status as one of the senior partners in the firm and the limited time expended (one hour), the Court does not find the request to recover his fees to be unreasonable, particularly where he is the only partner whose fees will be recovered.

Defendants object to time entries by paralegals that they characterize as "secretarial" in nature. While a few of these tasks are arguably non-legal in nature (*e.g.*, "prep letter and mailing to process server"), the Court finds that most of the paralegal tasks identified in the time entries require specialized knowledge and/or experience that goes beyond generically clerical or secretarial tasks. The filing of specialized forms, such as appearances and civil cover sheets, are examples. In any event, the rate charged by the paralegals performing these task was $100/hour, and the Court finds that rate reasonable whether the tasks are characterized as "legal" or "clerical" in nature. See, *e.g.*, *Smith v. Astrue*, 2011 WL 2064843, *2 (S.D. Ill.) (reducing attorney hours devoted to similar clerical tasks by 60% where they could have been performed by an experienced secretary or paralegal; the rates charged by paralegals here are approximately 60% lower than the $230 hour rate charged by the associate attorney assigned to the case).

Defendants object as well to the time entries related to the drafting of a settlement agreement, but the Court finds that effort to have been a reasonable attempt to try to resolve the case (indeed, counsel for the defendants undoubtedly incurred time on the same pursuit). Further, the fact that the Plaintiffs had spent time drafting settlement language was obviously known to the Defendants when the offer of judgment was made; had they wished to exclude time for that purpose, they could have so indicated in their Offer.

The Court does conclude, however, that fees incurred after Plaintiff accepted the Offer of Judgment should be excluded. By its terms, Rule 68 provides only for the recovery of "costs then accrued," that is, the costs incurred up to the point that the Offer of Judgment is made. Once the Rule 68 offer was made, "the clock stopped ticking." *Patelco Credit Union*, 2011 WL 4375865, *6. Attorney's fees are considered "costs" under Rule 68 when the underlying statute provides for attorney's fees to be awarded as part of the costs.

*Marek v. Chesney*, 473 U.S. 1, 2 (1985) ("[T]he term costs in the Rule was intended to refer to all costs properly awardable under the relevant substantive statute."). Accordingly, there is no basis to assess fees differently in the context of an Offer of Judgment. Defendants' Offer did not extend to cover fees and costs incurred after it was made and Plaintiff's acceptance of that offer renders its request for fees and costs incurred after that date unreasonable.

The Court therefore calculates the fees and costs to be awarded to Plaintiff as follows:

| | |
|---|---|
| Plaintiff's total fees and costs: | $4,011.53 |
| Less: | |
| JOL Time | 330.00 |
| MRT Time | 160.00 |
| CMC Time | 110.00 |
| Time incurred after offer was made (4/19/12) | 878.00 |
| Costs incurred after offer was made (4/19/12) | 3.55 |
| Revised total fees and costs | $2,529.98 |

# APPENDIX C

1

1              UNITED STATES DISTRICT COURT
               NORTHERN DISTRICT OF INDIANA
2                   HAMMOND DIVISION

3
DARRELL BRUCE,                    )
4                                 )
                    PLAINTIFF,    )
5                                 )
VS.                               )  Cause:  2:05 cv 243
6                                 )
WELLS FARGO BANK NA,              )
7                                 )
                    DEFENDANT.    )
8

9

10        The FAIRNESS HEARING in the above-entitled matter was
commenced before Honorable Philip P. Simon judge of said court, at
11 the Federal Building, 5400 Federal Plaza, Hammond, Indiana, on the
18TH day of October, 2007 commencing at the hour of 1:20 in the
12 afternoon.

13

14

15

16

17

18

19

20

21              Sharon Boleck Mroz, CSR, RPR, CPE
                Official Court Reporter
22              US District Court
                Northern District of Indiana
23              Hammond Division
                5400 Federal Plaza
24              Hammond, IN 46320
                (219) 852-6728
25

1                          Appearances:

2         Ms. Michelle R. Teggelaar
          Edelman Combs Latturner & Goodwin
3         120 S. LaSalle Street, Suite 1800
          Chicago,  IL  60603
4
                          On behalf of the Plaintiff;
5
          Mr. Robert J.Emanuel PHV
6         Burke Warren MacKay and Serritella
          330 N.Wabash Avenue
7         Chicago,  IL  60611

8                          On behalf of the Defendant.

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

3

```
 1                           INDEX
 2
      Hearing - 5
 3
 4
 5
 6
 7
 8
 9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
```

4

| | |
|---|---|
| 1 | EXHIBITS |
| 2 | (None) |
| 3 | |
| 4 | |
| 5 | |
| 6 | |
| 7 | |
| 8 | |
| 9 | |
| 10 | |
| 11 | |
| 12 | |
| 13 | |
| 14 | |
| 15 | |
| 16 | |
| 17 | |
| 18 | |
| 19 | |
| 20 | |
| 21 | |
| 22 | |
| 23 | |
| 24 | |
| 25 | |

5

```
 1            THE CLERK:  All rise.
 2            THE COURT:  You can be seated.  Good afternoon everyone.
 3            We're on the record.  The cause number is 2:05 CV 243
 4     Bruce versus Wells Fargo.
 5            Back on the 21st day of June of this year, I
 6     preliminarily approved a class action settlement, and I set this
 7     date for the fairness hearing.
 8            So, if you all can introduce who you are so I know who
 9     I'm dealing with here.
10            Sir.
11            MR. EMANUEL:  My name is Bob Emanuel.  E M A N U E L.
12     And I represent Wells Fargo, and I am very sorry that I was tardy
13     today.
14            I went to the 507 building.
15            THE COURT:  Got it.
16            We have been here almost what, five years, Noel?
17            MR. EMANUEL:  I've been to this building before.  I tried
18     using a navigation system which I'm not really --
19            THE COURT:  Don't worry about it.
20            MR. EMANUEL:  Obviously.
21            THE COURT:  Ma'am.  You Miss Teggelaar?
22            MS. TEGGELAAR:  Miss Teggelaar, Plaintiff.
23            THE COURT:  Nice to see you.
24            All right.  Just for the record, it is now 21 minutes
25     after 1:00.
```

6

1          This hearing was scheduled to begin at 1:00.  There is
2     nobody in the courtroom other than the party -- other than the
3     lawyers and people from the court staff and the court security
4     officer.
5          Evidently, there is no class member who has saw fit to
6     appear to object to the settlement.
7          So, my -- ordinarily my procedure, Miss Teggelaar, is
8     just for you to give a brief summary as to what the terms of the
9     settlement are for the record, and I'll make my findings on the
10    fair and reasonableness of the settlement.
11         So, you may proceed.
12         MS. TEGGELAAR:  Pursuant to the settlement, the Plaintiff
13    Darrell Bruce is to receive a thousand dollars which is the maximum
14    provided for by the statute.  Each class member that submits a
15    claim form will be entitled to receive a payment of $200, and the
16    settlement provides for payment of $75,000 in fees in addition to
17    the class recovery.
18         There were 4,377 notices mailed to the class members.
19    And there were a relatively low number returned, undeliverable,
20    210.
21         There were eight that were returned and remailed, but we
22    received a very, very --
23         THE COURT:  That is a very high percentage, isn't it?
24         MS. TEGGELAAR:  -- of claim forms back in this case.
25    Actually there is only one other case that we had that anyone at my

7

1    firm could recall that was rate -- or return this high.

2          There were 1,500 timely.  There were 25 late that we had

3    as of October 5.  That is about one-third of the class members who

4    decided to return a claim form, which I think shows an overwhelming

5    positive response from the class.  We usually see about ten percent

6    returning claim forms.

7          So, the class then -- recovery was about $300,000.  It

8    would be 305,000 if the Court elects to allow those late claim

9    forms.

10          We did want to draw to the Court's attention that there

11    were some other claim forms that were received that did not appear

12    to be valid.  They were all sent by individuals that had the same

13    address as the class member.  They probably were family or friends,

14    and individuals did  -- that were class members also returned claim

15    forms.

16          So those, after discussing it, we were -- decided we were

17    not going to honor those claims forms.  They did not appear to be

18    valid, and we wanted to bring that to the Court's attention.

19          There was only one other issue we found out today that

20    the CAFA notice was not provided.

21          THE COURT:  I'm sorry.  I can't hear you.

22          MS. TEGGELAAR:  I'm sorry.

23          The CAFA notice was not provided at the time that was

24    required by statute and Defendant can probably speak.  It was

25    apparently a miscommunication with the administrator that was

8

1    handling it they believed to have done it.

2              And under CAFA, the Court cannot enter that final

3    approval order until after 90 days after the notice has been

4    provided.  So, in fact we had discussed what to do in this

5    circumstance, and actually this summer I had a case where that

6    happened, and the defendants didn't provide it on time.  And what

7    the Judge did -- that was in Central District of Illinois.  The

8    judge held the hearing, didn't enter the final order, made findings

9    that he had approved the settlement.  As soon as we -- the time had

10   passed since the notice was provided, that it could be unclear that

11   no state or Federal authorities wished to appear and object to the

12   settlement.

13             THE COURT:  When will that be?

14             MR. EMANUEL:  It -- and let me address this.

15             And I  -- I probably ought to be in the position of

16   thanking Michelle and apologizing to her at the same time.

17             CAFA as you know is a new statute.  Many of the cases --

18   I've been doing these cases for 15-some years.

19             And some settlement administrators, the one that I work

20   with, picked up on it right away and sent out the CAFA notice,

21   which is basically a notice to any Federal authority that might

22   have an interest.  And I did get correspondence from them saying

23   the quote "notices" had gone out.

24             I -- it's my fault at the end of the day.  I did not

25   drill down and find out did they mean the CAFA notice.

9

1          So, ultimately, what happened is that CAFA notice did not

2    go out.  And until it's been out and there have been 90 days, for

3    someone to speak up, my understanding is consistent with

4    Michelle's, no final order can be entered.

5          It does leave the class and Plaintiff's counsel in a

6    position that is not enviable and we have to figure out what we

7    ought do about that.

8          I have -- as the Court noted, never  -- I mean, I think

9    this settlement is  -- usually defendants don't speak up much in

10   these hearings, but I've never seen a turnout like this.

11         We usually -- Michelle says ten.  We usually see seven,

12   eight percent.

13         That said, I'm not worried about anyone having an

14   objection to the settlement.

15         What I'm wondering if is there any way the Court can give

16   final approval to the settlement or approve the settlement and

17   retain jurisdiction to alter that finding if there is an objection,

18   and I don't know if that's  -- if that's possible, so that we can

19   go ahead and pay the class members and pay Plaintiff's counsel.

20         THE COURT:  Miss Teggelaar.  I don't know.

21         MS. TEGGELAAR:  Well, that's also come up because

22   recently the Seventh Circuit has said we don't want any orders

23   entered that approve the settlement, retain jurisdiction because

24   that --

25         THE COURT:  More than familiar with them.

1    MS. TEGGELAAR:  What we have been doing is alternatively

2  to that is having the case dismissed without prejudice, the Court

3  finding that the settlement should be approved but dismissing

4  without prejudice, subject to the settlement being implemented.

5  And then at that time have the order become with prejudice.  And I

6  mean, I'm not sure if we can  -- technically wouldn't be the final

7  order being entered.

8    THE COURT:  When was this CAFA notice sent?

9    MR. EMANUEL:  It has not.

10    THE COURT:  Has not even occurred.

11    MR. EMANUEL:  What happened today is Michelle out of

12  courtesy said to me, "Bob, did you make sure to file the CAFA

13  notice?"

14    And I called the settlement administrator and said  --

15  because he sent up a bunch of notices that were filed in this case.

16    And I said, did you send out the CAFA notice.  I cannot

17  find it.

18    And he said  -- and I don't want to imitate him; he is

19  from the very deep south.  He said basically, I don't know what a

20  CAFA notice is.

21    And I say this to be candid with the Court.

22    It did not go out.  It will go out today, and then we

23  have a 90 day period.  But I think it would be consistent if --

24    THE COURT:  What am I supposed to do here then?  What if

25  one in a hundred the notice gets out, somebody comes in here and

1    gripes about it and changes my mind.  It's not very likely.  I
2    can't unring the bell.  I can't get money back.
3         I can't -- you know, I mean, in many ways, I'm -- I
4    mean, I think I can make the findings today as it stands right now
5    so we don't even have to have another hearing, that it's a fair and
6    reasonable settlement, that it's -- and make whatever findings I
7    need to make, but take under advisement the possible
8    reconsideration of that should the CAFA notice generate some
9    adverse findings.  And unfortunately, you're going to have to wait
10   to get your money, unless you have some other solution here.
11        MS. TEGGELAAR:  Well, it's just -- it's the difficulty
12   with the class members.  I mean, if it's just a question of
13   waiting, you know, three months to get our fees to have to enter
14   it, that is something we have to deal with, but we already had
15   those individuals calling and asking about that, and --
16        THE COURT:  So, what's the solution?  What am I missing
17   here?  What would be the solution?
18        MS. TEGGELAAR:  I really don't have a solution to that.
19   I mean, I -- personally, I think the Defendant should issue the
20   class checks.  They want to wait on our fees, do it.  It's their
21   risk because it's their mistake.  We should have been prepared to
22   go forwarded too.  The longer you wait, the less likely those
23   checks get to the class members and be cashed.
24        That is something we see a lot, the longer it takes.  And
25   we could say the Defendant then has to try to skip trace them or

12

 1   something if that does happen later.

 2           THE COURT:  Mr. Emanuel.

 3           MR. EMANUEL:  Miss Teggelaar makes good points.

 4           There is some small, I think very small risk although we

 5   do  -- first of all, she mentioned some late claims.

 6           Once we have come to a settlement, you know, we shall  --

 7   we generally -- more than generally.  I think we have 25

 8   late claims.  We are going to pay those claims.  And in any case,

 9   whether you approved it today or whether it was in 90 days.  If we

10   send a check out to someone and then it comes back, we track that

11   person down.

12           They don't just leave the checks stale.

13           And here, the amount of money is large enough that people

14   are going to get into contact with us.

15           That's why you have such a high response here.  It was a

16   larger settlement per person.  I really do  -- I apologize to the

17   Court and I apologize to Miss Teggelaar for the issue with the

18   notice.  It is embarrassing for me, but I have to be candid and

19   take responsibility for it.

20           And if there is a way that the Court can  -- can approve

21   the settlement and retain jurisdiction, once the settlement is

22   approved, we'd be happy to start cutting the necessary checks.

23           THE COURT:  I'll approve the settlement today.

24           MR. EMANUEL:  Okay.

25           THE COURT:  I mean, there is nothing about this

13

1    settlement that is unreasonable.

2            I was prepared to do that.

3            My concern is maybe not  -- I don't quite understand what

4    the effect of the CAFA notice is.  Who does it go to, and what is

5    the down side risk here?

6            MR. EMANUEL:  It would go to the State Attorney General.

7    It would go to, I believe, a variety of federal agencies.

8            MS. TEGGELAAR:  I think they only give it to the US

9    Attorney.

10           MR. EMANUEL:  Okay, that's it, not the OCC?

11           MS. TEGGELAAR:  Since this is just an Indiana class.

12           MR. EMANUEL:  Okay.  And in my experience, from what I

13   read in the time that Michelle raised this issue -- I suppose I

14   shouldn't say my experience, I might be overstating things.

15           I think the chances of getting an objection here are

16   very, very slim, and I think the chances of getting an objection

17   that could be sustained are even slimmer.

18           THE COURT:  All right.

19           Here's what I'm going to do.  I'm going to issue  -- I'm

20   going to approve the settlement.

21           MR. EMANUEL:  Okay.

22           THE COURT:  And I'm going to order you to pay the class

23   members and counsel immediately, or --

24           MR. EMANUEL:  Pursuant to --

25           THE COURT:  Pursuant to the agreement, a few weeks.

1           MS. TEGGELAAR:  Right.

2           THE COURT:  And I will simply dismiss the case without

3    prejudice, pending -- even though I probably can't do that, but I

4    will, because this is -- you know, this is -- the risk is so low

5    here.

6           MR. EMANUEL:  Uh-huh.

7           THE COURT:  And we'll just keep it  -- I'll wait to hear

8    back from you all --

9           MR. EMANUEL:  Okay.

10          THE COURT:  -- in 90 days, in which case you can file

11   something that will tell me that you can dismiss it with prejudice,

12   because nobody has objected to it.

13          MR. EMANUEL:  And specifically, what I would propose is

14   that perhaps we even set a  -- I don't know if you can set a status

15   date that in 91 days, we will provide the Court with proof that the

16   CAFA notice went out, and that there has been no objection or

17   response, if that's what the Court wants.

18          THE COURT:  That's fine.

19          I don't think we have to have a hearing.  In my world on

20   the 91st day you'll just file something that will tickle us that

21   will say, oh, by the way we sent out the notice, we got no

22   response, the dismissal can be converted from without prejudice to

23   with prejudice and the case is over.

24          MR. EMANUEL:  Okay.

25          MS. TEGGELAAR:  There is one other little glitch.

1          THE COURT:  Sure.

2          MS. TEGGELAAR:  That's because of the Seventh Circuit,

3    not because of the CAFA notice, because we need to make sure

4    everything is done in the settlement before it's final because the

5    court can't dismiss, retain jurisdiction, we need to make sure that

6    we can do that up and through the time when they would have to give

7    the cy pres award.

8          So when I originally calculated that out before I was

9    aware of this issue, triggered by the approval today and then when

10   the payment would come due and checks would be issued to class

11   members, the settlement agreement provides that their checks are

12   good for 90 days.  And after the checks are void, then the

13   Defendant has to give out cash funds to the cy pres.

14         I think I calculated that out to be about six months

15   total into April.  And I think in the draft order I submitted I

16   just left a blank that this order will become final on X date

17   unless--

18         MR. EMANUEL:  Can I  -- because if the case can't be

19   dismissed with prejudice for six months anyways --

20         MS. TEGGELAAR:  Then this will be done well before that.

21         MR. EMANUEL:  Yes.

22         THE COURT:  Okay.

23         MS. TEGGELAAR:  I mean, I could --

24         MR. EMANUEL:  Or the --

25         THE COURT:  One at a time.

16

1           MS. TEGGELAAR:  I'm sorry.

2           I can add a paragraph actually in what I submitted that

3    has a separate requirement that verification after the 90 days

4    passed, defendant will file something that -- saying that no

5    objection has been made, and leave the paragraph in here as it is

6    about being converted to dismissal with prejudice, and we can pick

7    a date in April some time.

8           THE COURT:  That's fine.  Why don't you go ahead and do

9    that by a week from today.

10          MS. TEGGELAAR:  I mean, I can probably as soon as I get

11   back to my office, I can make that change --

12          THE COURT:  Fair enough.  Okay.

13          MS. TEGGELAAR:  -- and send it over.

14          THE COURT:  And you wanted to appear here telephonically?

15          MR. EMANUEL:  Today I asked if I could.  We had done it

16   in the past in this case frequently.

17          I want to make clear that my request to appear

18   telephonically was made before I got Michelle's e-mail.

19          THE COURT:  Fair enough.

20          MR. EMANUEL:  Then when I talked to Michelle because I

21   told Michelle I was hoping -- she said, are you going to appear

22   telephonically.  I said, not now.  So --

23          THE COURT:  All right.

24          MR. EMANUEL:  Usually at a  -- at a final approval

25   hearing, I did it in front of Judge Zagle.  Usually I say nothing

1    other than we think the settlement is fair.

2             THE COURT:  I'm relatively new at this.  I've probably

3    done five of these, but you know, you never know when somebody is

4    going to walk in the door and say, I don't like what I'm seeing

5    here.

6             MR. EMANUEL:  Well, I would appear telephonically and our

7    local counsel is going to come and sit where I'm sitting.  Once the

8    CAFA issue came up, I thought it was important for me to be here

9    and explain.

10            THE COURT:  You thought it was important go to 507 State

11   Street.

12            MR. EMANUEL:  It's been a  -- not been my best day.

13            THE COURT:  All right.

14            Here are the factors I have to consider in deciding

15   whether to grant final approval of a class action settlement:  The

16   strength of the Plaintiff's case on the merits as measured against

17   the terms of the settlement; the complexity, length and expense of

18   the continued litigation; the amount of opposition to the

19   settlement among class members; the presence of any collusion in

20   gaining a settlement; the stage that the proceedings are in; and

21   the amount of discovery that's been completed.  In taking -- in

22   consideration all those factors, this is a very favorable

23   settlement to the Plaintiff class as I see it, although I  -- I

24   felt that it was a fairly strong case for the plaintiff.  Although

25   I know that there's been no admission of liability here, I had

18

1    concern with this -- with this particular solicitation. So, it

2    -- it was a strong case and that's perhaps what led to a favorable

3    settlement in my judgment for the Plaintiff's class.

4           The law firm that is representing the Plaintiff's class

5    has appeared in this Court and across the Midwest and I assume

6    around the country litigating consumer class action litigation, and

7    as always, done excellent work in my court.  And this was a complex

8    piece of litigation.

9           The fact that we have no one here in court opposing the

10   settlement, and more importantly the fact that there's been really

11   a very amazing response from the class participating in the

12   settlement, approximately a third of the prospective class or of

13   the class have returned the forms to -- asking to participate

14   really indicates the overwhelming approval that the class members

15   have in the settlement that's been negotiated by the Plaintiff's

16   counsel.

17          There's no evidence at all of any -- of any inclusion,

18   and  -- and on the issue of attorney's fees, I think they are more

19   than reasonable on a case in which approximately $300,000 is going

20   to be paid to the class.  I guess what would amount to

21   approximately 25 percent of that amount in addition to that as

22   attorney's fees does not strike me at all as unreasonable and the

23   rates that were requested in the loadstar method that are set out

24   in the petition to approve the settlement, I find to be totally

25   reasonable given the prevailing market rates for this type of

 1    litigation.

 2            I will also approve the late filers, the people who filed

 3    the claim forms late. I believe there is 25 of them. I would

 4    include them as part of the final judgment here. And that they too

 5    can participate in the settlement.

 6            Okay. Anything else I need to do then?

 7            MS. TEGGELAAR: I don't think so.

 8            THE COURT: No?

 9            MR. EMANUEL: No, your Honor.

10            THE COURT: So then I want to make sure I'm clear. Miss

11    Teggelaar, you'll file something today or tomorrow that is going to

12    update the proposed form of order adding the information that we

13    talked about?

14            MS. TEGGELAAR: Yes.

15            THE COURT: And I'll enter that immediately, you're

16    saying or do I want until the 90 days?

17            MS. TEGGELAAR: That  -- the order that I would be

18    submitting, you could enter immediately.

19            THE COURT: And then in 90 days you'll be filing

20    something else that I can convert what I'm entering tomorrow or the

21    next day into a final dismissal with prejudice?

22            MS. TEGGELAAR: The order that I will submit will have a

23    provision in it stating that it will become final with prejudice

24    after a certain date, and I can count out six months from --

25            THE COURT: I got it.

20

```
 1          MS. TEGGELAAR:  -- today.

 2          THE COURT:  I'm following you now.

 3          MS. TEGGELAAR:  We won't have to go and enter another --

 4          THE COURT:  I was a little murky on that.  Got it.

 5     okay.  Thank you very much.  Thank you, sir.

 6          MR. EMANUEL:  And again I apologize.  I do have a couple

 7  of comments once we left the record.

 8          THE COURT:  Yeah.  Okay.  We can go off the record.

 9          (WHICH WERE ALL THE PROCEEDINGS HAD).

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25
```

21

1        C E R T I F I C A T E

2

3        I, Sharon Boleck Mroz, being a duly authorized

4   and acting official court reporter for the

5   United States District Court, for the Northern

6   District of Indiana, Hammond Division, do hereby

7   certify that I did report in machine shorthand the

8   foregoing proceedings, and that my shorthand notes

9   so taken at said time and place were reduced to

10  typewriting under my personal direction.

11        I further certify that the foregoing typewritten

12  transcript constitutes a true record of said

13  proceedings, so ordered to be transcribed.

14

15  _____

16                    Sharon Boleck Mroz

17                    Official Court Reporter

18

19

20

21

22

23

24

25

# APPENDIX D

1

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - X

ALTAGRACIA DIAZ, on behalf of    :
herself and all others
similarly situated,              :
                                          12 CV 3781
        Plaintiff,               :

           -against-             :   U.S. Courthouse
                                     Central Islip, N.Y.
RESIDENTIAL CREDIT SOLUTIONS,     :
INC.,
                                 :

        Defendant.
                                 :   September 29, 2014
- - - - - - - - - - - - - - - X   9:30 a.m.

TRANSCRIPT OF FAIRNESS HEARING
BEFORE:

        HONORABLE ARTHUR D. SPATT, U.S.D.J.

APPEARANCES:

For the Plaintiff:    LAW OFFICES OF KLEINMAN, LLC
                      626 Rexcorp Plaza
                      Uniondale, New York 11556
                      BY:  ABRAHAM KLEINMAN, ESQ.

For the Defendant:    LOWENSTEIN SANDLER, LLP
                      1251 Avenue of the Americas
                      New York, New York
                      BY:  JASON HALPER, ESQ.


Court Reporter:       HARRY RAPAPORT, CSR
                      United States District Court
                      100 Federal Plaza
                      Central Islip, New York 11722
                      (631) 712-6105


Proceedings recorded by mechanical stenography.
Transcript produced by computer-assisted transcription.

2

1           THE CLERK:  Civil cause for fairness hearing,
2    Diaz against Residential Credit Solutions, Inc.
3           THE COURT:  Please state your appearances.
4           MR. KLEINMAN:  Good morning, your Honor.
5           Law offices of Kleinman LLC, by Abraham
6    Kleinman, for the plaintiff and the class.
7           THE COURT:  Good morning.
8           MR. HALPER:  Good morning, your Honor.
9           Jason Halper of Loweinstein Sandler LLP, for the
10   defendant.
11          THE COURT:  I didn't get your name, what is it.
12          MR. HALPER:  Jason Halper, H-A-L-P-E-R.
13          THE COURT:  Mr. Kleinman, you are interested in
14   me approving this settlement, right?
15          MR. KLEINMAN:  We are, your Honor.
16          THE COURT:  Why?
17          MR. KLEINMAN:  Your Honor, this is a case that
18   involved a Fair Debt Collections Practices Act, where the
19   plaintiff complained a violative collection letter.
20          With the assistance of your Honor we reached a
21   settlement several months ago, and subsequent to that
22   notice was sent out.
23          Notice was sent, your Honor, to 378 persons.
24   Only 350 of those were effective and reached their
25   destination.

3

1           Of those 350 notices that reached their

2      destination, ninety-one persons opted into the class.

3      Eighty-eight of those were timely, your Honor.  Three were

4      a bit late.  And at this juncture, if your Honor approves

5      the class, we would ask that the Court allows those three

6      that were late to be included in the class.

7           Should your Honor approve the class and approve

8      all 91 claim forms each member would receive $1,098.90.

9           THE COURT:  $1,098 and 98 cents?

10          MR. KLEINMAN:  90 cents.

11          Plaintiff believes it is a terrific result for

12     the class because in an ordinary situation the maximum

13     amount a consumer could receive under the Act would be

14     $1,000.

15          Here each class member, should the Court

16     approve, would be getting in excess of the statutory

17     amount listed in the Fair Debt Collections Practices Act.

18          Also at this time, your Honor, we would ask the

19     class representative receive an incentive fee totalling

20     $5,000 for her participation in the class.

21          THE COURT:  That is Ms. Diaz.  A male or female?

22          MR. KLEINMAN:  A female, at Altagracia Diaz.

23          THE COURT:  She is going to get 5,000?

24          MR. KLEINMAN:  Should the Court approve.

25          The reason we ask for the incentive fee is

4

1    Ms. Diaz was very involved in the class, and followed the

2    travel of the case, appeared for deposition, appeared for

3    a conference before Magistrate Judge Tomlinson, and has

4    been very effective and has followed the case in toto.

5         We would also ask, your Honor, that the Court

6    approve the attorney's fees in the amount of $98,330.

7         THE COURT:  That would be in addition to the

8    100,000?

9         MR. KLEINMAN:  It would, your Honor.

10        THE COURT:  And what is the hourly rate for

11   that?

12        MR. KLEINMAN:  My hourly rate was at $300, and

13   Ms. Hardy in Illinois, if I can have a moment to double

14   check, I believe that was at $325 per hour for Ms. Hardy

15   of the Edelman Combs firm in Illinois.

16        THE COURT:  And what about payments to the

17   paralegal?  What rate is being paid?

18        MR. KLEINMAN:  They pay their paralegal between

19   100 and $125 per hour, your Honor.

20        THE COURT:  Mr. Halper.

21        MR. HALPER:  Good morning, your Honor.

22        We have no objection to the settlement.

23        The only thing that I would point out to your

24   Honor is that in the proposed final order for approval of

25   the class settlement that the plaintiff filed on September

5

1    24th, in paragraph one it does mention that there were 88

2    class members who submitted a timely claim firm.

3              So, if we are going to approve --

4              THE COURT:  Which form are we talking about?

5              MR. HALPER:  I'm sorry, your Honor.

6              The proposed final order, document 62-4 on the

7    documents, which was filed by the plaintiff on September

8    24th.

9              MR. KLEINMAN:  If the Court would like, your

10   Honor, I can present a copy.

11             THE COURT:  I don't see it.  Can I see a copy?

12             MR. KLEINMAN:  Can I approach?

13             THE COURT:  Yes.

14             MR. KLEINMAN:  Thank you.

15             (Handed to the Court.)

16             THE COURT:  Just one minute.

17             I do have a copy.  It is Exhibit C, for Charley,

18   right?

19             MR. KLEINMAN:  Yes, your Honor.

20             THE COURT:  Okay.

21             You can return this.

22             MR. KLEINMAN:  May I approach?

23             THE COURT:  Yes.

24             So, you mentioned that the final order says 88

25   class members, when there actually are going to be 91 if I

6

1    approve the three late filings?

2              MR. HALPER:  Yes.

3              THE COURT:  I will approve the three late

4    filings, so it will be 91.

5              MR. HALPER:  Yes, your Honor.

6              We have no objection to that.

7              The only other thing I will mention, your Honor,

8    in paragraphs 6 and 17 of the proposed final order, it

9    states that the claims that are being released in this

10   case are being dismissed without prejudice.  We would just

11   ask the claims be dismissed with prejudice.

12             I have conferred with Mr. Kleinman about that,

13   and if you look at paragraph 21 --

14             THE COURT:  Any objection to the dismissal with

15   prejudice, Mr. Kleinman?

16             MR. KLEINMAN:  Your Honor, we would be happy to

17   dismiss it with prejudice after a period where an appeal

18   might be filed.

19             THE COURT:  Okay.

20             MR. HALPER:  And that is fine with me.

21             If we were to do that, I would ask that

22   paragraphs 6 and 17 be clarified.

23             THE COURT:  You will have to amend that.

24             MR. HALPER:  Yes.

25             THE COURT:  Anything else?

7

1          MR. HALPER:  Not from the defendant, your Honor.

2          MR. KLEINMAN:  If I may, your Honor?  I would

3    just like the Court to note that there have been no

4    objections or exclusions, and no one has appeared today.

5          However, I was informed that a Ms. Francine

6    Moore, who was a claim member, whose claim was title, who

7    the Court has since approved, was planning in attending

8    today.  And I do not see her in the Court.

9          I have a conference before Judge Feuerstein at

10   11:00 o'clock this morning, and if the Court allows I will

11   stay to address the concerns.

12         THE COURT:  What concerns does she have?

13         MR. KLEINMAN:  She just wanted to see the

14   proceedings, but nonetheless, if I can stay I will address

15   any concerns she may have.

16         THE COURT:  Anything else, counsel?

17         MR. KLEINMAN:  No, your Honor.

18         THE COURT:  This is one of the easiest class

19   actions fairness hearings, I have ever been in.  As a

20   matter of fact, it is probably the only one in which

21   there is no objection.  And the attorney's fees are fair.

22   That combination we rarely see.

23         We have a situation where under the statute the

24   damages would be a thousand dollars a person generally

25   with some exceptions, to the Fair Debt Collections

8

1    Practices Act violation.  And here the claimants are going

2    to receive $1,098.90.  So they are a little bit ahead of

3    the game.

4         I think that, therefore, the $100,000 to be

5    distributed to the 91 class members is fair.  Each class

6    member, as I said would get $1,098.90, which is a little

7    more than they would receive under the statute.

8         The $5,000 to the class representative is also

9    in my opinion fair.  She is the one who put the work in.

10        Also, the attorney's fees of $94,330 at rates of

11   300 and 325 dollars an hour is also fair.

12        The paralegal of 100 to 125, that is okay as

13   well.

14        So that, surprisingly, everything in this

15   agreement is fair.  And I'm going to approve it in its

16   entirety.

17        So, I want you to send me a final approval order

18   with the revisions that counsel for the defendant has

19   raised.  And that is paragraph 17 has to be revised.

20        What is the other revision?

21        MR. HALPER:  It was also paragraph six, your

22   Honor, it was to be without prejudice.

23        THE COURT:  Yes.

24        MR. HALPER:  And I believe --

25        THE COURT:  It is going to be with prejudice.

9

1          MR. HALPER:  And paragraph 1 references there

2     were 88 participating --

3          THE COURT:  It has to be 91?

4          MR. HALPER:  Yes.

5          THE COURT:  So you will have to make those

6     changes.

7          Send that to me with notice and I will sign it.

8          MR. KLEINMAN:  Thank you, your Honor.

9          THE COURT:  Okay.

10          This has been a very easy fairness hearing.

11          Thank you very much.

12          MR. KLEINMAN:  Thank you, your Honor.

13          Just for completeness of the record, those

14     members who do not cash their checks, those monies will go

15     to the Legal Aid Society, your Honor.

16          THE COURT:  Thank you.

17          This fairness hearing is concluded.

18          MR. HALPER:  Thank you, Judge.

19

20

21          (End of proceedings.)

22

23

24

25

# APPENDIX E

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| HARRIS N.A., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 1:09-cv-06661 |
| | ) | |
| ACADIA INVESTMENTS L.C., and LOREN W. | ) | Hon. Sidney I. Schenkier |
| HERSHEY, | ) | |
| | ) | |
| Defendants. | ) | |

DECLARATION OF DAVID T.B. AUDLEY

I, David T.B. Audley, pursuant to 28 U.S.C. § 1746, declare under penalty of perjury that the following is true and correct.

1.  The undersigned is an attorney for BMO Harris Bank N.A. ("*Harris*") in this case and is authorized to make this Declaration on behalf of Harris in support of Plaintiff's Motion for Attorneys' Fees and Costs Pursuant to Fed.R.Civ.P. 54(D) and Local Rule 54.3 (the "*Motion*"). This Declaration is made based upon my personal knowledge of the facts contained herein.

2.  I received my law degree from the University of Wisconsin in 1985. I am attorney licensed to practice in the State of Illinois. I am admitted to practice in the United States District Courts for the Northern District of Illinois, Southern District of Indiana, Eastern District of Wisconsin, Western District of Wisconsin and Massachusetts. I am also admitted to practice in the United States Courts of Appeals for the Seventh Circuit and Sixth Circuit.

3.  I am a partner in the firm of Chapman and Cutler LLP. I have had primary responsibility for the services rendered in this case on behalf of Harris.

4.    My current hourly rate is $745.00.  My hourly rates in 2009, 2010 and 2011 were $560, $595 and $650, respectively.  The hourly rates for the other attorneys and paralegals at Chapman and Cutler LLP who worked on this case are reflected in the table below.

| Attorney/Paralegal | 2009 Rate | 2010 Rate | 2011 Rate | 2012 Rate |
|---|---|---|---|---|
| Terry McIroy | 610.00 | 650.00 | 710.00 | 775.00 |
| Leo Gagion | N/A | 650.00 | 710.00 | 775.00 |
| Michael Benz | 560.00 | 595.00 | 650.00 | 715.00 |
| Steve Hastings | 560.00 | 595.00 | 650.00 | 715.00 |
| Dan Baker | 495.00 | 520.00 | 570.00 | 655.00 |
| Jim Sullivan | 470.00 | 500.00 | 530.00 | 575.00 |
| Laura Appleby | 285.00 | 335.00 | 390.00 | 455.00 |
| David Standa | 245.00 | 245.00 | 315.00 | 390.00 |
| Kaitlin Corkran | 245.00 | 290.00 | 365.00 | |
| John Giazzon | 200.00 | 210.00 | 225.00 | 235.00 |

5.    These are the actual rates which Chapman and Cutler LLP charges and has charged paying clients (including Harris) in other cases for the types of services rendered in this case. These hourly rates fall within, and do not exceed, the prevailing market hourly rates in Chicago (and in the case of Leo Gagion and Kaitlin Corkran, in New York, as reflected by Mr. Gagion's Declaration also submitted with this Motion) for similar services by lawyers and paralegals of reasonably comparable skill, experience and reputation.

6.    For services and disbursements incurred in connection with the representation of Harris in this case, Harris has paid or become obligated to pay attorneys' fees and costs to

2

Chapman and Cutler LLP in the total amount of $613,777.25, comprised of $19,747.00 in fees and $14.88 in costs as reflected on the detailed billing records and time entries attached as Exhibits 9, 10 and 11 to the Motion, $499,192.00 in fees and $72,047.83 in costs as reflected on the detailed billing records and time entries attached as Exhibits 12, 13 and 14 to the Motion, and $22,299.50 in fees and $476.04 in costs for Harris' local Virginia counsel as reflected on the detailed billing records and time entries as attached as Exhibits 15, 16 and 17 to the Motion.

7. The amount of fees requested in the Motion, and the hours expended by Chapman and Cutler LLP in its representation of Harris in this case, are reasonable. The referenced Exhibits to the Motion relate to discrete categories of fees and costs incurred by Harris as a result of Acadia's default under the Credit Agreement, and thereafter the enforcement of Harris' rights under the Credit Agreement, $15.5 Million Note and Hershey's $15.5 Million Guaranty, including post-default/pre-litigation efforts to resolve matters and thereafter the litigation itself, as well as post-judgment collection activities occurring in Chicago, Illinois, Fairfax County, Virginia, and New York City.

8. Specifically, the Chapman fees and costs identified at paragraph 11 of the Motion as "Matter No. 1679539," totaling $19,747.00 in fees, and $14.88 in costs, were incurred as a result of default under the Credit Agreement starting in February 2009, which resulted in, *inter alia*, the negotiation, drafting and execution of the Forbearance and Second Amendment between Harris, Acadia and Hershey, and before any litigation ensued in the Fall of 2009. The separate Chapman fees and costs identified at paragraph 11 of the Motion as "Matter No. 1966589", totaling $499,192.00 in fees, and $72,047.83 in costs, were incurred by Harris from August 2009 through February 1, 2012, and relate to activity after default occurred under the Forbearance and Second Amendment, which necessitated the issuance of a formal demand for payment and the subsequent litigation phase of the matter, including all post-judgment collection efforts. Those

3

post-judgment collection efforts, alone, include: (i) the utilization of a partner in Chapman's New York City Office, Leo Gagion, relating to domestication of the Judgment and enforcement efforts seeking to obtain over $1.5 million in distributions otherwise payable to Hershey, currently being held by a private equity fund, DLJ Private Equity Partners Fund II, L.P. (the "*DLJ Fund*"), which has now been the subject of objections filed by Hershey and his New York lawyers, as well as (ii) the utilization of a Virginia firm, McGuireWoods, to domesticate the Judgment in Fairfax County, Virginia (where Hershey resides), and thereafter to conduct post-judgment citation examinations of Hershey and other collection efforts.

9.   Detailed reports of the fees and costs incurred (redacted as necessary to protect attorney client privilege) are attached hereto as Exhibits 9 through 17, as referenced in the tables above. These reports provide the name of the attorney or paralegal providing the services, a description of the services provided, the date(s) the services were provided, the amount of time expended for such services, and the charge for such services based upon the normal and customary hourly rate charged by each service provider. Costs are also broken down in these reports by the date incurred, line item description, and the amount(s) charged for each expense.

10.   As to my direct participation in this credit and the litigation itself, in the Fall of 2009 default occurred under the Forbearance and Second Amendment, which was not cured by Acadia, necessitating pre-filing loan document reviews, meetings with Harris, and the preparation and issuance of default and demand notices, all as reflected in the detailed billing and time entries attached as Exhibit 12.

11.   After multiple fruitless negotiations with Hershey were attempted to reach a non-litigation resolution, the lawsuit was prepared and filed in October, 2009, and thereafter prosecuted through summary judgment, which was opposed by Acadia and Hershey throughout, on multiple grounds.

12.  Discovery was initiated by Acadia and Hershey, including document production and the depositions of multiple Harris employees. In addition, during the litigation, Harris sought to enforce its rights under the loan documents in seeking to obtain payment from the various private equity funds in which Acadia held an interest, and which had been pledged to Harris as collateral. These private equity funds, in turn, initiated extensive communications with Harris as to Acadia's capital call defaults thereunder, with multiple and lengthy discussions occurring with these private equity funds to try and accomplish a sale of these funds, which necessitated Acadia and Hershey's consent, but which was never obtained.

13.  Continual subsequent attempts at settlement were also made by Harris to try and avoid further litigation costs. Settlement, however, could not be reached, requiring the preparation and filing of the summary judgment motion, statements and counter statements of material fact, and legal memoranda submitted by all of the parties. After summary judgment was granted, Hershey would not initially agree to resolve matters, including a relatively small interest rate issue that required extensive negotiations with counsel to Acadia and Hershey, ultimately resulting in a resolution of the issue per stipulation (but which Hershey subsequently, but unsuccessfully, attempted to withdraw from).

14.  After the Judgment was entered, post-judgment collection activities were then initiated in this Court via the issuance of multiple third party citations, as well as the registration of the Judgment in Fairfax County, Virginia, and New York state court located in New York City. The Declarations of Leo Gagion of Chapman's New York office (Exhibit 3 the Motion), and Doug Foley of McGuireWoods' Norfolk, Virginia office (Exhibit 4 the Motion), describe these post-judgment activities.

15.  In addition, Chapman has represented Harris in Hershey's efforts before this Court to enjoin or stay enforcement of the Judgment, Hershey's subsequent motion to quash third party

citations issued by the clerk of this Court, as well as Hershey's appellate efforts in the Seventh Circuit, including settlement conferences before the Seventh Circuit settlement panel. Chapman has also represented Harris against Hershey's more recent attempts to utilize the Acadia bankruptcy to enjoin further collection efforts by Harris.

16. All of these efforts are as set forth in the detailed billing and time entries attached to the Motion as Exhibits 12, 13 and 14.

_____
David T.B. Audley

6

# EXHIBIT 2

Document2

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| HARRIS N.A., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 1:09-cv-06661 |
| | ) | |
| ACADIA INVESTMENTS L.C., and LOREN W. | ) | Hon. Sidney I. Schenkier |
| HERSHEY, | ) | |
| | ) | |
| Defendants. | ) | |

## DECLARATION OF DANIEL W. BAKER

I, Daniel W. Baker, pursuant to 28 U.S.C. § 1746, declare under penalty of perjury that the following is true and correct.

1.    The undersigned is an attorney for BMO Harris Bank N.A. ("*Harris*") in this case and is authorized to make this Declaration on behalf of Harris in support of Plaintiff's Motion for Attorneys' Fees and Costs Pursuant to Fed.R.Civ.P. 54(D) and Local Rule 54.3 (the *"Motion"*). This Declaration is made based upon my personal knowledge of the facts contained herein.

2.    I received my law degree from the University of Chicago in 1995. I am an attorney licensed to practice in the State of Illinois.

3.    I am a partner in the firm of Chapman and Cutler LLP. I had primary responsibility for the services rendered in this case on behalf of Harris prior to the matter being transferred to our litigation department, where David Audley, a partner in our litigation group, assumed primary responsibility.

4.    My hourly rates in 2009, 2010 and 2011 were $495, $520 and $570, respectively.

5.    These are the actual rates which Chapman and Cutler LLP charges and has charged paying clients (including Harris) in other cases for the types of services I rendered to Harris in

HersheyBakerDec.doc
1966589

this matter. These hourly rates fall within, and do not exceed, the prevailing market hourly rates in Chicago, Illinois for similar services by lawyers and paralegals of reasonably comparable skill, experience and reputation.

      6.   For services and disbursements incurred in connection with my representation of Harris in this case, Harris has paid or become obligated to pay attorneys' fees and costs to Chapman and Cutler LLP in the total amount of $19,761.85. This figure is comprised of $19,747.00 in fees and $14.88 in costs and expenses.

      7.   Detailed reports of these fees and expenses incurred to date are attached to the Motion as Exhibits 9, 10 and 11.

      8.   The amount of fees requested in the Motion, and the hours expended by myself and others under my supervision at Chapman and Cutler LLP in its representation of Harris in this matter, are reasonable. I was the principal attorney representing Harris in the preparation of the notice of acceleration, as well as the negotiation, preparation and execution of the Forbearance Agreement and Second Amendment to Credit Agreement ("*Forbearance and Second Amendment*"), after default occurred under the Credit Agreement, as well as other matters incident to the credit, including conferences with Harris and the review of letters to private equity funds, all of which are described in the time entries attached to the Motion as Exhibits 9, 10 and 11.

Daniel W. Baker

2

# EXHIBIT 3

Document2

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| HARRIS N.A., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 1:09-cv-06661 |
| | ) | |
| ACADIA INVESTMENTS L.C., and LOREN W. | ) | Hon. Sidney I. Schenkier |
| HERSHEY, | ) | |
| | ) | |
| Defendants. | ) | |

DECLARATION OF LEO V. GAGION

I, Leo V. Gagion, pursuant to 28 U.S.C. § 1746, declare under penalty of perjury that the following is true and correct.

1.  The undersigned is an attorney for BMO Harris Bank N.A. ("*Harris*") in this case and is authorized to make this Declaration on behalf of Harris in support of Plaintiff's Motion for Attorneys' Fees and Costs Pursuant to Fed.R.Civ.P. 54(D) and Local Rule 54.3 (the *"Motion"*). This Declaration is made based upon my personal knowledge of the facts contained herein.

2.  I received my law degree from the Fordham University School of Law in 1984. I am an attorney licensed to practice in the State of New York. I am admitted to practice in the United States District Courts for the Eastern District of New York, Southern District of New York and Northern District of New York. I am also admitted to practice in the United States Courts of Appeals for the Federal Circuit, Second Circuit and Tenth Circuit.

3.  I am a partner in the General Litigation Department of Chapman and Cutler LLP, headquartered in Chapman's New York City office. I have had primary responsibility for the post-judgment collection legal services rendered in this case on behalf of Harris in New York State Supreme Court, New York County.

HersheyGagionDecl.doc
1966589

4.   My current hourly rate is $775.00. My hourly rate in 2011 was $710.00.

5.   These are the actual rates which Chapman and Cutler LLP charges and has charged paying clients (including Harris) in other cases for the types of services rendered in this case. These hourly rates fall within, and do not exceed, the prevailing market hourly rates in New York City for similar services by lawyers and paralegals of reasonably comparable skill, experience and reputation.

6.   For the 168 total hours for legal services and disbursements incurred from September 9, 2011 to February 1, 2012 in connection with my representation of Harris in this case to prosecute post-judgment collection activities in New York state court, Harris has paid or become obligated to pay attorneys' fees and costs to Chapman and Cutler LLP in the total amount of $123,245.00.

7.   Detailed reports of these fees and expenses incurred to date for my representation of Harris in this matter are attached to the Motion as part of Exhibits 12 (one entry on September 7, 2011) and Exhibits 13 and 14.

8.   The amount of fees requested in the Motion, and the hours expended by myself on behalf of Harris in this matter, are reasonable. From September 9, 2011 to February 1, 2012, I have devoted my time and attention to a number of different matters in connection with enforcing the Judgment obtained in this Court. Specifically, I devoted time and attention to the registration of the Judgment in this case with the New York State Supreme Court in New York County under Article 54 of the NY CPLR. My work included researching the process for such registration both in New York federal and state court, and the preparation of the judgment documents for filing with the New York State Supreme Court, including the preparation of a substantive affidavit supporting the filing of the Judgment. In addition, I devoted substantial time to commencing and prosecuting the matter of *BMO Harris Bank N.A. v. DLJ Private Equity*

*Partners Fund II*, Index No. 112067/2011 (N.Y. State Supreme, N.Y. Co.), a turnover action, pursuant to NY CPLR 5225(b) & 5227, that Harris commenced in October 2011, for the purpose of securing approximately $1.5 million in distributions that the DLJ Private Equity Fund owes to Loren W. Hershey, the Judgment Debtor in this matter, but had not yet paid to him. My work on this matter was extensive and included researching and drafting the Verified Petition, negotiating with the DLJ Private Equity Fund over the terms of the turnover, preparation of a proposed judgment for the turnover proceeding, and defense of an extensive motion of the Judgment Debtor, brought by Order to Show Cause, to intervene and vacate the New York Court's Order granting the Verified Petition.  The defense of the Judgment Debtor's Motion consisted of substantial briefing of the issues to the Court (including an extensive Memorandum of Law and two substantive Affidavits) and preparation for and attending the hearing on the motion held on January 25, 2012.

_____
Leo V. Gagion

3

# EXHIBIT 4

Document2

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| BMO HARRIS N.A., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 1:09-cv-06661 |
| | ) | |
| ACADIA INVESTMENTS L.C., and LOREN W. | ) | Hon. Sidney I. Schenkier |
| HERSHEY, | ) | |
| | ) | |
| Defendants. | ) | |

## DECLARATION OF DOUGLAS M. FOLEY

I, Douglas M. Foley, pursuant to 28 U.S.C. § 1746, declare under penalty of perjury that the following is true and correct.

1.    The undersigned is an attorney for BMO Harris Bank N.A. ("*Harris*") in this case and is authorized to make this Declaration on behalf of Harris in support of Plaintiff's Motion for Attorneys' Fees and Costs Pursuant to Fed.R.Civ.P. 54(D) and Local Rule 54.3 (the "*Motion*"). This Declaration is made based upon my personal knowledge of the facts contained herein.

2.    I received my law degree from the George Mason University School of Law in 1992. I am an attorney licensed to practice in the Commonwealth of Virginia in all state and federal courts. I am admitted to practice in the State of North Carolina, the State of New York and the District of Columbia. I am also admitted to practice in the United States Courts of Appeals for the Fourth Circuit.

3.    I am a partner in the firm of McGuireWoods LLP. I have had primary responsibility for the services rendered in this case on behalf of Harris.

Case: 1:09-cv-06661 Document #: 163-2 Filed: 03/02/12 Page 3 of 19 PageID #:1053

4.    My current hourly rate is $700.00.  My hourly rate in 2011 was $650.00.  The hourly rates for the other attorneys and paralegals at McGuireWoods LLP who worked on this case are reflected in the table below.

| Attorney/Paralegal | 2011 Rate | 2012 Rate |
|---|---|---|
| Cullen Ann Drescher | $350.00 | n/a |
| Connie Ferrell | $260.00 | $270.00 |
| Linda J. Neilson | $220.00 | $240.00 |
| Kenneth M. Misken | $450.00 | n/a |
| Erin Q. Ashcroft | $365.00 | $400.00 |

5.    These are the actual rates which McGuireWoods LLP charges and has charged paying clients (including Harris) in other cases for the types of services rendered in this case. These hourly rates fall within, and do not exceed, the prevailing market hourly rates in Virginia for similar services by lawyers and paralegals of reasonably comparable skill, experience and reputation.

6.    For services and disbursements incurred in connection with the representation of Harris in this case Harris has paid or become obligated to pay attorneys' fees and costs to McGuireWoods LLP in the total amount of $22,775.54.  This figure is comprised of $22,299.50 in fees and $476.04 in costs and expenses.

7.    Detailed reports of the fees and expenses incurred to date is attached to the Motion as Exhibits 15, 16 and 17) .

Case: 1:09-cv-06661 Document #: 163-2 Filed: 03/02/12 Page 4 of 19 PageID #:1054

8.   The amount of fees requested in the Motion, and the hours expended by McGuireWoods LLP in its representation of Harris in this case, are reasonable.

Douglas M. Foley

\37415755.1

# APPENDIX F

# LAFFEY MATRIX – 2014-2015

Years (Rate for June 1 – May 31, based on prior year's CPI-U)

| Experience | 14-15 |
|---|---|
| 20+ years | 520 |
| 11-19 years | 460 |
| 8-10 years | 370 |
| 4-7 years | 300 |
| 1-3 years | 255 |
| Paralegals & Law Clerks | 150 |

*Explanatory Notes:*

1. This matrix of hourly rates for attorneys of varying experience levels and paralegals/law clerks has been prepared by the Civil Division of the United States Attorney's Office for the District of Columbia. The matrix is intended to be used in cases in which a "fee-shifting" statute permits the prevailing party to recover "reasonable" attorney's fees. *See, e.g.,* 42 U.S.C. § 2000e-5(k) (Title VII of the 1964 Civil Rights Act); 5 U.S.C. § 552(a)(4)(E) (Freedom of Information Act); 28 U.S.C. § 2412(b) (Equal Access to Justice Act). The matrix does **not** apply to cases in which the hourly rate is limited by statute. *See* 28 U.S.C. § 2412(d).

2. This matrix is based on the hourly rates allowed in *Laffey v. Northwest Airlines, Inc.*, 572 F. Supp. 354 (D.D.C. 1983), *aff'd in part, rev'd in part on other grounds*, 746 F.2d 4 (D.C. Cir. 1984), *cert. denied*, 472 U.S. 1021 (1985). It is commonly referred to by attorneys and federal judges in the District of Columbia as the "Laffey Matrix" or the "United States Attorney's Office Matrix." The various "brackets" in the column headed "Experience" refer to the years following the attorney's graduation from law school, and are intended to correspond to "junior associates" (1-3 years after law school graduation), "senior associates" (4-7 years), "experienced federal court litigators" (8-10 and 11-19 years), and "very experienced federal court litigators" (20 years or more). Thus, the "1-3 years" bracket is generally applicable to attorneys in their first, second, and third years after graduation from law school, and the "4-7 years" bracket generally becomes applicable on the third anniversary of the attorney's graduation (*i.e.*, at the beginning of the fourth year following law school). *See Laffey*, 572 F. Supp. at 371; *but cf. EPIC v. Dep't of Homeland Sec.*, No. 11-2261, ___ F. Supp. 2d ___, 2013 WL 6047561, *6 -*7 (D.D.C. Nov. 15, 2013) (attorney not admitted to bar compensated at "Paralegals & Law Clerks" rate); *EPIC v. Dep't of Homeland Sec.*, 982 F. Supp.2d 56, 60-61 (D.D.C. 2013) (same).

3. The hourly rates approved in *Laffey* were for work done principally in 1981-82. The matrix begins with those rates. *See Laffey*, 572 F. Supp. at 371 (attorney rates) & 386 n.74 (paralegal and law clerk rate). The rates for subsequent yearly periods were determined by adding the change in the cost of living for the Washington, D.C. area to the applicable rate for the prior year, and then rounding to the nearest multiple of $5 (up if within $3 of the next multiple of $5). The result is subject to adjustment if appropriate to ensure that the relationship between the highest rate and the lower rates remains reasonably constant. Changes in the cost of living are measured   by the Consumer Price Index for All Urban Consumers (CPI-U) for Washington-Baltimore, DC-MD-VA-WV, as announced by the Bureau of Labor Statistics for May of each year.

4. Use of an updated Laffey Matrix was implicitly endorsed by the Court of Appeals in *Save Our Cumberland Mountains v. Hodel*, 857 F.2d 1516, 1525 (D.C. Cir. 1988) (en banc). The Court of Appeals subsequently stated that parties may rely on the updated *Laffey* Matrix prepared by the United States Attorney's Office as evidence of

prevailing market rates for litigation counsel in the Washington, D.C. area. *See Covington v. District of Columbia*, 57 F.3d 1101, 1105 & n.14, 1109 (D.C. Cir. 1995), *cert. denied*, 516 U.S. 1115 (1996). Most lower federal courts in the District of Columbia have relied on the United States Attorney's Office Matrix, rather than the so-called "Updated Laffey Matrix," as the "benchmark for reasonable fees" in this jurisdiction. *Miller v. Holzmann*, 575 F. Supp. 2d 2, 18 n.29 (D.D.C. 2008) (quoting *Pleasants v. Ridge*, 424 F. Supp. 2d 67, 71 n.2 (D.D.C. 2006)); *see, e.g., Berke v. Bureau of Prisons*, 942 F. Supp. 2d 71, 77 (D.D.C. 2013); *Heller v. District of Columbia*, 832 F. Supp. 2d 32, 40-49 (D.D.C. 2011); *American Lands Alliance v. Norton*, 525 F. Supp. 2d 135, 150 (D.D.C. 2007). *But see Salazar v. District of Columbia*, 123 F. Supp. 2d 8, 14-15 (D.D.C. 2000). The United States Attorney's Office does not use the "Updated Laffey Matrix" to determine whether fee awards under fee shifting statutes are reasonable.

# APPENDIX G

Edelman, Combs, Latturner & Goodwin LLC
20 S. Clark Street
Suite 1500
Chicago, IL 60603-3403

1242 50th Street                                                                  Date:   2/22/2017
Brooklyn, NY 11219-3540

Regarding:  NATIONWIDE CREDIT INC V KAFF, ABRAHAM
Invoice No:   00064

### *Services Rendered*

| Date | Staff | Description | Hours | Rate | Charges |
|------|-------|-------------|-------|------|---------|
| 2/26/2014 | DAE | conf with TNH re file | 0.20 | $600.00 | $120.00 |
| 2/26/2014 | TNH | review file | 0.40 | $325.00 | $130.00 |
| 2/26/2014 | TNH | conf DAE re file | 0.20 | $325.00 | $65.00 |
| 2/27/2014 | DAE | Conf TNH re class cert not on file | 0.10 | $600.00 | $60.00 |
| 2/27/2014 | SC | Looked at file on ECF, saved docs to file | 0.30 | $125.00 | $37.50 |
| 2/27/2014 | SC | Emailed paralegals re: certs of good standing for pro hac mtns | 0.10 | $125.00 | $12.50 |
| 2/27/2014 | SC | Drafted letter to supreme court of IL for cert of good standing CMC | 0.20 | $125.00 | $25.00 |
| 2/27/2014 | SC | Drafted pro hac mtns for DAE and CMC | 0.40 | $125.00 | $50.00 |
| 2/27/2014 | TNH | conf DAE re class cert not on file | 0.10 | $325.00 | $32.50 |
| 2/28/2014 | SC | Drafted class docs | 1.10 | $125.00 | $137.50 |
| 3/03/2014 | SC | Edited class docs | 0.40 | $125.00 | $50.00 |
| 3/04/2014 | DAE | Conf TNH re case | 0.20 | $600.00 | $120.00 |
| 3/04/2014 | TNH | conf DAE re case | 0.20 | $325.00 | $65.00 |
| 3/05/2014 | DAE | e-mail to TNH re Rule 26f report and stip | 0.10 | $600.00 | $60.00 |

Edelman, Combs, Latturner & Goodwin LLC

Page No.:    2

| | | | | | |
|---|---|---|---|---|---|
| 3/05/2014 | DAE | Conf TNH re Rule 26f report and staying discovery pending ruiling on MTD | 0.20 | $600.00 | $120.00 |
| 3/05/2014 | DAE | conf TNH re changes to amemded complaint and procedure for filing | 0.30 | $600.00 | $180.00 |
| 3/05/2014 | SC | Drafted stip re: mooting class | 0.30 | $125.00 | $37.50 |
| 3/05/2014 | SC | Edited appearance, mtn pro hac | 0.30 | $125.00 | $37.50 |
| 3/05/2014 | SC | Filed TNH appearance, filed dae pro hac mtn | 0.30 | $125.00 | $37.50 |
| 3/05/2014 | SC | Emailed stip, revised 26f report to co-counsel | 0.20 | $125.00 | $25.00 |
| 3/05/2014 | TNH | e-mail from DAE re Rule 26f report and stip | 0.10 | $325.00 | $32.50 |
| 3/05/2014 | TNH | conf DAE re Rule 26f report and staying discovery pending ruling on MTD | 0.20 | $325.00 | $65.00 |
| 3/05/2014 | TNH | e-mail from co counsel re status of Rule 26f report | 0.10 | $325.00 | $32.50 |
| 3/05/2014 | TNH | e-mail to MM re interest principal breakdown | 0.10 | $325.00 | $32.50 |
| 3/05/2014 | TNH | revise class def | 0.10 | $325.00 | $32.50 |
| 3/05/2014 | TNH | conf DAE re changes to amended complaint and procedure for filing | 0.30 | $325.00 | $97.50 |
| 3/06/2014 | DAE | Conf TNH re revisions to complaint | 0.30 | $600.00 | $180.00 |
| 3/06/2014 | DAE | Conf TNH re filing premotion conference letter | 0.20 | $600.00 | $120.00 |
| 3/06/2014 | DAE | Conf TNH re revisions to Rule 26f report | 0.20 | $600.00 | $120.00 |
| 3/06/2014 | SC | Looked at docket, court orders for 26f report due date | 0.20 | $125.00 | $25.00 |
| 3/06/2014 | TNH | Conf MRT re: class cert motion/amending complaint | 0.20 | $325.00 | $65.00 |
| 3/06/2014 | TNH | CONF DAE RE REVISIONS TO RULE 26F REPORT | 0.20 | $325.00 | $65.00 |

Edelman, Combs, Latturner & Goodwin LLC
Page No.:     3

| 3/06/2014 | TNH | EDIT AND REVISE PREMOTION CONFERENCE LETTER | 0.30 | $325.00 | $97.50 |
|---|---|---|---|---|---|
| 3/06/2014 | TNH | E-MAIL TO CO RE PREMOTION CONF LETTER AND RULE 26F REPORT | 0.30 | $325.00 | $97.50 |
| 3/06/2014 | TNH | EDIT AND REVISE COMPLAINT | 1.00 | $325.00 | $325.00 |
| 3/06/2014 | TNH | CONF DAE RE REVISIONS TO COMPLAINT | 0.30 | $325.00 | $97.50 |
| 3/06/2014 | TNH | E-MAIL FROM OC RE REVISIONS TO RULE 26F REPORT | 0.20 | $325.00 | $65.00 |
| 3/06/2014 | TNH | CONF MRT RE FILING PRE MOTION CONFERENCE LETTER | 0.30 | $325.00 | $97.50 |
| 3/06/2014 | TNH | CONF DAE RE FILING PREMOTION CONFERENCE LETTER | 0.20 | $325.00 | $65.00 |
| 3/06/2014 | TNH | EDIT AND REVISE RULE 26F REPORT | 0.40 | $325.00 | $130.00 |
| 3/07/2014 | SC | saved filed docs to TM | 0.20 | $125.00 | $25.00 |
| 3/11/2014 | SC | Edited cmc pro hac mtn | 0.20 | $125.00 | $25.00 |
| 3/11/2014 | SC | Filed DAE appearance | 0.20 | $125.00 | $25.00 |
| 3/14/2014 | SC | pcs from clerk re: payment refund for pro hac vice | 0.20 | $125.00 | $25.00 |
| 3/14/2014 | SC | emailed clerk w/info for refund | 0.20 | $125.00 | $25.00 |
| 3/19/2014 | DAE | Conf TNH re bundle rule-serve class mtn | 0.10 | $600.00 | $60.00 |
| 3/19/2014 | DAE | e-mails to and from TNH and SC re filing mtn for class certification | 0.20 | $600.00 | $120.00 |
| 3/19/2014 | SC | Looked at judge's rules re: filing mtns | 0.30 | $125.00 | $37.50 |
| 3/19/2014 | SC | e-mails to and from TNH and DAE re filing mtn for class certification | 0.20 | $125.00 | $25.00 |
| 3/19/2014 | TNH | order from court denying pre motion conference request re class certification | 0.10 | $325.00 | $32.50 |
| 3/19/2014 | TNH | e-mails to and from DAE and SC re filing mtn for class certification | 0.20 | $325.00 | $65.00 |

Edelman, Combs, Latturner & Goodwin LLC

Page No.:    4

| | | | | | |
|---|---|---|---|---|---|
| 3/19/2014 | TNH | review mtn for class certification | 0.30 | $325.00 | $97.50 |
| 3/19/2014 | TNH | conf DAE re bundle rule- serve class mtn | 0.10 | $325.00 | $32.50 |
| 3/20/2014 | CMC | class mot | 1.30 | $600.00 | $780.00 |
| 3/20/2014 | CMC | Conf TNH and DAE re revisions to class mtn | 0.20 | $600.00 | $120.00 |
| 3/20/2014 | CMC | work on class papers | 0.50 | $600.00 | $300.00 |
| 3/20/2014 | DAE | Conf TNH and CMC re revisions to class mtn | 0.20 | $600.00 | $120.00 |
| 3/20/2014 | SC | Conf TNH re DAE's revisions | 0.10 | $125.00 | $12.50 |
| 3/20/2014 | TNH | E-MAIL TO COCOUNSEL RE CLASS MTN | 0.10 | $325.00 | $32.50 |
| 3/20/2014 | TNH | CONF SC RE DAE'S REVISIONS | 0.10 | $325.00 | $32.50 |
| 3/20/2014 | TNH | CONF DAE AND CMC RE REVISIONS TO CLASS MTN | 0.20 | $325.00 | $65.00 |
| 3/21/2014 | SC | Prepared mtn class cert for filing, updated tables of authorities, drafted cover letter, notice, sent to oc via email and priority mail | 1.60 | $125.00 | $200.00 |
| 3/21/2014 | SC | Filed CMC appearance | 0.20 | $125.00 | $25.00 |
| 3/21/2014 | SC | Conf TNH re revisions to the letter to oc | 0.20 | $125.00 | $25.00 |
| 3/21/2014 | TNH | edit and revise letter to oc re class mtn | 0.20 | $325.00 | $65.00 |
| 3/21/2014 | TNH | conf SC re revisions to letter to oc | 0.20 | $325.00 | $65.00 |
| 3/24/2014 | SC | Emailed resp deadline to dae | 0.10 | $125.00 | $12.50 |
| 3/28/2014 | SC | Made binder | 0.90 | $125.00 | $112.50 |
| 4/01/2014 | CMC | Conf TNH and DAE re case merits | 0.30 | $600.00 | $180.00 |
| 4/01/2014 | DAE | Conf TNH and CMC re case merits | 0.30 | $600.00 | $180.00 |
| 4/01/2014 | DAE | note to TNH on def's letter | 0.10 | $600.00 | $60.00 |

Edelman, Combs, Latturner & Goodwin LLC

Page No.:     5

| 4/01/2014 | TNH | note from DAE on def's letter | 0.10 | $325.00 | $32.50 |
| 4/01/2014 | TNH | conf DAE and CMC re case merits | 0.30 | $325.00 | $97.50 |
| 4/03/2014 | DAE | work on response to mtd | 5.00 | $600.00 | $3,000.00 |
| 4/06/2014 | DAE | work on response to mtd | 3.00 | $600.00 | $1,800.00 |
| 4/07/2014 | CMC | work on res to mtd | 1.00 | $600.00 | $600.00 |
| 4/25/2014 | DAE | revise mtd response | 1.00 | $600.00 | $600.00 |
| 4/28/2014 | SC | Processed cover letter to OC, response to mtd | 0.10 | $125.00 | $12.50 |
| 5/19/2014 | SC | made redwall of DAE research | 0.10 | $125.00 | $12.50 |
| 5/19/2014 | SC | Processed notice of mtd | 0.10 | $125.00 | $12.50 |
| 11/03/2014 | NS | drafting and filing letter citing additional authority | 1.10 | $125.00 | $137.50 |
| 11/03/2014 | TNH | LETTER CITING ADDITIONAL AUTHORITY | 0.50 | $325.00 | $162.50 |
| 11/10/2014 | NS | filing notice of change of address | 0.30 | $125.00 | $37.50 |
| 4/28/2015 | NS | research re deadlines following ruling on MTD | 0.50 | $125.00 | $62.50 |
| 4/28/2015 | TNH | e-mails re status hearing on May 6, 2015 | 0.30 | $325.00 | $97.50 |
| 4/28/2015 | TNH | e-mails to and from co counsel re Rule 26a1 disclosures | 0.40 | $325.00 | $130.00 |
| 5/01/2015 | NS | drafting and filing mtn for leave to appear telephonically | 0.50 | $125.00 | $62.50 |
| 5/04/2015 | DAE | Conf TNH re case & conference with court | 0.30 | $700.00 | $210.00 |
| 5/04/2015 | NS | looking up emails for counsel of related cases | 0.30 | $125.00 | $37.50 |
| 5/04/2015 | TNH | conf call with Laura and Joe re case and status conference and scheduling order/ settlement | 0.50 | $325.00 | $162.50 |

Edelman, Combs, Latturner & Goodwin LLC
Page No.:     6

| | | | | | |
|---|---|---|---|---|---|
| 5/04/2015 | TNH | e-mails to and from plaintiffs counsel re debriefing from conference | 0.40 | $325.00 | $130.00 |
| 5/04/2015 | TNH | conf DAE re case & conference with Court | 0.30 | $325.00 | $97.50 |
| 5/04/2015 | TNH | e-mail to and from oc re case | 0.20 | $325.00 | $65.00 |
| 5/04/2015 | TNH | e-mails to and from counsel on the case re status conference | 0.30 | $325.00 | $97.50 |
| 5/05/2015 | NS | drafting letter in Kaff re status conf | 0.10 | $125.00 | $12.50 |
| 5/05/2015 | TNH | conf Igor re status conference tomorrow | 0.40 | $325.00 | $130.00 |
| 5/06/2015 | TNH | conf Igor re case | 0.20 | $325.00 | $65.00 |
| 5/06/2015 | TNH | review file and prepare for court conference | 0.60 | $325.00 | $195.00 |
| 5/06/2015 | TNH | Status conference in NY Room 13A @ 12:00 p.m. EST/11:00 a.m. CST | 1.00 | $325.00 | $325.00 |
| 5/13/2015 | NS | logging d's answer, 26 a 1s, court orders, mtn for leave to appear telephonically | 0.30 | $125.00 | $37.50 |
| 8/04/2015 | TNH | edit and revise settlement demand | 0.40 | $325.00 | $130.00 |
| 8/04/2015 | TNH | e-mail draft demand to co counsel | 0.20 | $325.00 | $65.00 |
| 8/05/2015 | TNH | EDIT AND REVISE SETTLEMENT DEMAND | 0.30 | $325.00 | $97.50 |
| 8/05/2015 | TNH | CONF JOE NOGA | 0.30 | $325.00 | $97.50 |
| 8/05/2015 | TNH | E-MAIL RE CONF WITH NOGA | 0.30 | $325.00 | $97.50 |
| 8/06/2015 | TNH | EDIT AND REVISE SETTLEMENT CONFIRMATION LETTER | 0.30 | $325.00 | $97.50 |
| 8/07/2015 | DAE | Conf with TNH re amending complaint | 0.20 | $700.00 | $140.00 |
| 8/07/2015 | TNH | conf DAE re amending complaint | 0.20 | $325.00 | $65.00 |
| 8/07/2015 | TNH | conf OC 2x re conference call with Court- protective order and amended complaint | 0.40 | $325.00 | $130.00 |

Edelman, Combs, Latturner & Goodwin LLC

Page No.:     7

| 8/25/2015 | TNH | e-mail to and from Adam Fishbein | 0.20 | $325.00 | $65.00 |
| 8/27/2015 | KO | Editing amended complaint | 0.50 | $125.00 | $62.50 |
| 8/27/2015 | KO | Conf TNH re revisions to amended complaint | 0.20 | $125.00 | $25.00 |
| 8/27/2015 | KO | e-mails from TNH re amended complaint | 0.30 | $125.00 | $37.50 |
| 8/27/2015 | TNH | e-mails to and from co counsel and KO re amended complaint | 0.30 | $325.00 | $97.50 |
| 8/27/2015 | TNH | conf KO re revisions to amended complaint | 0.20 | $325.00 | $65.00 |
| 8/28/2015 | KO | Filing amended complaint | 0.50 | $125.00 | $62.50 |
| 9/10/2015 | KO | Class definition edit to Amended Complaint | 0.10 | $125.00 | $12.50 |
| 9/15/2015 | KO | Filed Corrected First Amended Complaint, saved to TM | 0.20 | $125.00 | $25.00 |
| 9/15/2015 | TNH | e-mails to and from oc re amended complaint | 0.20 | $325.00 | $65.00 |
| 9/15/2015 | TNH | edit and revise class cmplnt | 0.10 | $325.00 | $32.50 |
| 10/15/2015 | TNH | edit and revise class settlement docs | 2.70 | $325.00 | $877.50 |
| 11/04/2015 | KO | Filed letter motion to adjourn conference | 0.20 | $125.00 | $25.00 |
| 11/04/2015 | KO | Drafted letter motion to adjourn conference | 0.40 | $125.00 | $50.00 |
| 11/04/2015 | TNH | conf oc re adjourning conference and status of s/a | 0.30 | $325.00 | $97.50 |
| 11/04/2015 | TNH | e-mail to KO re requesting adjournment of conference | 0.30 | $325.00 | $97.50 |
| 11/04/2015 | TNH | review and revise letter to court re adjournment | 0.20 | $325.00 | $65.00 |
| 11/05/2015 | KO | Saved Letter Motion requesting to adjourn nov. 9 Conf to TM | 0.10 | $125.00 | $12.50 |

Edelman, Combs, Latturner & Goodwin LLC

Page No.:    8

| 11/11/2015 | DAE | Conf with TNH re revisions to settlement agreement | 0.20 | $700.00 | $140.00 |
|---|---|---|---|---|---|
| 11/11/2015 | TNH | edit and revise settlement agreement | 0.50 | $325.00 | $162.50 |
| 11/11/2015 | TNH | conf DAE re revisions to settlement agreement | 0.20 | $325.00 | $65.00 |
| 11/11/2015 | TNH | e-mail to oc re status of agreememt | 0.10 | $325.00 | $32.50 |
| 11/12/2015 | TNH | edit and revise class settlement agreement | 1.60 | $325.00 | $520.00 |
| 11/13/2015 | DAE | review sett agreement | 0.50 | $700.00 | $350.00 |
| 11/13/2015 | TNH | edit and revise class settlement agreement | 2.10 | $325.00 | $682.50 |
| 11/16/2015 | KO | Drafted motion for preliminary approval | 0.50 | $125.00 | $62.50 |
| 11/17/2015 | CMC | Conf with DAE and TNH re mtn filed by AF | 0.50 | $700.00 | $350.00 |
| 11/17/2015 | DAE | Conf TNH and CMC re mtn filed by AF | 0.50 | $700.00 | $350.00 |
| 11/17/2015 | TNH | conf DAE, CMC re mtn filed by AF | 0.50 | $325.00 | $162.50 |
| 11/17/2015 | TNH | called AF re mtn filed | 0.10 | $325.00 | $32.50 |
| 11/17/2015 | TNH | e-mail to and from AF re 11/24 | 0.30 | $325.00 | $97.50 |
| 11/17/2015 | TNH | review ecf mtn filed by AF | 0.30 | $325.00 | $97.50 |
| 11/18/2015 | TNH | E-MAIL TO AND FROM AF | 0.20 | $325.00 | $65.00 |
| 11/20/2015 | TNH | voicemail from oc | 0.10 | $325.00 | $32.50 |
| 11/23/2015 | CMC | Conf TNH re oc revisions to settlement agreement | 0.40 | $700.00 | $280.00 |
| 11/23/2015 | TNH | conf oc re revisions to settlement agreement | 0.50 | $325.00 | $162.50 |
| 11/23/2015 | TNH | conf CMC re oc revisions to settlement agreement | 0.40 | $325.00 | $130.00 |
| 11/23/2015 | TNH | edit and revise settlement agreement | 0.30 | $325.00 | $97.50 |
| 11/24/2015 | TNH | conference call with the court | 0.40 | $325.00 | $130.00 |

Edelman, Combs, Latturner & Goodwin LLC
Page No.:      9

| | | | | | |
|---|---|---|---|---|---|
| 11/24/2015 | TNH | 2nd conference call with the court | 0.30 | $325.00 | $97.50 |
| 11/24/2015 | TNH | review protective order | 0.30 | $325.00 | $97.50 |
| 11/24/2015 | TNH | conf oc re settlement agreement and protective order | 0.00 | $325.00 | $0.00 |
| 11/24/2015 | TNH | e-mail oc | 0.10 | $325.00 | $32.50 |
| 12/01/2015 | TNH | e-mails from oc and co counsel re protective order | 0.20 | $325.00 | $65.00 |
| 12/07/2015 | TNH | voicemail from oc re protective order | 0.10 | $325.00 | $32.50 |
| 12/08/2015 | TNH | e-mail oc re portective order | 0.10 | $325.00 | $32.50 |
| 12/10/2015 | TNH | e-mail from oc re filing of protective order | 0.10 | $325.00 | $32.50 |
| 1/11/2016 | TNH | review and revise class settlement docs | 1.90 | $325.00 | $617.50 |
| 1/11/2016 | TNH | calls from and to oc (2x) | 0.20 | $325.00 | $65.00 |
| 1/11/2016 | TNH | conf OC re settlement docs | 0.30 | $325.00 | $97.50 |
| 1/12/2016 | CMC | work on set docs; motion prel, ord | 0.30 | $700.00 | $210.00 |
| 1/12/2016 | DAE | Conf TNH re net worth and settlement amount | 0.30 | $700.00 | $210.00 |
| 1/12/2016 | TNH | e-mail to co counsel | 0.10 | $325.00 | $32.50 |
| 1/12/2016 | TNH | conf oc re settlement docs | 0.30 | $325.00 | $97.50 |
| 1/12/2016 | TNH | conf DAE re net worth and settlement amount | 0.30 | $325.00 | $97.50 |
| 1/12/2016 | TNH | edit and revise class settlement docs- draft postcard notice | 2.50 | $325.00 | $812.50 |
| 1/13/2016 | CMC | work on notices | 0.70 | $700.00 | $490.00 |
| 1/13/2016 | KO | Conf TNH re revisions to Class Notice | 0.10 | $125.00 | $12.50 |
| 1/13/2016 | TNH | conf KO re revisions to Class Notice | 0.10 | $325.00 | $32.50 |
| 1/13/2016 | TNH | conf CMC re class notice | 0.10 | $325.00 | $32.50 |

| | | | | | |
|---|---|---|---|---|---|
| 1/13/2016 | TNH | e-mail from oc | 0.10 | $325.00 | $32.50 |
| 1/14/2016 | TNH | conference call with Court re next status | 0.20 | $325.00 | $65.00 |
| 1/14/2016 | TNH | call from oc re agremeent and final approval order | 0.20 | $325.00 | $65.00 |
| 2/09/2016 | TNH | edit and revisefinal approval order | 0.70 | $325.00 | $227.50 |
| 2/10/2016 | CMC | work on final approv ord | 0.30 | $700.00 | $210.00 |
| 2/18/2016 | CMC | work on settlement docs | 0.50 | $700.00 | $350.00 |
| 2/18/2016 | TNH | REVIEW AND REVISE SETTLEMENT DOCS | 1.00 | $325.00 | $325.00 |
| 2/18/2016 | TNH | CONF OC RE SETTLEMENT DOCS | 0.30 | $325.00 | $97.50 |
| 2/19/2016 | TNH | Status hearing with Court re Preliminary approval | 0.30 | $325.00 | $97.50 |
| 2/22/2016 | KO | Logging minute order | 0.10 | $125.00 | $12.50 |
| 2/23/2016 | KO | Logging redlines of class docs in redwall | 0.20 | $125.00 | $25.00 |
| 2/29/2016 | TNH | review class settlement docs | 1.10 | $325.00 | $357.50 |
| 3/09/2016 | KO | Saved settlement docs to TM, sent to co counsel for review | 0.20 | $125.00 | $25.00 |
| 3/11/2016 | KO | Saved class settlement docs from email to folder and TM, printed and assemebled docs for TNH to review | 0.50 | $125.00 | $62.50 |
| 3/18/2016 | TNH | e-mails to and from oc re revisions to settlement agreement | 0.40 | $325.00 | $130.00 |
| 3/24/2016 | TNH | e-mail to and from oc re class settlement docs | 0.20 | $325.00 | $65.00 |
| 3/28/2016 | KO | Print docs for TNH re class settlement | 0.40 | $125.00 | $50.00 |
| 3/30/2016 | KO | pdf docs send to co counsel | 0.30 | $125.00 | $37.50 |
| 3/30/2016 | KO | Conf TNH re exhibits to preliminary approval motion | 0.20 | $125.00 | $25.00 |

| 3/30/2016 | KO | Filed preliminary approval mtn | 0.40 | $125.00 | $50.00 |
|---|---|---|---|---|---|
| 3/30/2016 | KO | Drafted cover letter to judge with cc of preliminary approval mtn | 0.20 | $125.00 | $25.00 |
| 3/30/2016 | KO | Mailed cc of preliminary approval mtn | 0.20 | $125.00 | $25.00 |
| 3/30/2016 | KO | log/file preliminary approval mtn | 0.10 | $125.00 | $12.50 |
| 3/30/2016 | KO | Save final version of docs to TM | 0.40 | $125.00 | $50.00 |
| 3/30/2016 | TNH | Conf KO re exhibits to preliminary approval motion | 0.20 | $325.00 | $65.00 |
| 3/31/2016 | KO | logging minute order | 0.10 | $125.00 | $12.50 |
| 4/06/2016 | KO | l/f notes re class notice | 0.10 | $125.00 | $12.50 |
| 4/14/2016 | KO | Emails to and from TNH re settlement agreement signatures | 0.10 | $125.00 | $12.50 |
| 4/14/2016 | TNH | E-mails to and from KO re settlement agreement signatures | 0.10 | $325.00 | $32.50 |
| 5/03/2016 | KO | Worked on paralegal memo | 0.40 | $125.00 | $50.00 |
| 5/05/2016 | KO | Filed TNH notes re preliminary approval mtn in binder | 0.10 | $125.00 | $12.50 |
| 5/13/2016 | KO | Call with TNH re preliminary approval motion | 0.10 | $125.00 | $12.50 |
| 5/13/2016 | TNH | call with KO re preliminary approval motion | 0.10 | $325.00 | $32.50 |
| 5/17/2016 | KO | Email to judge's clerk re proposed preliminary approval order and exhibits | 0.30 | $125.00 | $37.50 |
| 5/17/2016 | TNH | e-mail from court re docs | 0.10 | $325.00 | $32.50 |
| 5/23/2016 | KO | Prepared docket memo for preliminary approval order, emails to and from TNH re same, saved preliminary approval order to TM | 0.50 | $125.00 | $62.50 |
| 5/23/2016 | TNH | Emails to and from KO re docket memo for preliminary approval order | 0.20 | $325.00 | $65.00 |
| 5/24/2016 | KO | Logged/filed preliminary approval order | 0.10 | $125.00 | $12.50 |

Edelman, Combs, Latturner & Goodwin LLC

Page No.:    12

| 5/27/2016 | KO | Updated settlement info in TM | 0.10 | $125.00 | $12.50 |
|-----------|----|-----|------|---------|--------|
| 7/06/2016 | TNH | e-mail Mr. Fishbien re missing plaintiff Jager's signature | 0.10 | $325.00 | $32.50 |
| 7/11/2016 | TNH | e-mails from class members re claim form- sent them the link | 0.30 | $325.00 | $97.50 |
| 7/12/2016 | TNH | correspondence from class members | 0.40 | $325.00 | $130.00 |
| 7/14/2016 | AL | Responded to emails from class members re questions of the notice they received | 0.80 | $125.00 | $100.00 |
| 7/14/2016 | AL | Sent class member a Claim form PDF via email | 0.10 | $125.00 | $12.50 |
| 7/18/2016 | AL | Sent class member a claim form via email | 0.10 | $125.00 | $12.50 |
| 7/19/2016 | AL | Sent class member link to claim form and notice | 0.10 | $125.00 | $12.50 |
| 7/20/2016 | AL | Email to class member regarding settlement | 0.10 | $125.00 | $12.50 |
| 7/21/2016 | AL | Sent class administrator claim forms received at ECLG | 0.10 | $125.00 | $12.50 |
| 7/22/2016 | AL | Drafted letter to class member | 0.20 | $125.00 | $25.00 |
| 7/25/2016 | AL | Drafted letter to Anthony Carfizzi; saved to TM | 0.70 | $125.00 | $87.50 |
| 7/25/2016 | AL | Conf with TNH regarding claim form and exclusion request received at ECLG; re documents received from Anthony Carfizzi | 0.20 | $125.00 | $25.00 |
| 7/25/2016 | AL | Scanned claim form and exclusion request; saved them to TM; sent to o/c via email; mailed to class administrator | 0.20 | $125.00 | $25.00 |
| 7/25/2016 | TNH | Conf with AL re claim form and exclusion request received at ECLG and docs from Carfizzi | 0.20 | $325.00 | $65.00 |
| 7/27/2016 | AL | Email to class member that needed access to claim form | 0.10 | $125.00 | $12.50 |

Edelman, Combs, Latturner & Goodwin LLC

Page No.:    13

| 7/28/2016 | AL | Logged/filed letter from class member | 0.10 | $125.00 | $12.50 |
|---|---|---|---|---|---|
| 8/02/2016 | AL | Logged/filed letter from class member | 0.10 | $125.00 | $12.50 |
| 8/02/2016 | TNH | e-mail to co counsel re fee petition | 0.10 | $325.00 | $32.50 |
| 8/04/2016 | AL | Phone calls with class member re: submitting claim form late | 0.20 | $125.00 | $25.00 |
| 8/08/2016 | AL | Created redwall for undeliverable post cards or notice | 0.10 | $125.00 | $12.50 |
| 8/08/2016 | AL | Sent email to oc re: request for exclusion; mailed to class administrator | 0.10 | $125.00 | $12.50 |
| 8/08/2016 | AL | Read letter from class memeber; called class member to determine what they needed; sent them via U.S mail a claim form | 0.20 | $125.00 | $25.00 |
| 8/08/2016 | TNH | COPIED ON E-MAILS RE CLASS MEMBERS | 0.20 | $325.00 | $65.00 |
| 8/09/2016 | DAE | Conf with TNH re: correspondance from class members | 0.20 | $700.00 | $140.00 |
| 8/09/2016 | TNH | CONF DAE RE CORRESPONDENCE FROM CLASS MEMBER | 0.20 | $325.00 | $65.00 |
| 8/09/2016 | TNH | E-MAIL TO AND FROM CLASS MEMBER | 0.10 | $325.00 | $32.50 |
| 8/10/2016 | TNH | e-mail to co-counsel re status of billing records | 0.10 | $325.00 | $32.50 |
| 8/11/2016 | DAE | Conf with TNH re Fee Petition | 0.30 | $700.00 | $210.00 |
| 8/11/2016 | DAE | e-mail to and from TNH and class member re settlement | 0.30 | $700.00 | $210.00 |
| 8/11/2016 | TNH | e-mail to and from DAE and class member re settlement | 0.30 | $325.00 | $97.50 |
| 8/11/2016 | TNH | conf class member re settlement | 0.30 | $325.00 | $97.50 |
| 8/11/2016 | TNH | E-MAIL TO AND FROM MM OFFICE RE BILLING RECORDS | 0.10 | $325.00 | $32.50 |

Edelman, Combs, Latturner & Goodwin LLC

Page No.:    14

| 8/11/2016 | TNH | DRAFT FEE PETITION | 3.10 | $325.00 | $1,007.50 |
| 8/11/2016 | TNH | CONF DAE RE FEE PETITION | 0.30 | $325.00 | $97.50 |
| 8/11/2016 | TNH | EDIT AND REVISE FEE PETITION AS PER DAE | 0.20 | $325.00 | $65.00 |
| 8/11/2016 | TNH | E-MAIL DRAFT OF PETITION TO OC COUNSEL TO REVIEW BEFORE FILING | 0.10 | $325.00 | $32.50 |
| 8/15/2016 | CMC | Conf DAE and TNH re opt outs | 0.30 | $700.00 | $210.00 |
| 8/15/2016 | DAE | Conf TNH and CMC re: opt outs | 0.30 | $700.00 | $210.00 |
| 8/15/2016 | DAE | e-mail to and from TNH re letters | 0.10 | $700.00 | $70.00 |
| 8/15/2016 | TNH | E-MAIL TO AND FROM DAE RE LETTERS | 0.10 | $325.00 | $32.50 |
| 8/15/2016 | TNH | e-mail from and to MM office re opt out procredure- voicemail message | 0.30 | $325.00 | $97.50 |
| 8/15/2016 | TNH | copied on e-mail from AF to JN re opt out class members | 0.10 | $325.00 | $32.50 |
| 8/15/2016 | TNH | CONF CMC AND DAE RE OPT OUTS | 0.30 | $325.00 | $97.50 |
| 8/17/2016 | DAE | conf TNH re correspondance filed by class member | 0.30 | $700.00 | $210.00 |
| 8/17/2016 | TNH | conf DAE re correspondence filed by class member | 0.30 | $325.00 | $97.50 |
| 8/18/2016 | CMC | conf DAE and TNH re class member correspondance and TNH appearing telephonically to fairness hearing | 0.40 | $700.00 | $280.00 |
| 8/18/2016 | DAE | conf CMC and TNH re class member correspondance and TNH appearing telephonically for fairness hearing | 0.40 | $700.00 | $280.00 |
| 8/18/2016 | TNH | conf CMC and DAE re Class member correspondence and appearing telephonically for Fairness Hearing | 0.40 | $325.00 | $130.00 |
| 8/19/2016 | TNH | e-mail to co counsel re appearing in person for Fairness Hearing | 0.20 | $325.00 | $65.00 |
| 8/30/2016 | AL | Read through Preliminary Approval Order; docketed date to respond to | 0.20 | $125.00 | $25.00 |

objections

| Date | Init | Description | Hours | Rate | Amount |
|---|---|---|---|---|---|
| 9/09/2016 | AL | Phone call with class member re: late claim form | 0.10 | $125.00 | $12.50 |
| 9/14/2016 | AL | Assembled and proof read response to objection | 0.60 | $125.00 | $75.00 |
| 9/14/2016 | DAE | Conf TNH re response to objection | 0.30 | $700.00 | $210.00 |
| 9/14/2016 | TNH | EDIT AND REVISE BRIEF AS PER DAE | 0.30 | $325.00 | $97.50 |
| 9/14/2016 | TNH | e-mails to and from oc re memo in response objections | 0.20 | $325.00 | $65.00 |
| 9/14/2016 | TNH | DRAFT RESPONSE TO OBJECTION | 3.10 | $325.00 | $1,007.50 |
| 9/14/2016 | TNH | CONF DAE RE RESPONSE TO OBJECTION | 0.30 | $325.00 | $97.50 |
| 9/19/2016 | TNH | e-mails from and to OC re treatment of late and unsigned claim forms | 0.40 | $325.00 | $130.00 |
| 9/23/2016 | AL | Edited final approval memo | 0.70 | $125.00 | $87.50 |
| 9/30/2016 | TNH | work on final approval memo | 3.10 | $325.00 | $1,007.50 |
| 10/03/2016 | AL | Filed final memo; sent courtesy copies to objector; saved to tm | 1.00 | $125.00 | $125.00 |
| 10/05/2016 | TNH | e-mail from class member, forward to oc | 0.10 | $325.00 | $32.50 |
| 10/06/2016 | TNH | e-mail from oc re class member claim form | 0.10 | $325.00 | $32.50 |
| 10/07/2016 | TNH | e-mails to and from Court and oc retelephone conference | 0.30 | $325.00 | $97.50 |
| 10/07/2016 | TNH | e-mail to oc re presence on call | 0.20 | $325.00 | $65.00 |
| 10/10/2016 | AL | Assembled docs for DAE for call | 0.30 | $125.00 | $37.50 |
| 10/10/2016 | TNH | e-mail from MM office re signed sttl agreement | 0.10 | $325.00 | $32.50 |
| 10/10/2016 | TNH | e-mail to DAE re def's brf | 0.30 | $325.00 | $97.50 |
| 10/10/2016 | TNH | reveiwed def brief | 0.30 | $325.00 | $97.50 |

Edelman, Combs, Latturner & Goodwin LLC

Page No.:    16

| 10/10/2016 | TNH | e-mails to and from oc re dial in number for conference call to court tomorrow | 0.20 | $325.00 | $65.00 |
|---|---|---|---|---|---|
| 10/10/2016 | TNH | sign agreement | 0.10 | $325.00 | $32.50 |
| 10/11/2016 | AL | logged/filed docs | 0.20 | $125.00 | $25.00 |
| 10/11/2016 | DAE | t/c with law clerk | 0.50 | $700.00 | $350.00 |
| 10/11/2016 | DAE | conf with TNH re conferece call from this morning | 0.40 | $700.00 | $280.00 |
| 10/11/2016 | TNH | conf DAE re conference call this morning | 0.40 | $325.00 | $130.00 |
| 10/11/2016 | TNH | e-mails to co counsel re resolving issue with Jenner | 0.30 | $325.00 | $97.50 |
| 10/11/2016 | TNH | conf DAE and CMC re court appearance this a.m. | 0.50 | $325.00 | $162.50 |
| 10/11/2016 | TNH | e-mails from AF re clients that are opt outs | 0.20 | $325.00 | $65.00 |
| 10/11/2016 | TNH | e-mail to and from DAE re following up with co-counsel re opt outs | 0.10 | $325.00 | $32.50 |
| 10/12/2016 | TNH | e-mail from oc re signed s/a | 0.10 | $325.00 | $32.50 |
| 10/13/2016 | AL | Filed Letter to appear by telephone to fairness hearing | 0.20 | $125.00 | $25.00 |
| 10/13/2016 | AL | Checked judges rules to file motion to appear telephonically; called deputy clerk and was told to direct to Judge Townes; called court room deputy and was told that filing as letter was fine. | 0.30 | $125.00 | $37.50 |
| 10/13/2016 | AL | Phone call with class member's wife | 0.20 | $125.00 | $25.00 |
| 10/13/2016 | AL | e-mail to oc regarding class members claim form | 0.00 | $125.00 | $0.00 |
| 10/13/2016 | DAE | e-mails to and between co counsel and TNH | 0.40 | $700.00 | $280.00 |
| 10/13/2016 | TNH | e-mails to between co counsel myself and DAE | 0.40 | $325.00 | $130.00 |

Edelman, Combs, Latturner & Goodwin LLC

Page No.:    17

| | | | | | |
|---|---|---|---|---|---|
| 10/13/2016 | TNH | e-mails re letter to be filed with the Court | 0.30 | $325.00 | $97.50 |
| 10/13/2016 | TNH | e-mails to and from court staff re mtn to appear telephonically | 0.20 | $325.00 | $65.00 |
| 10/13/2016 | TNH | voicemail from Igor | 0.10 | $325.00 | $32.50 |
| 10/13/2016 | TNH | conf Igor re fairness hearing | 0.30 | $325.00 | $97.50 |
| 10/13/2016 | TNH | e-mails to co counsel re status of settlement | 0.30 | $325.00 | $97.50 |
| 10/14/2016 | AL | Logged/filed docs | 0.20 | $125.00 | $25.00 |
| 10/14/2016 | AL | Phone call with class member about receiving claim form | 0.10 | $125.00 | $12.50 |
| 10/14/2016 | CMC | conf DAE and TNH re Fairness Hearing and supplemental briefing | 1.00 | $700.00 | $700.00 |
| 10/14/2016 | DAE | conf CMC and TNH re Fairness Hearing and supplemental briefing | 1.00 | $700.00 | $700.00 |
| 10/14/2016 | TNH | conf DAE re agreement and opt-outs | 0.50 | $325.00 | $162.50 |
| 10/14/2016 | TNH | Fairness Hearing | 0.50 | $325.00 | $162.50 |
| 10/14/2016 | TNH | conf DAE and CMC re Fairness Hearing and supplemental briefing | 1.00 | $325.00 | $325.00 |
| 10/17/2016 | AL | e-mail to class member regarding her claim form | 0.10 | $125.00 | $12.50 |
| 10/17/2016 | AL | logged/filed minute entry | 0.20 | $125.00 | $25.00 |
| 10/17/2016 | AL | Sent oc an email to check on class members claim form. | 0.10 | $125.00 | $12.50 |
| 10/18/2016 | CMC | Conf TNH and DAE re submitting billing records | 0.10 | $700.00 | $70.00 |
| 10/18/2016 | DAE | Conf TNH re submitting billing records | 0.10 | $700.00 | $70.00 |
| 10/18/2016 | TNH | conf CMC and DAE re brief and submission | 0.30 | $325.00 | $97.50 |
| 10/18/2016 | TNH | research case as per judge order | 0.30 | $325.00 | $97.50 |

Edelman, Combs, Latturner & Goodwin LLC

Page No.:    18

| 10/18/2016 | TNH | work on brief | 1.50 | $325.00 | $487.50 |
|---|---|---|---|---|---|
| 10/18/2016 | TNH | conf DAE re submitting billing records | 0.10 | $325.00 | $32.50 |
| 10/19/2016 | AL | Prepared memo in support of fess and costs; assembled declaration of TNH; gave to TNH to review: filed via ecf; ssaved to TM | 0.70 | $125.00 | $87.50 |
| 10/19/2016 | TNH | review billing records for filing re redactions | 0.30 | $325.00 | $97.50 |
| 10/19/2016 | TNH | conf AL re declaration | 0.20 | $325.00 | $65.00 |
| 10/19/2016 | TNH | review and revise supplemental memo re filign | 0.20 | $325.00 | $65.00 |
| 10/20/2016 | AL | logged/filed memo | 0.10 | $125.00 | $12.50 |
| 10/24/2016 | AL | Phone call with class member re update | 0.20 | $125.00 | $25.00 |
| 10/24/2016 | CMC | work on final approv supp | 0.50 | $700.00 | $350.00 |
| 10/24/2016 | TNH | work on brief re class representatives incentive awards | 9.10 | $325.00 | $2,957.50 |
| 10/25/2016 | AL | shadowed PI as she created table of authories for supplemental memo; overlooked for errors, page numbers, formatting; conferred with TNH re a citation | 1.00 | $125.00 | $125.00 |
| 10/25/2016 | AL | Called ecf help desk, asked about how to file table of authorities that was ommited from our memo; took notes on instructions | 0.20 | $125.00 | $25.00 |
| 10/25/2016 | AL | Made a second call to help desk to go over steps of filing table of authorities that was ommitted in memo; filed the memo; saved to TM; sent courtesy copy to Judge | 0.30 | $125.00 | $37.50 |
| 10/25/2016 | PI | TRained and drafted TOA with AL | 1.50 | $125.00 | $187.50 |
| 10/26/2016 | NM | filed, saved settlement agreement | 0.30 | $125.00 | $37.50 |
| 10/26/2016 | TNH | conf NM re filing s/a | 0.20 | $325.00 | $65.00 |

Edelman, Combs, Latturner & Goodwin LLC

Page No.:     19

| 10/26/2016 | TNH | e-mails to and from oc re final approval order | 0.20 | $325.00 | $65.00 |
|---|---|---|---|---|---|
| 10/28/2016 | AL | Logged/filed docs | 0.20 | $125.00 | $25.00 |
| 11/02/2016 | TNH | respiond to class member inquiries re status of case | 1.00 | $325.00 | $325.00 |
| 11/03/2016 | AL | Docketed date to file motion to reconsider final approval order | 0.10 | $125.00 | $12.50 |
| 11/03/2016 | TNH | conf DAE re final approval ordwer and no retention of jursidication- court's revision to parties proposed order | 0.40 | $325.00 | $130.00 |
| 11/03/2016 | TNH | review couer order received via ecf | 0.30 | $325.00 | $97.50 |
| 11/21/2016 | AL | phone call with class member re: case | 0.10 | $125.00 | $12.50 |
| 11/21/2016 | AL | email to oc re: class member's claim form | 0.10 | $125.00 | $12.50 |
| 11/28/2016 | LM | spoke to class member | 0.10 | $125.00 | $12.50 |
| 11/30/2016 | AL | Filed motion; sent cc via email and US mail | 0.30 | $125.00 | $37.50 |
| 11/30/2016 | AL | updated class members via email | 0.30 | $125.00 | $37.50 |
| 11/30/2016 | CMC | work on rule 59 mot | 0.20 | $700.00 | $140.00 |
| 11/30/2016 | TNH | conf CMC re mtn to amend alter judgment | 0.30 | $325.00 | $97.50 |
| 11/30/2016 | TNH | edit and revise mtn re final approval order | 0.40 | $325.00 | $130.00 |
| 11/30/2016 | TNH | e-mail from and to oc re W-9s | 0.10 | $325.00 | $32.50 |
| 11/30/2016 | TNH | e-mail to AL re w-9's | 0.10 | $325.00 | $32.50 |
| 11/30/2016 | TNH | draft mtn to amend/ alter judgment | 1.50 | $325.00 | $487.50 |
| 12/01/2016 | TNH | e-mail from oc re w-9 | 0.10 | $325.00 | $32.50 |
| 12/01/2016 | TNH | conf al re clients and w-9 | 0.10 | $325.00 | $32.50 |
| 12/01/2016 | TNH | conf LG from MM office re w-9 | 0.20 | $325.00 | $65.00 |

| 12/01/2016 | TNH | e-mail to af re w9 | 0.10 | $325.00 | $32.50 |
| 12/20/2016 | AL | email to class member re: settlement | 0.10 | $125.00 | $12.50 |
| 1/03/2017 | AL | logged/filed letter | 0.10 | $125.00 | $12.50 |
| 1/03/2017 | AL | emails to class members re: update | 0.20 | $125.00 | $25.00 |
| 1/04/2017 | AL | saved court order to tm; sent to tnh via email | 0.10 | $125.00 | $12.50 |
| 1/04/2017 | CMC | mtn to amend final judgment | 0.00 | $700.00 | $0.00 |
| 1/04/2017 | CMC | work on memo re; amend final judgment | 4.00 | $700.00 | $2,800.00 |
| 1/09/2017 | AL | filed motion to alter | 0.30 | $125.00 | $37.50 |
| 1/09/2017 | AL | worked on final approval memo | 1.00 | $125.00 | $125.00 |
| 1/09/2017 | AL | email to class member re: status | 0.10 | $125.00 | $12.50 |
| 1/09/2017 | TNH | e-mail from oc re memo for court | 0.10 | $325.00 | $32.50 |
| 1/09/2017 | TNH | REVIEW DEF'SREDLINE REVISIONS TO MEMO IN SUPPORT OF FINAL APPROVAL | 0.50 | $325.00 | $162.50 |
| 1/09/2017 | TNH | e-mail to and from class member re status of settlement | 0.10 | $325.00 | $32.50 |
| 1/11/2017 | AL | logged/filed docs | 0.10 | $125.00 | $12.50 |
| 1/12/2017 | TNH | review minute order from courrt granting final approval of settlement | 0.10 | $325.00 | $32.50 |
| 1/13/2017 | TNH | e-mail to and from class member | 0.20 | $325.00 | $65.00 |
| 1/13/2017 | TNH | e-mail from and to class member | 0.20 | $325.00 | $65.00 |
| 1/16/2017 | AL | logged/filed final judgment | 0.10 | $125.00 | $12.50 |
| 1/16/2017 | TNH | e-mail to class member | 0.10 | $325.00 | $32.50 |
| 1/16/2017 | TNH | e-mail to class member | 0.10 | $325.00 | $32.50 |
| 1/18/2017 | TNH | e-mail from class member- forward to AL to respond | 0.10 | $325.00 | $32.50 |
| 2/02/2017 | TNH | e-mail from and to class member | 0.20 | $325.00 | $65.00 |

Edelman, Combs, Latturner & Goodwin LLC

Page No.:   21

| 2/02/2017 | TNH | e-mail to oc re class member inquiry | 0.10 | $325.00 | $32.50 |
|-----------|-----|--------------------------------------|------|---------|--------|
| 2/03/2017 | TNH | e-mail to and from oc | 0.10 | $325.00 | $32.50 |
| 2/03/2017 | TNH | conf class member re amount of settlement check | 0.10 | $325.00 | $32.50 |
| 2/03/2017 | TNH | e-mail to and from class member | 0.10 | $325.00 | $32.50 |
| 2/09/2017 | TNH | e-mail from DAE/CL re class member stolen check- e-mail to oc re check advise DAE | 0.30 | $325.00 | $97.50 |
| 2/13/2017 | TNH | e-mail from oc re status of class member check | 0.10 | $325.00 | $32.50 |
| 2/14/2017 | TNH | e-mail from class member | 0.10 | $325.00 | $32.50 |
| 2/15/2017 | TNH | e-mail to and from DAE re court order | 0.10 | $325.00 | $32.50 |
| 2/15/2017 | TNH | reviw minute order from ocurt re fees | 0.10 | $325.00 | $32.50 |
| 2/16/2017 | AL | logged/filed order | 0.20 | $125.00 | $25.00 |
| 2/17/2017 | TNH | conf Mr. COleman re status of settlement check | 0.30 | $325.00 | $97.50 |
| 2/17/2017 | TNH | e-mail to oc re address Coleman check was sent to | 0.10 | $325.00 | $32.50 |
| 2/17/2017 | TNH | e-mail to and from Coleman AND OC RE CHECK | 0.30 | $325.00 | $97.50 |
| 2/20/2017 | TNH | e-mail from oc re copy of endorsed check | 0.10 | $325.00 | $32.50 |
| 2/21/2017 | TNH | e-mail class member coleman copy of endorsed check | 0.10 | $325.00 | $32.50 |
| 2/22/2017 | AL | reviewed last two filings as per TNH | 0.20 | $125.00 | $25.00 |

Total Fees     $51,112.50

**Expenses**

| Start Date | Description | Charges |
|------------|-------------|---------|
| 2/27/2014 | Filing Fee - cert of good standing - chk24857 | $1.00 |

Edelman, Combs, Latturner & Goodwin LLC

Page No.:    22

| 2/27/2014 | Copy | $0.50 |
| 2/27/2014 | Copy | $0.75 |
| 2/27/2014 | Postage | $0.96 |
| 2/28/2014 | Copy | $0.25 |
| 2/28/2014 | Copy | $0.75 |
| 3/05/2014 | Filing Fee - Pro Hav Vice - DAE visa | $25.00 |
| 3/07/2014 | Copy | $0.25 |
| 3/07/2014 | Postage | $0.48 |
| 3/13/2014 | Filing Fee - Pro Hac Vice - DAE visa | $25.00 |
| 3/20/2014 | Copy | $8.00 |
| 3/21/2014 | Postage - priority | $5.25 |
| 3/25/2014 | Copy | $129.00 |
| 3/31/2014 | Legal research cost - Pacer | $1.90 |
| 4/01/2014 | Copy | $0.75 |
| 4/25/2014 | Copy | $0.25 |
| 4/25/2014 | Postage | $2.30 |
| 6/30/2014 | Legal research cost - Pacer | $0.40 |
| 4/21/2015 | Copy | $0.75 |
| 4/30/2015 | Copy | $1.25 |
| 4/30/2015 | Copy | $3.75 |
| 6/30/2015 | Legal research cost- Pacer | $0.00 |
| 9/15/2015 | Copy | $1.50 |
| 9/30/2015 | Legal research cost- PACER chk 26663 | $2.10 |

Edelman, Combs, Latturner & Goodwin LLC

Page No.:   23

| 12/21/2015 | Postage | $0.48 |
|---|---|---|
| 1/11/2016 | Copy | $2.25 |
| 1/25/2016 | Legal research cost- PACER chk 26903 | $2.90 |
| 3/30/2016 | Postage | $2.96 |
| 5/16/2016 | Print | $2.25 |
| 5/16/2016 | Print | $2.25 |
| 5/23/2016 | Print | $0.15 |
| 5/23/2016 | Print | $3.15 |
| 7/15/2016 | Postage | $0.46 |
| 7/19/2016 | Copy | $0.45 |
| 7/20/2016 | Print | $2.25 |
| 7/20/2016 | Postage | $1.57 |
| 7/21/2016 | Postage | $1.15 |
| 7/25/2016 | Postage | $1.15 |
| 8/02/2016 | Copy | $0.45 |
| 8/08/2016 | Postage | $1.15 |
| 8/08/2016 | Postage | $0.46 |
| 8/08/2016 | Print | $2.25 |
| 8/08/2016 | Print | $2.25 |
| 8/08/2016 | Print | $0.15 |
| 8/11/2016 | Print | $0.90 |
| 8/11/2016 | Print | $1.20 |
| 8/11/2016 | Print | $1.20 |
| 8/12/2016 | Postage | $1.99 |

Edelman, Combs, Latturner & Goodwin LLC
Page No.:    24

| 8/12/2016 | Print | $2.40 |
| 8/12/2016 | Print | $0.40 |
| 8/12/2016 | Print | $0.40 |
| 8/15/2016 | Postage | $0.46 |
| 8/15/2016 | Postage | $1.15 |
| 8/17/2016 | Print | $7.50 |
| 8/23/2016 | Copy | $1.35 |
| 8/30/2016 | Print | $0.60 |
| 8/30/2016 | Print | $0.45 |
| 8/30/2016 | Print | $0.30 |
| 8/31/2016 | Postage | $1.15 |
| 9/14/2016 | Print | $0.75 |
| 9/30/2016 | Print | $0.45 |
| 9/30/2016 | Print | $2.85 |
| 9/30/2016 | Print | $0.60 |
| 10/03/2016 | Postage | $6.45 |
| 10/03/2016 | Print | $18.15 |
| 10/10/2016 | Print | $2.25 |
| 10/10/2016 | Print | $2.25 |
| 10/10/2016 | Print | $18.15 |
| 10/10/2016 | Print | $3.15 |
| 10/11/2016 | Print | $0.15 |
| 10/11/2016 | Print | $0.15 |

Edelman, Combs, Latturner & Goodwin LLC
Page No.:    25

| 10/11/2016 | Print | $2.85 |
| 10/13/2016 | Print | $0.45 |
| 10/14/2016 | Copy | $0.15 |
| 10/14/2016 | Print | $0.45 |
| 10/14/2016 | Copy | $1.80 |
| 10/18/2016 | Print | $2.85 |
| 10/19/2016 | Print | $3.00 |
| 10/19/2016 | Print | $0.15 |
| 10/20/2016 | Print | $15.45 |
| 10/24/2016 | Print | $1.95 |
| 10/24/2016 | Print | $2.25 |
| 10/24/2016 | Print | $3.00 |
| 10/24/2016 | Print | $3.00 |
| 10/24/2016 | Print | $0.45 |
| 10/24/2016 | Print | $2.25 |
| 10/24/2016 | Print | $2.25 |
| 10/25/2016 | Postage | $1.57 |
| 10/25/2016 | Print | $0.30 |
| 10/25/2016 | Print | $2.25 |
| 11/03/2016 | Print | $1.50 |
| 11/03/2016 | Print | $0.45 |
| 11/08/2016 | Filing Fee- 27533 | $110.00 |
| 11/30/2016 | Print | $0.60 |

Edelman, Combs, Latturner & Goodwin LLC

Page No.:    26

| 11/30/2016 | Print | $0.75 |
| 11/30/2016 | Print | $1.20 |
| 11/30/2016 | Print | $0.60 |
| 11/30/2016 | Print | $0.60 |
| 11/30/2016 | Print | $0.60 |
| 11/30/2016 | Print | $1.35 |
| 11/30/2016 | Postage | $0.88 |
| 12/01/2016 | Print | $2.10 |
| 12/01/2016 | Postage | $0.88 |
| 12/15/2016 | Legal research cost CK# 27640 | $0.17 |
| 1/03/2017 | Print | $18.15 |
| 1/04/2017 | Print | $0.60 |
| 1/04/2017 | Print | $0.60 |
| 1/09/2017 | Print | $1.05 |
| 1/09/2017 | Print | $0.45 |
| 1/25/2017 | Legal research cost  cK#27680 PACER | $1.30 |
| 2/17/2017 | Print | $1.20 |
| 2/21/2017 | Phone charge INV # 13337253 | $0.02 |

Total Expenses        $510.54

Total New Charges        $51,623.04

### Staff Summary

| Name | Position | Hours | Rate | Fees |
|------|----------|-------|------|------|
| Aimee Alvarez | Paralegal | 14.10 | $125.00 | $1,762.50 |
| Cathleen M. Combs | Partner | 9.20 | $700.00 | $6,440.00 |
| Cathleen M. Combs | Partner | 3.30 | $600.00 | $1,980.00 |
| Daniel A. Edelman | Partner | 11.70 | $600.00 | $7,020.00 |

Edelman, Combs, Latturner & Goodwin LLC

Page No.:     27

| Name | Title | Hrs | Rate | Amount |
|------|-------|----:|-----:|-------:|
| Daniel A. Edelman | Partner | 6.60 | $700.00 | $4,620.00 |
| Shelby Kost | Paralegal | 8.20 | $125.00 | $1,025.00 |
| Lauren Muhr | Paralegal | 0.10 | $125.00 | $12.50 |
| Nora Meyers | Paralegal | 0.30 | $125.00 | $37.50 |
| Noah Steimel | Paralegal | 3.10 | $125.00 | $387.50 |
| Jasmine Pierson | Paralegal | 1.50 | $125.00 | $187.50 |
| Sarah Crocker | Paralegal | 8.70 | $125.00 | $1,087.50 |
| Tiffany N. Hardy | Partner | 81.70 | $325.00 | $26,552.50 |

Tot Hrs: 148.50